Wilmer J. Harris, SBN 150407
wharris@sshhzlaw.com
Amanda E. Johnson, SBN 324500
ajohnson@sshhzlaw.com
**SCHONBRUN SEPLOW HARRIS**
**HOFFMAN & ZELDES LLP**
715 Fremont Ave., Suite A
South Pasadena, CA. 91030
Telephone No.: (626) 441-4129
Facsimile No.: (626) 283-5770

*Attorneys for Plaintiff, Attaullah Baig*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ATTAULLAH BAIG,<br><br>　　　　　　Plaintiff,<br>　　vs.<br><br>META PLATFORMS, INC., a corporation; PINAKI MUKERJI; MARK TSIMELZON; NITIN GUPTA; WILL CATHCART; MARK ZUCKERBERG; and DOES 1-10, inclusive, Defendants.<br><br>　　　　　　Defendants. | Case No. 3:25-CV-07604<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STAY FACT FINDING DISCOVERY PENDING RESOLUTION OF DEFENDANTS' MOTION TO DISMISS**<br><br>Dage: January 27, 2026<br>Time: 2:00 p.m.<br>Crtm: 1, 4th Floor<br>Judge: Hon. Yvonne Gonzalez Rogers<br><br>Complaint Filed: September 8, 2025<br>Trial Date:　　Not Set |

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 5

II. THRESHOLD PROCEDURAL DEFECT: DEFENDANTS FAILED TO FOLLOW THE COURT'S CIVIL STANDING ORDERS .......................................................................... 6

    A. Defendants Cannot Satisfy the Stringent Legal Standard For a Stay ................................ 6

        1. Contrary to Defendants' Claim, Stays of Discovery Pending a Ruling Upon a Motion to Dismiss Are Not Automatic in the Ninth Circuit. ........................................................ 6

III. DEFENDANTS BEAR A HEAVY BURDEN THEY CANNOT MEET ........................... 8

    A. Factor One: Substantial Damage to Plaintiff from Granting a Stay .................................. 8

    B. Factor Two: No Hardship or Inequity to Defendants ........................................................ 9

        1. The Requested Stay Period Is Minimal ....................................................................... 9

        2. Defendants Are an $800-Billion Corporation with Sophisticated E-Discovery Infrastructure ............................................................................................................... 9

    C. Factor Three: A Stay Would Not Serve the Orderly Course of Justice ............................ 9

IV. DEFENDANTS' MOTION TO DISMISS IS UNLIKELY TO SUCCEED, MAKING A STAY PARTICULARLY INAPPROPRIATE ................................................................... 10

    A. Even A Cursory Examination of The Motion to Dismiss Reveals It Is Very Unlikely to Succeed ...................................................................................................................... 10

    B. Recent SEC guidance quickly disposes of defendants' position. ..................................... 10

    C. False Statements in Meta's SEC Filings that Baig Reported ........................................... 14

V. CONCLUSION ................................................................................................................... 15

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STAY FACT FINDING DISCOVERY PENDING RESOLUTION OF DEFENDANTS' MOTION TO DISMISS

2

# TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page(s)**

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................... 10

*Blankenship v. Hearst Corp.*,
    519 F.2d 418 (9th Cir. 1975) ................................................................................... 7, 8

*Clinton v. Jones*,
    520 U.S. 681 (1997) ..................................................................................................... 8

*CMAX, Inc. v. Hall*,
    300 F.2d 265 (9th Cir. 1962) ....................................................................................... 8

*Gray v. First Winthrop Corp.*,
    133 F.R.D. 39 (N.D. Cal. 1990) ........................................................................... 5, 7, 8

*GTE Wireless, Inc. v. Qualcomm, Inc.*,
    192 F.R.D. 284 (S.D. Cal. 2000) .................................................................................. 5

*Jeter v. President of the U.S.*,
    670 F. App'x 493 (9th Cir. 2016) ................................................................................. 7

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936) ..................................................................................................... 8

*Lee v. City of L.A.*,
    250 F.3d 668 (9th Cir. 2001) ....................................................................................... 5

*Little v. Seattle*,
    863 F.2d 681 (9th Cir. 1988) ....................................................................................... 7

*Rutman Wine Co. v. E. & J. Gallo Winery*,
    829 F.2d 729 (9th Cir. 1987) ....................................................................................... 7

*Tradebay, LLC v. eBay, Inc.*,
    278 F.R.D. 597 (D. Nev. 2011) ................................................................................... 7

*Timothy v. Oneida Cnty.*, No. 4:14-cv-00362-BLW,
    2015 U.S. Dist. LEXIS 90136 (D. Idaho July 9, 2015) ............................................... 8

*Van Asdale v. Int'l Game Tech.*,
  577 F.3d 989 (9th Cir. 2009) ................................................................................................ 5

*Wenger v. Monroe*,
  282 F.3d 1068 (9th Cir. 2002) .............................................................................................. 7

*Wood v. McEwen*,
  644 F.2d 797 (9th Cir. 1981) ............................................................................................ 5, 7

**Rules**

Fed. R. Civ. P. 1. ........................................................................................................................ 10

Fed. R. Civ. P. 12(b)(6) ............................................................................................................ 7, 8

## I. INTRODUCTION

The Court should deny Defendants' motion to stay discovery. First, while defendants assert that this Court must grant their motion simply because the motion seeks to dismiss the single Sarbanes Oxley ("SOX") claim (Mtn to Stay (Dkt. 30) at pp. 2-3), the Federal Rules of Civil Procedure and Ninth Circuit precedent establish that stays of discovery pending rulings on motions to dismiss are not automatic. Indeed, moving parties bear a "heavy burden" to make a "strong showing" of good cause to justify relief. *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990); *accord Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981). Defendants have entirely failed to make the required showing.

Second, it is plain that defendants' motion to dismiss is unmeritorious and very likely to be unsuccessful. The Court must conduct a preliminary analysis of the merits of the motion to dismiss in weighing the factors the Ninth Circuit has determined this Court must review. *Wood*, 644 F.2d at 801; *GTE Wireless, Inc. v. Qualcomm, Inc.*, 192 F.R.D. 284, 286 (S.D. Cal. 2000). The complaint alleges: (i) many protected reports of whistleblowing (Complaint (Dkt. #3) ¶¶ 18, 20-27, 29-31) ; (ii) knowledge of those reports by the persons who retaliated against Mr. Baig (*id.* at ¶¶ 20, 23, 29, 30) (iii) multiple adverse actions (*id.* at ¶¶ 40-70), and (iv) temporal proximity and direct evidence of retaliatory animus, most notably sudden negative performance reviews, and termination after years of strong performance (*id.* at ¶¶ 70-73). *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009). This is more than sufficient to survive a motion to dismiss.

Moreover, Sarbanes-Oxley retaliation claims turn on whether Plaintiff's disclosures were objectively and subjectively reasonable and whether they were a contributing factor to adverse actions—quintessential fact issues unsuitable for resolution at the 12(b)(6) stage.[1] *See Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir. 2001).) [2]

---

[1] Defendants proffer their alternative view of the facts in Mr. Baig's complaint instead of taking the allegations therein as true. For example, defendants assert that Mr. Baig's numerous reports of unlawful activity are simply disagreements about technical requirements. (Mtn. to Dismiss (Dkt. #29) at pp. 12-14. Of course, this Court must credit Mr. Baig's allegations in assessing the viability of his complaint. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001).

[2] *Lee,* 250 F.3d at 688 ("Indeed, factual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6). Yet, in this case, defendants'

Indeed, defendants base their motion on the easily discredited notion that even cybersecurity issues as grave as those identified by Mr. Baig do not come within the purview of SOX. (Mtn to Dismiss (Dkt. #29) at pp. 9-10.) The analysis below quickly reveals that Mr. Baig's blew the whistle on matters of grave concern to the Securities and Exchange Commission and the investing public. Indeed, the Federal Trade Commission previously fined Meta $5 billion and imposed stringent privacy protections on defendant. Defendants terminated Mr. Baig after he reported numerous violations of those requirements. (Complain (Dkt. #3 at ¶¶ 70-73.)

For all these substantive reasons, the Court should exercise its discretion to deny defendants' motion. In addition, the Court should also deny the motion for defendants' failure to follow the Court's Civil Standing Order regarding discovery disputes.

## II. THRESHOLD PROCEDURAL DEFECT: DEFENDANTS FAILED TO FOLLOW THE COURT'S CIVIL STANDING ORDERS

As an initial matter, Defendants' motion should be struck as procedurally improper. This motion concerns a discovery dispute and must be presented according to Paragraph 8 of the Court's Civil Standing Orders, which require parties to prepare a joint letter brief of "no longer than four pages" summarizing the dispute after meeting and conferring. Paragraph 8 further mandates that "no motions regarding discovery disputes may be filed without prior leave of Court." Defendants ignored these clear procedures and filed an improper motion.

### A. Defendants Cannot Satisfy the Stringent Legal Standard for a Stay

#### 1. Contrary to Defendants' Claim, Stays of Discovery Pending a Ruling Upon a Motion to Dismiss Are Not Automatic in the Ninth Circuit.

Defendants argue that, as long as they can demonstrate that their motion seeks to dismiss the entire action and does not require discovery, this Court must stay discovery in this action.

---

arguments in favor of affirming the dismissal of plaintiffs' federal claims rest almost entirely on factual challenges. More importantly, the district court's decision to dismiss plaintiffs' federal claims was rooted in defendants' factual assertions. In granting defendants' motions, the court assumed the existence of facts that favor defendants based on evidence outside plaintiffs' pleadings, took judicial notice of the truth of disputed factual matters, and did not construe plaintiffs' allegations in the light most favorable to plaintiffs. We therefore also reverse the district court's dismissal of plaintiffs' § 1983 claims alleging violations of the First, Fourth, and Fourteenth Amendments on these independent grounds."

(Mtn. to Stay (Dkt. #30) at p. 2.) The Federal Rules of Civil Procedure and case law belie this claim.

District courts within the Ninth Circuit have taken differing approaches to evaluating the propriety of granting discovery stays. *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 602 (D. Nev. 2011)[3] (discussing the different approaches taken by district courts in the Ninth Circuit). The Ninth Circuit has found that "[a] district court may stay discovery when it is convinced that the plaintiff will be unable to state a claim for relief" *Wenger v. Monroe*, 282 F.3d 1068, 1077 (9th Cir. 2002) (quoting *Wood v. McEwen*, 644 F.2d 797, 802 (9th Cir. 1981)). The Ninth Circuit has also suggested that discovery stays are appropriate (1) in complex cases, such as antitrust cases, "because the costs of discovery in such actions are prohibitive"; *see Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) and (2) when the pending motion to dismiss requires resolution of threshold issues, like jurisdiction or immunity. *Jeter v. President of the U.S.*, 670 F. App'x 493, 494 (9th Cir. 2016); *Little v. Seattle*, 863 F.2d 681, 685 (9th Cir. 1988). None of these conditions for granting a stay obtain in the instant case.

Moreover, the two-prong test defendants invoke does not eliminate the requirement for a "strong showing" of good cause. *Gray*, 133 F.R.D. at 40 (quoting *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)). Indeed, if this test were applied literally, every motion to dismiss would require a stay of discovery in most cases. However, federal courts have repeatedly emphasized that there is no automatic entitlement to a discovery stay when a motion to dismiss is filed. The Federal Rules of Civil Procedure do not provide for automatic or blanket stays of discovery when a potentially dispositive motion is pending. As one court aptly observed: "Had the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. Pro. 12(b)(6) would stay discovery, the Rules would contain a provision to that effect. In fact, such a notion is directly at odds with the need for expeditious resolution of litigation." *Id.* The purpose of Rule 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves

---

[3] Moreover, some courts apply an even more restrictive standard, holding that a stay of discovery is not warranted simply because a dispositive motion is pending, and that courts may stay discovery only "when it is *convinced* that the plaintiff will be unable to state a claim for relief." *Tradebay,* 278 F.R.D. at 601.

to discovery, but this purpose does not automatically entitle defendants to halt all discovery proceedings. The rule allows defendants to challenge complaints while discovery proceeds, not to stop the litigation process entirely.

### III. DEFENDANTS BEAR A HEAVY BURDEN THEY CANNOT MEET

Under Ninth Circuit law, "[a] party seeking a stay of discovery carries the heavy burden of making a 'strong showing' why discovery should be denied." *Gray*, 133 F.R.D. at 40 (quoting *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)). "The moving party must show a particular and specific need for the protective order, as opposed to making stereotyped or conclusory statements." *Id.*

This heavy burden reflects federal courts' general preference for allowing discovery to proceed rather than creating unnecessary delays. The requirement for a "strong showing" goes beyond merely demonstrating that a motion to dismiss appears meritorious. Courts have consistently held that to establish good cause for a stay, the moving party must show more than an apparently meritorious Rule 12(b)(6) motion to dismiss is pending in the litigation. *Timothy v. Oneida Cnty.*, No. 4:14-cv-00362-BLW, 2015 U.S. Dist. LEXIS 90136 (D. Idaho July 9, 2015).

In considering a request for a discretionary stay, the Ninth Circuit requires courts to weigh: (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936)). It is Defendants, as the movant, who bear the burden of proving a stay is warranted. *Clinton v. Jones*, 520 U.S. 681, 708 (1997). Defendants have failed to meet this burden, as all three factors favor proceeding with discovery.

#### A. Factor One: Substantial Damage to Plaintiff from Granting a Stay

Granting a stay would cause significant, concrete harm to Mr. Baig:

Mr. Baig first blew the whistle in August 2022—over three years ago. Key meetings and conversations regarding his protected disclosures and the retaliatory responses occurred long ago. Memories fade with each passing month. Witnesses leave Meta. Relevant Slack and Workplace

channels may be subject to ongoing retention schedules. A stay exacerbates these risks and threatens irreparable loss of critical evidence.

Employment discrimination and retaliation cases are particularly time-sensitive because they depend heavily on witness recollections of workplace dynamics, conversations, and shifting treatment patterns—evidence that degrades rapidly with delay.  Moreover, Plaintiff has been unable to secure comparable employment, has lost high-level job opportunities, and faces severe reputational consequences from Meta's actions. Further delay compounds this harm.

### B.  Factor Two: No Hardship or Inequity to Defendants

#### 1.  The Requested Stay Period Is Minimal

In order to focus on the briefing of the motion to dismiss, the parties have already agreed to delay discovery until January 28, 2026, the day after the hearing on the instant motion is scheduled. However, the hearing on defendants' motion to dismiss is scheduled for March 3, 2026. Defendants therefore seek only an additional five weeks of stayed discovery beyond the agreed-upon date. Denying the stay will expedite discovery by a mere five weeks—a minimal timeframe that imposes no cognizable burden on Defendants while allowing the case to progress efficiently.

This short duration cuts against granting a stay. The minimal time savings to Defendants are vastly outweighed by the continued prejudice to Plaintiff and the general interest in avoiding unnecessary litigation delays.   In addition, defendants have not demonstrated any cognizable hardship from proceeding with discovery.

#### 2.  Defendants Are an $800-Billion Corporation with Sophisticated E-Discovery Infrastructure

The incremental cost of responding to discovery is negligible for an entity of this size and resources. For a corporation with Meta's resources and infrastructure, responding to discovery five weeks earlier than their preferred timeline creates no meaningful burden.

### C.  Factor Three: A Stay Would Not Serve the Orderly Course of Justice

A stay here would not benefit judicial economy or simplify issues. Routinely staying discovery for motions to dismiss would create unnecessary delays and inefficiencies. Motions to

dismiss are a frequent part of federal practice, and granting automatic stays would fundamentally undermine the discovery process contemplated by the Federal Rules. Rule 1 mandates that the Federal Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.  A stay directly contradicts this mandate.

## IV.    DEFENDANTS' MOTION TO DISMISS IS UNLIKELY TO SUCCEED, MAKING A STAY PARTICULARLY INAPPROPRIATE

### A. Even A Cursory Examination of The Motion to Dismiss Reveals It Is Very Unlikely to Succeed

First, defendants invite this Court to disregard the express allegations in the complaint and substitute their version of events leading to Mr. Baig's termination. (Mtn to Dismiss (Dkt. #29) at p. 14.)  Specifically, defendants ask to recast Mr. Baig's allegations of whistleblower retaliation as mere technical disagreements about how best to achieve customer privacy objectives. It is hornbook law that the Court must accept Mr. Baig's allegations as true at the pleading stage. Defendants' apparent need to deviate from this most basic tenet of law demonstrates the bankruptcy of their position.

Second, defendants ask the Court to disregard the inferences it must draw in favor of Mr. Baig. For example, defendants assert that the Court can determine as a matter of law that they lacked the requisite mental state to violate SOX and that the Court can determine that Mr. Baig has failed to allege causation. (Mtn to Dismiss (Dkt. #29) at pp 18-19.) Of course, these issues are inherently factual in nature and wholly improper bases for granting a motion to dismiss. *See, e.g., Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007).

Finally, and most tellingly, defendants primarily base their motion on the contention that Mr. Baig's many complaints were limited to technical cybersecurity issues entirely removed from the purview of the Sarbanes Oxley Act. (Mtn to Dismiss (Dkt. #29) at pp. 7-20.)

### B. Recent SEC guidance quickly disposes of defendants' position.

Indeed, the SEC has issued its Commission Statement and Guidance on Public Company Cybersecurity Disclosures to address the mounting threat public companies such as Meta

Platforms face in the modern era:

> Given the frequency, magnitude and cost of cybersecurity incidents, the Commission believes that it is critical that public companies take all required actions to inform investors about material cybersecurity risks and incidents in a timely fashion, including those companies that are subject to material cybersecurity risks but may not yet have been the target of a cyber-attack. Crucial to a public company's ability to make any required disclosure of cybersecurity risks and incidents in the appropriate timeframe are disclosure controls and procedures that provide an appropriate method of discerning the impact that such matters may have on the company and its business, financial condition, and results of operations, as well as a protocol to determine the potential materiality of such risks and incidents. n8 In addition, the Commission believes that the development of effective disclosure controls and procedures is best achieved when a company's directors, officers, and other persons responsible for developing and overseeing such controls and procedures are informed about the cybersecurity risks and incidents that the company has faced or is likely to face.

Commission Statement and Guidance on Public Company Cybersecurity Disclosures, 83 FR 8166, 8167, 83 FR 8166. *See* Request for Judicial Notice at Ex. 1.

The Commission went further:

> Cybersecurity risk management policies and procedures are key elements of enterprise-wide risk management, including as it relates to compliance with the federal securities laws. We encourage companies to adopt comprehensive policies and procedures related to cybersecurity and to assess their compliance regularly, including the sufficiency of their disclosure controls and procedures as they relate to cybersecurity disclosure.

*Id.*

Accordingly, the entire premise of defendants' 12(b)(6) motion—that Mr. Baig's myriad reports of cybersecurity deficiencies that expressly violated defendants' obligations under the

2020 Privacy Order and applicable SEC regulations do not come with the purview of SOX—is entirely false and must be rejected. Defendants' motion to stay should be denied.

Further review of Mr. Baig's allegations confirms the point. Defendants conveniently ignore that the cybersecurity issues Mr. Baig raised on numerous occasions were the subject of historic enforcement action against Meta. *See* Request for Judicial Notice at Ex. 2. (Federal Trade Commission Order Modifying Prior Decision and Order, *In re Facebook, Inc.,* 2020 FTC LEXIS 80 ("2020 Privacy Order").) The FTC imposed a $5 billion civil penalty upon Meta as a result of the 2020 Privacy Order described in the complaint. As part of the settlement, Meta was required to implement sweeping changes to its privacy practices. Meta was required to:

- Establish and maintain a *comprehensive, company-wide privacy program* that systematically assesses and mitigates risks to user information throughout the product lifecycle
- *Limit employee access* to personal data strictly to those with a legitimate business need and implement technical controls to enforce that restriction Confidential Submission Document
- Deploy *preventive and detective security safeguards*—including real-time monitoring—to protect user information from unauthorized access, scraping, or exfiltration
- *Report any incident* in which the covered information of 500 or more U.S. users is compromised to the FTC and affected users within the timelines set by the Order
- *Restructure corporate privacy governance* and *cease all misrepresentations* about data practices or compliance with privacy and security requirements

These obligations were designed to hard-wire privacy into Meta's operations, restrict broad internal data access, ensure prompt detection and disclosure of breaches, and hold the company accountable for truthful public disclosures. Mr. Baig reported on Meta's systematic and ongoing violation of its obligations to comply with these provisions:

- **No comprehensive privacy / cybersecurity program.** Meta "failed to put in place the necessary cybersecurity & privacy measures required in the 2020 FTC Consent Decree" despite repeated internal warnings;
- **Unrestricted employee access to production and warehouse data.** Until recently "1,500

engineers had root access to production systems" and "up to 100,000 people have access to the data warehouse," contrary to the Order's mandate to limit access to those with a business need;

- **Absence of monitoring, audit logs, and a Security Operations Center (SOC).** WhatsApp "lacks the ability to monitor employee access … and does not have a SOC to detect data breaches in real-time," violating required detective controls;

- **Mass scraping of profile photos and other user data with no preventive/detective controls or incident reporting.** Baig documented 400 million profile photos scraped daily and warned that WhatsApp "lacks these controls" and is "under-reporting … to regulators," breaching sections on safeguarding data and reporting Covered Incidents;

- **Ease of large-scale data exfiltration.** Engineers could "take a three-terabyte file containing user data and move it outside of Meta" without leaving an audit trail, showing failure to protect data and maintain immutable logs SOX Complaint;

- **No inventory or classification of user data.** WhatsApp "lacks knowledge of collected user data, storage locations… [and] absence of monitoring systems," contravening requirements to know and control Covered Information;

- **Hundreds of thousands of daily account compromises treated as non-incidents.** Internal estimates of "500,000 accounts compromised daily" were not audited or reported, violating breach-notification and response duties;

- **Falsification or suppression of security reports to hide non-compliance.** Baig stated he was "forced to suppress serious cybersecurity gaps and falsify multiple cybersecurity reports to leadership," undermining the Order's prohibition on misrepresentations about compliance;

Defendants also fail to point out that the SEC has implemented specific cybersecurity reporting requirements. The SEC adopted the Cybersecurity Risk Management, Strategy, Governance, and Incident Disclosure in July 2023. *See* Request for Judicial Notice at Ex. 1. Annual disclosures are required by Item 106 of Regulation S0K on Form 10-K regarding the company's cybersecurity risk management, strategy, and governance. This includes describing

1 risk assessment processes, the board's oversight, and management's role and expertise.
2 Companies must also state if cybersecurity risks, including past incidents, have materially affected
3 or are likely to affect the business.
4   Accordingly, it is immediately clear that Mr. Baig's whistleblowing activity comes directly
5 within the purview of SOX.

### C. False Statements in Meta's SEC Filings that Baig Reported

7 While Mr. Baig's reports of defendants' ongoing violations of their obligations under the
8 2020 Privacy Order are more than sufficient to support his SOX claim, Mr. Baig did even more.
9 He reported Meta's many failures to comply with SEC regulations, thus bringing his conduct
10 squarely within the protections afforded by SOX:

- 2023 & 2024 Form 10-K: Meta asserted it had "not identified any cybersecurity threats" that could affect the company's business or strategy, a representation Baig contended was untrue given the large-scale data-exfiltration risks he had already escalated. "Meta claimed no cybersecurity threats in 2023 and 2024." Complaint (Dkt. #3) at ¶¶ 26, 29, 58.
- 2024 Form 10-K: Meta stated that its Internal Audit function "provides an independent assessment of our cybersecurity programs," which Mr. Baig reported was misleading because Internal Audit was blocked from reviewing critical access-control issues and pressured to drop adverse findings. Complaint (Dkt. #3), Ex. A at ¶ 216.

19 As a result of this preliminary review, it is at once clear that defendants' 12(b)(6) motion
20 lacks substance. Surely, the drafters of the Federal Rules did not intend to delay the expeditious
21 resolution of cases simply because a defendant files an unmeritorious motion to dismiss. Indeed,
22 defendants' systematic acts of retaliation against Mr. Baig are exactly the evil SOX expressly aims
23 to punish,  Defendants' motion to stay must therefore be denied.
24 //
25 //
26 //
27 //
28

## V. CONCLUSION

For all the foregoing reasons, Defendants have failed to carry their heavy burden of demonstrating good cause for a protective order or that the relevant factors warrant a stay. The Court should deny defendants' motion in its entirety.

DATED: December 24, 2025

SCHONBRUN SEPLOW HARRIS
HOFFMAN & ZELDES LLP

By: */s/ Wilmer J. Harris*
Wilmer J. Harris
Amanda E. Johnson
*Attorneys for Plaintiff, Attaullah Baig*