1    PAUL HASTINGS LLP

2    Elena R. Baca (SB# 160564)
     elenabaca@paulhastings.com
3    Kristen Arabaci (SB# 341682)
     kristenarabaci@paulhastings.com
4    515 South Flower Street
     Twenty-Fifth Floor
5    Los Angeles, California 90071-2228
     Telephone: 1(213) 683-6000
6    Facsimile: 1(213) 627-0705

7

8    Attorneys for Defendants
     META PLATFORMS, INC., PINAKI MUKERJI,
9    MARK TSIMELZON, NITIN GUPTA, WILL
     CATHCART AND MARK ZUCKERBERG
10
     (*Additional counsel listed on next page*)
11

12                    UNITED STATES DISTRICT COURT

13                    NORTHERN DISTRICT OF CALIFORNIA

14

15   ATTAULLAH BAIG,                          CASE NO. 3:25-CV-07604-LDB

16              Plaintiff,                     **DEFENDANTS' REPLY
                                               MEMORANDUM OF POINTS AND
17        vs.                                  AUTHORITIES IN SUPPORT OF
                                               MOTION TO DISMISS PURSUANT
18   META PLATFORMS, INC., PINAKI              TO FEDERAL RULE OF CIVIL
     MUKERJI, MARK TSIMELZON, NITIN            PROCEDURE 12(B)(6)**
19   GUPTA, WILL CATHCART AND MARK
     ZUCKERBERG,                               Date: March 5, 2026
20                                             Time: 9:30 a.m.
                Defendants.                    Judge: Laurel D. Beeler
21                                             Courtroom: B, 15th Floor

22

23

24

25

26

27

28

DEFENDANTS' REPLY
                                               MEMORANDUM IN SUPPORT OF
                                               MOTION TO DISMISS

1  Paul C. Evans (admitted *pro hac vice*)
   paulevans@paulhastings.com
2  Jeffrey A. Sturgeon (admitted *pro hac vice*)
   jeffreysturgeon@paulhastings.com
3  Daniel S. Richards (admitted *pro hac vice*)
   danrichards@paulhastings.com
4  200 Park Avenue
   New York, NY 10166
5  Telephone: 1(212) 318-6000
6
7  Attorneys for Defendants
   META PLATFORMS, INC., PINAKI MUKERJI,
   MARK TSIMELZON, NITIN GUPTA,
8  WILL CATHCART AND MARK ZUCKERBERG
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANTS' REPLY
MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS

1

## TABLE OF CONTENTS

2

**Page**

3    I.    INTRODUCTION ........................................................................................................... 1

4    II.    ARGUMENT .................................................................................................................. 2

5         A.    Baig Cannot Rely on Allegations in his OSHA Complaint to State a Claim. ........ 2

         B.    Complaining to OSHA and the SEC Does Not Make Baig a Whistleblower. ........ 3

6         C.    Baig Did Not Believe He Reported Violations of the SEC's Cybersecurity
               Regulations. ............................................................................................................. 4

7         D.    Baig's Alleged Complaints Had Nothing to Do with Accounting Controls. .......... 5

8               1.    Baig's Use of the Word "Audit" Does Not Fundamentally Change
                     the Nature of His Complaints. ...................................................................... 5

9               2.    Section 806 Does Not Cover Internal Accounting Controls Statutes,
                     Not that Baig Disclosed Such Statutory Violations Anyway ....................... 6

10         E.    Baig Alleged Complaints Did Not Concern Shareholder Fraud. ............................ 8

11              1.    Baig's Disclosures Must Approximate a Shareholder Fraud Claim. ........... 8

12              2.    Baig Did Not Report Any Misrepresentations. ............................................. 9

13              3.    Any Alleged Omissions or Misrepresentations Were Immaterial. ............. 11

14              4.    The Alleged Misrepresentations Do Not Approximate Scienter. .............. 12

15              5.    Baig's Alleged Reports About Increased Regulatory Scrutiny Have
                     No Connection to the Purchase or Sale of a Security. ............................... 12

16         F.    Baig's Belief that He Complained About Wire Fraud Was Unreasonable. ........... 14

         G.    The Claims Against Zuckerberg, Cathcart, and Gupta Should be
17              Dismissed. ............................................................................................................. 14

     III.    CONCLUSION ........................................................................................................... 15

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Cases**                                                                                                  **Page(s)**

*In re Alphabet Sec. Litig.*,
   1 F.4th 687 (9th Cir. 2021) ................................................................................ 11, 13

*Baker v. Smith & Wesson, Inc.*,
   40 F.4th 43 (1st Cir. 2022) .................................................................................... 5, 7

*Blanton v. D.O.J.*,
   No. 2:23-CV-2987 DAD DB P, 2024 WL 3088241 (E.D. Cal. June 20, 2024),
   *report and recommendation adopted*, No. 2:23-CV-02987-DAD-DB (PC),
   2024 WL 3400137 (E.D. Cal. July 12, 2024) ........................................................... 3

*Brinker v. Axos Bank*,
   No. 22-CV-386-MMA (DDL), 2022 WL 17724408 (S.D. Cal. Dec. 15, 2022) ................... 4, 5

*Brinker v. Axos Bank*,
   No. 22-cv-386-MMA (DDL), 2023 WL 4535529 (S.D. Cal. July 13, 2023) ......................... 6

*Brinker v. Axos Bank*,
   No. 22-cv-386-MMA-DDL, 2023 WL 7167851 (S.D. Cal. Oct. 31, 2023) ......................... 7

*Day v. Staples, Inc.*,
   555 F.3d 42 (1st Cir. 2009) ..................................................................................... 8

*Erhart v. Bofi Holding, Inc.*,
   No. 15-CV-02287-BAS(NLS), 2016 WL 5369470 (S.D. Cal. Sept. 26, 2016) ................. 4, 5

*In re Facebook, Inc. Sec. Litig.*,
   84 F.4th 844 (9th Cir. 2023) .................................................................................... 11

*Fuqua v. SVOX AG*,
   No. 14 C 216, 2014 WL 3811047 (N.D. Ill. Aug. 1, 2014) .............................................. 9

*Gjovik v. Apple Inc.*,
   No. 23-CV-04597-EMC, 2024 WL 2309100 (N.D. Cal. May 20, 2024) ......................... 8, 12

*Halliburton, Inc. v. Admin. Rev. Bd.*,
   771 F.3d 254 (5th Cir. 2014) .................................................................................... 15

*Harrison v. Institutional Gang of Investigations*,
   No. C 07-3824 SI (PR), 2009 WL 1277749 (N.D. Cal. May 6, 2009) ............................... 3

*Jones v. Southpeak Interactive Corporation of Delaware*,
   777 F.3d 658 (4th Cir. 2015) .................................................................................... 15

*Liu v. Tutor-Perini Corp.*,
   No. 2-21-CV-05803-AB-Ex, 2023 WL 5434444 (C.D. Cal. July 12, 2023) ..................... 14

ii

*Magnuson v. Exelon Corp.*,
   658 F. Supp. 3d 652 (C.D. Ill. 2023) ........................................................................... 9

*Nance v. Time Warner Cable, Inc.*,
   433 F. App'x 502 (9th Cir. 2011) ................................................................................ 8

*Neely v. Boeing Co.*,
   No. C16-1791 RAJ, 2018 WL 2216093 (W.D. Wash. May 15, 2018) .................................. 10

*Nielsen v. AECOM Tech. Corp.*,
   762 F.3d 214 (2d Cir. 2014) ....................................................................................... 8

*Nordstrom v. U.S. Bank, N.A., Inc.*,
   No. 11-CV-1554 BEN (KSC), 2012 WL 3000416 (S.D. Cal. July 23, 2012) ......................... 10

*Northrop Grumman Sys. Corp. v. United States Dep't of Lab., Admin. Rev. Bd.*,
   927 F.3d 226 (4th Cir. 2019) ...................................................................................... 8

*Portes v. Wyeth Pharms., Inc.*,
   No. 06 CIV. 2689 (WHP), 2007 WL 2363356 (S.D.N.Y. Aug. 20, 2007) ............................ 13

*Prioleau v. Sikorsky Aircraft Corp.*,
   ARB Case No. 10-060, 2011 WL 6122422 (ARB Nov. 9, 2011) ....................................... 8

*Rocheleau v. Microsemi Corp.*,
   680 F. App'x 533 (9th Cir. 2017) ................................................................................ 8

*Rubi v. Summers*,
   No. CV 19-10885-ODW (AS), 2020 WL 6647725 (C.D. Cal. Oct. 19, 2020),
   *report and recommendation adopted*, No. CV 19-10885-ODW (AS), 2020 WL
   7210981 (C.D. Cal. Dec. 7, 2020) ............................................................................... 3

*SEC v. SolarWinds Corp.*,
   741 F. Supp. 3d 37 (S.D.N.Y. 2024) .......................................................................... 6, 7

*SEC v. Wilcox*,
   663 F. Supp. 3d 146 (D. Mass. 2023) .......................................................................... 6

*Sharkey v. J.P. Morgan Chase & Co.*,
   805 F. Supp. 2d 45 (S.D.N.Y. 2011) ........................................................................... 13

*Smith v. Warden, Deuel Vocational Inst.*,
   No. 2:18-CV-0347 DB P, 2019 WL 1367809 (E.D. Cal. Mar. 26, 2019) ........................... 2, 3

*Thomas v. Tyco Int'l Mgmt. Co., LLC*,
   262 F. Supp. 3d 1328 (S.D. Fla. 2017) ......................................................................... 7

*United States v. Wittig*,
   425 F. Supp. 2d 1196 (D. Kan. 2006) ........................................................................... 6

*Van Asdale v. Int'l Game Tech.*,
    577 F.3d 989 (9th Cir. 2009) ................................................................................. 8

*Wadler v. Bio-Rad Laboratories, Inc.*,
    141 F. Supp. 3d 1005 (N.D. Cal. 2015) ................................................................ 15

*Wagner v. S. Cal. Edison Co.*,
    No. 2:16-CV-06259-ODW(PLA), 2019 WL 1746127 (C.D. Cal. Apr. 18,
    2019), *aff'd*, 840 F. App'x 993 (9th Cir. 2021) ............................................... 8, 12

**Statutes**

15 U.S.C § 78m(b) ........................................................................................................ 5

15 U.S.C. § 7262(b) ...................................................................................................... 6

18 U.S.C. § 1514A ........................................................................................................ 3

**Other Authorities**

17 C.F.R. Part 211, Release No. SAB 99 (Aug. 12, 1999) ........................................ 11

17 C.F.R. § 229.106 ...................................................................................................... 4

Fᴇᴅ. R. Cɪᴠ. P. 8(a)(2) ................................................................................................... 2

1

## I.    **INTRODUCTION**

2

3      Baig's Opposition confirms what the Complaint[1] already reflects: it is inadequately pled.

4  Rather than defending what he pled, Baig attempts to replace it—offering new "facts" and legal

5  theories that appear nowhere in the operative pleading. He cannot rewrite his Complaint in

6  opposition briefing, import allegations from other forums, or manufacture claims after the fact to

7  avoid dismissal. Each of Baig's maneuvers is futile.

8      *First*, having failed to plead that he engaged in protected activity under SOX—or that any

9  individual Defendant retaliated against him—Baig simply rewrites the claim. *Compare* Mov. at 4-

10  7, *with* ECF No. 50 ("Opp.") at 8-12. To do so, he smuggles in allegations from an OSHA complaint

11  that are not pled in the operative Complaint. That fails for two independent reasons: (i) the

12  sufficiency of the pleading turns on what is alleged here—not in a different forum; and (ii) even if

13  those extraneous allegations were considered, they would not cure the fatal defects in Baig's claim.

14  For the latter reason, moreover, leave to amend would be futile.

15      *Second*, Baig attempts to bypass SOX's requirement that he plausibly allege an objectively

16  and subjectively reasonable belief of a covered violation. He argues that he engaged in protected

17  conduct because he filed a complaint with OSHA and submitted a form to the SEC. That is not

18  enough. What matters is the nature of the complaint itself, not where it was sent.

19      *Third*, implicitly conceding that his existing allegations are insufficient, Baig asserts both

20  unpled and deficient "new" theories of protected conduct. For example, while he *argues* his claim

21  is viable because he reported supposed violations of the SEC's 2023 cybersecurity rules—nowhere

22  does he *allege* the rules in his Complaint. While Baig argues that he reported deficiencies in Meta's

23  cybersecurity audits—only audits tied to accounting controls or financial reporting (which are not

24

25

26

27  ───────────────────

[1] All terms used but not defined herein have the meanings ascribed to them in Defendants' moving
28  brief, ECF No. 29 ("Mov.")

DEFENDANTS' REPLY
MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS

alleged) implicate SOX. And while Baig argues he reported purported shareholder fraud, not only is his argument based on the wrong legal standard, but also he fails to identify any specific material misrepresentation and relies (improperly) on matters outside the pleadings.[2]

Fourth, with respect to the individual Defendants, Baig simply invents facts. For example, in an effort to keep Mark Zuckerberg in the case, Baig now falsely asserts that Zuckerberg personally reassigned him, solicited negative feedback about Baig, and participated in his termination of employment. But those allegations do not appear in the Complaint.

By stretching, adding, and outright manufacturing allegations not contained in the operative pleading, Baig confirms what Defendants' opening brief already demonstrated: he failed to plausibly allege protected activity or retaliation. His claims against Meta and the individual Defendants should therefore be dismissed with prejudice.

## II.    ARGUMENT

### A.    Baig Cannot Rely on Allegations in his OSHA Complaint to State a Claim.

Baig repeatedly relies on allegations in his OSHA complaint to argue that he has met his obligation to plead facts that plausibly establish a claim[3]. E.g., Opp. at 15, 19-21, 25-26, 28 (citing Baig's OSHA complaint more than 25 times). But "[t]he charging allegations must be set forth in the [] complaint so defendants have fair notice of the claims plaintiff is presenting." Smith v. Warden, Deuel Vocational Inst., No. 2:18-CV-0347 DB P, 2019 WL 1367809, at *5 (E.D. Cal. Mar. 26, 2019); see also FED. R. CIV. P. 8(a)(2) (providing that a "pleading" must contain "a short

---

[2] Baig submits Meta's Form 10-Ks to support his shareholder-fraud theory. ECF Nos. 50-2, 50-3, 50-4. He selectively excerpts them—excerpts which do not appear in his Complaint—to argue certain disclosures are missing. They plainly are not. Infra § II.E.2.

[3] Baig initially filed his Complaint without any attachments. ECF No. 1. He later filed an "Errata", attaching the OSHA complaint as "Exhibit A," even though the Complaint itself does not reference any exhibit. ECF Nos. 2–3. In fact, the Complaint mentions his OSHA filing only in passing and does not describe the allegations Baig made in that forum. Compl. ¶¶ 11–14, 70.

DEFENDANTS' REPLY
MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS

and plain statement of the claim" (emphasis added)). Courts do not "review exhibits to determine what plaintiff's charging allegations are as to each named defendant." *Smith*, 2019 WL 1367809, at *5; *accord Blanton v. D.O.J.*, No. 2:23-CV-2987 DAD DB P, 2024 WL 3088241, at *1 (E.D. Cal. June 20, 2024) (same), *report and recommendation adopted*, No. 2:23-CV-02987-DAD-DB (PC), 2024 WL 3400137 (E.D. Cal. July 12, 2024).

Thus, Baig cannot avoid dismissal with citations to his OSHA complaint. *See, e.g.*, *Rubi v. Summers*, No. CV 19-10885-ODW (AS), 2020 WL 6647725, at *3 (C.D. Cal. Oct. 19, 2020) (refusing to deem as true allegations contained in administrative filings attached to complaint), *report and recommendation adopted*, No. CV 19-10885-ODW (AS), 2020 WL 7210981 (C.D. Cal. Dec. 7, 2020); *Harrison v. Institutional Gang of Investigations*, No. C 07-3824 SI (PR), 2009 WL 1277749, at *2–3 (N.D. Cal. May 6, 2009) (same for administrative appeals attached to complaint).

**B.    Complaining to OSHA and the SEC Does Not Make Baig a Whistleblower.**

Without reference to any authority whatsoever, Baig avers that he engaged in protected activity just by filing complaints with OSHA and the SEC[4]. Opp. at 16. But Baig must plead that he reasonably (and plausibly) believed the *substance* of his concerns pertained to violations of one of the six categories of law listed in 18 U.S.C. § 1514A(a)(1) ("Section 806"). *See* Mov. at 8.

Baig's reliance on 18 U.S.C. § 1514A(a)(1)(A) is misplaced. *Contra* Opp. at 16. There, Congress identified one of the three categories of eligible *recipients*—federal regulatory or law enforcement agencies—of an employee's Section 806 complaint. That is an *additional* requirement for statutory protection. Section 1514A(a)(1)(A) does not supplant the requirement that the substance of the employee's complaint reasonably concern a violation of one of the six categories

---

[4] Baig *argues* that he filed a Form TCR with the SEC, Opp. at 7, but the question is, what did he specifically tell the SEC? The Court certainly cannot form an opinion. Baig's Complaint is silent on the issue, nor does it say that Baig even sent the Form TCR to Meta. *See* Compl. ¶ 33.

of law listed in Section 806. *See Brinker v. Axos Bank*, No. 22-CV-386-MMA (DDL), 2022 WL 17724408, at *8 (S.D. Cal. Dec. 15, 2022) (Whether a SOX whistleblower's belief is reasonable "requires an examination of the reasonableness of a complainant's beliefs, but not whether the complainant actually communicated the reasonableness of those beliefs to management or the authorities." (citation modified)). Otherwise, every employee who complains to a supervisor (another eligible recipient of a SOX complaint) about anything would be cloaked in SOX whistleblower protections.

### C.    <u>Baig Did Not Believe He Reported Violations of the SEC's Cybersecurity Regulations.</u>

Baig's Opposition points to cybersecurity regulations adopted by the SEC in 2023. Opp. at 15-16. As a threshold matter, Baig's Complaint does not allege that he complained about violations of those regulations, which are not ever mentioned (not even in his irrelevant OSHA complaint). *See* Compl. Baig's only reference to them is in his Opposition. Opp. at 15-16 (citing 17 C.F.R. § 229.106). The Court should reject Baig's attempt to amend his Complaint through his Opposition.

This is not just a technical pleading deficiency. Baig must plausibly allege he subjectively and objectively believed the conduct he reported violated a law listed in SOX. Mov. at 8; Opp. at 17. "[T]o satisfy the subjective component of the reasonable belief standard, [Baig] must allege he actually believed that the conduct complained of constituted a violation of relevant law." *Erhart v. Bofi Holding, Inc.*, No. 15-CV-02287-BAS(NLS), 2016 WL 5369470, at *11 (S.D. Cal. Sept. 26, 2016) (citation modified). His Complaint and OSHA complaint do not reference any belief that he reported violations of the SEC's cybersecurity regulations. Opp. at 15-16 (citing Compl. ¶¶ 33, 63; Compl., Ex. A ¶¶ 216, 328). At most, he only alleges that he disclosed what he generically describes as "violations of SEC rules and regulations." Compl. ¶¶ 29, 37, 38, 76(a). And "[t]he Court cannot now articulate [Baig's] beliefs for him after the fact." *Erhart*, 2016 WL 5369470, at *11.

Lastly, even if the Court tried to analyze Baig's complaints in light of the SEC's

cybersecurity regulations, Baig fails to tie any alleged conduct in his Complaint to the SEC's cybersecurity regulations. His allegations that actually do (vaguely) reference SEC regulations do so in a purely conclusory fashion—none specifically identify the conduct he claims violated the cybersecurity regulations or explain why he believed they were violated. Compl. ¶¶ 29, 37, 38, 76(a). Accordingly, the Court cannot determine that Baig's belief that he reported violations of the SEC's cybersecurity regulations was objectively reasonable, either. *See* Mov. at 13-14 (citing *Erhart*, 2016 WL 5369470, at *11 and *Brinker*, 2022 WL 17724408, at *9).

      **D.**    **Baig's Alleged Complaints Had Nothing to Do with Accounting Controls.**

          1.    Baig's Use of the Word "Audit" Does Not Fundamentally Change the Nature of His Complaints.

As Defendants previously explained, the SEC's internal financial controls rule[5] requires public companies to maintain *accounting* processes that ensure the preparation of accurate *financial* statements for external reporting. Mov. at 10-14. None of Baig's allegations concern Meta's *accounting* processes for maintaining accurate *financial* statements. *Id.* That is why his alleged belief that he reported violations of the internal financial controls rule is unreasonable. *Id.*

Baig rejoins that his complaints about the need for cybersecurity audits of WhatsApp user data access, antitakeover measures, and data warehouses amount to complaints about internal accounting controls, as if the word "audit" magically cures the substantive deficiency in his claim. *Contra* Opp. at 25-26 (citing Compl. ¶¶ 17, 28, 55-57; Compl., Ex. A ¶¶ 300, 310, 332, 351). Baig cannot recast those cybersecurity allegations as complaints about Meta's *accounting controls*. A company can audit any number of things, including the number of paperclips in the mail room,

---

[5] Baig mistakenly instead relies on the Exchange Act's related internal accounting controls provision. Opp. at 25 (citing 15 U.S.C § 78m(b)(5)). That provision is not one of the listed laws in SOX and does not concern fraud against shareholders. *See Baker v. Smith & Wesson, Inc.*, 40 F.4th 43, 50 (1st Cir. 2022) (holding that Section 78m(b)(5) is not covered under SOX Section 806 and entering summary judgment for employer on SOX whistleblower claim).

cybersecurity data trails, or accounting processes concerning the preparation of financial statements. The only audits that matter here are the latter. Mov. at 12-13 (citing *SEC v. SolarWinds Corp.*, 741 F. Supp. 3d 37, 104–09 (S.D.N.Y. 2024)). And the authorities cited by Baig are not to the contrary. *See SEC v. Wilcox*, 663 F. Supp. 3d 146, 162–63 (D. Mass. 2023) (denying motion to dismiss because defendants allegedly "carr[ied] out improper and deceptive revenue recognition practices" that led to "overstated revenues and other manipulated financial metrics" in company's financial reports); *United States v. Wittig*, 425 F. Supp. 2d 1196, 1217 (D. Kan. 2006) (affirming verdict of liability because defendant precluded Arthur Anderson from auditing personal use of corporate aircraft, and chartered value of flights had to be reported in financial statements).

> 2.    Section 806 Does Not Cover Internal Accounting Controls *Statutes*, Not that Baig Disclosed Such Statutory Violations Anyway.

Baig cannot salvage his Complaint's conclusory invocation of "internal controls" by relying on SOX Section 404 or 15 U.S.C. § 78m(b)(2)(B)(iii) ("Section 13(b)(2)(B)(iii)").[6] Opp. at 26-27. Section 806 does not cover reports of violations of either provision. And Baig's alleged complaints about WhatsApp user data monitoring, inventory, and access did not reasonably concern violations of either in any event. *See* Compl. ¶¶ 17, 21, 30.

Section 404 is not listed in Section 806, not an SEC rule or regulation, and not a law concerning fraud against shareholders and therefore cannot serve as the basis of a SOX whistleblower claim. Mov. at 11 n.2. Even if it could, Baig's alleged belief that he was complaining about violations of Section 404 is objectively unreasonable. Section 404 requires that a public company's financial statements contain a certified assessment of its accounting controls. 15 U.S.C. § 7262(b); *accord Brinker*, 2023 WL 4535529, at *9. Baig allegedly complained about WhatsApp

---

[6] Baig purports to rely on SOX Section 404 but then excerpts Section 13(b)(2)(B)(iii), a provision of the Foreign Corrupt Practices Act. Opp. at 26. Defendants address both.

user data monitoring, inventory, and access. Opp. at 26. There is no bridge that gets from those complaints to management's certified assessment of Meta's accounting controls. Mov. at 10-14.

Baig's reliance on Section 13(b)(2)(B)(iii) is equally unavailing. Section 806 does not cover complaints about violations of that provision, either. *See Baker*, 40 F.4th at 50 (holding that Section 13(b)(2) is not covered under SOX Section 806 and entering summary judgment for employer on SOX whistleblower claim); *Brinker*, 2023 WL 7167851, at *6 (Section 13(b)(2)(B)(ii) "is facially neither an enumerated statute, an SEC rule or regulation, nor a law relating to shareholder fraud"). Just like Baig's flawed reliance on the SEC's cybersecurity rules, moreover, he never alleges his belief that he reported violations of Section 13(b)(2)(B)(iii). *See* Compl.

Nor does the alleged conduct reasonably concern Section 13(b)(2)(B)(iii). That provision requires public companies to devise and maintain "internal accounting controls" reasonably assuring that "access to assets" occurs only with management's authorization. The *SolarWinds* court explained that Congress's use of the phrase "internal *accounting* controls . . . refers to a company's *financial accounting*." 741 F. Supp. 3d at 106. Accordingly, Section 13(b)(2)(B)(iii) "does not govern every internal system a public company uses to guard against unauthorized access to its assets, but only those qualifying as 'internal accounting' controls." *Id.* at 108. Indeed, that statute "was enacted in 1977—long before cybersecurity became a relevant concept in business or society." *Id.* at 106. As a result, this Court should decline Baig's invitation to expand Section 13(b)(2)(B)(iii) to require controls on WhatsApp user data monitoring, inventory, and access. *Contra* Opp. at 26 (citing Compl. ¶¶ 17, 21, 30). His authorities certainly do not compel such an expansive interpretation. *See Thomas v. Tyco Int'l Mgmt. Co., LLC*, 262 F. Supp. 3d 1328, 1332, 1336–37 (S.D. Fla. 2017) (denying motion to dismiss SOX whistleblower claim based on alleged complaint about unreliability of "*financial* data reported to the SEC," because security of financial data (among other controls) "ensure[s] the accuracy of *financial* reporting (emphases added));

DEFENDANTS' REPLY
MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS

1  *Prioleau v. Sikorsky Aircraft Corp.*, ARB Case No. 10-060, 2011 WL 6122422, at *4–7, *9–10

2  (ARB Nov. 9, 2011) (denying company's summary disposition motion because allegation that

3  company failed to implement legal holds could qualify as protected activity, but (as noted by

4  dissent) failing to consider whether complaint concerned "*financial reporting*").

5

6          **E.      Baig Alleged Complaints Did Not Concern Shareholder Fraud.**

7          Baig failed to plead that he reasonably believed he reported shareholder fraud. Mov. at 14-

8  21. His allegations do not approximate a single element of a shareholder fraud claim.

9                  1.      Baig's Disclosures Must Approximate a Shareholder Fraud Claim.

10          As an initial matter, Baig's contention that his supposed reports of shareholder fraud need

11  not resemble an actual shareholder fraud claim should be rejected. *Contra* Opp. at 17. Courts in the

12  Ninth Circuit require SOX whistleblowers to approximate the elements of a shareholder fraud

13  claim. *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 1001 (9th Cir. 2009) ("[T]o have an

14  objectively reasonable belief there has been shareholder fraud, the complaining employee's theory

15  of such fraud must at least approximate the basic elements of a claim of securities fraud." (citation

16  omitted)); *Rocheleau v. Microsemi Corp.*, 680 F. App'x 533, 536 (9th Cir. 2017)[7]; *Nance v. Time*

17  *Warner Cable, Inc.*, 433 F. App'x 502, 504 (9th Cir. 2011); *Gjovik v. Apple Inc.*, No. 23-CV-04597-

18  EMC, 2024 WL 2309100, at *12 (N.D. Cal. May 20, 2024); *Wagner v. S. Cal. Edison Co.*, No.

19  2:16-CV-06259-ODW(PLA), 2019 WL 1746127, at *4 (C.D. Cal. Apr. 18, 2019), *aff'd*, 840 F.

20  App'x 993 (9th Cir. 2021); *accord Northrop Grumman Sys. Corp. v. United States Dep't of Lab.,*

21  *Admin. Rev. Bd.*, 927 F.3d 226, 234 (4th Cir. 2019); *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214,

22  221 n.6 (2d Cir. 2014); *Day v. Staples, Inc.*, 555 F.3d 42, 55 (1st Cir. 2009).

23

24

25

26

27  _____
[7] Baig's OSHA complaint cites *Rocheleau* for this very proposition. Compl., Ex. A ¶ 348 (The

28  "complaining employee's theory of securities fraud is objectively reasonable if it approximates the
basic elements of a securities fraud claim.").

DEFENDANTS' REPLY
MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS

Baig never wrestles with this binding precedent, instead relying on non-binding Administrative Review Board and Third Circuit decisions. Opp. at 17-18. Nor does he suggest how this Court *should* evaluate the reasonableness of his belief that he reported shareholder fraud. *Id.* Indeed, without reference to any of his allegations, Baig argues that "he reasonably believed that the conduct about which he was reporting may have constituted securities fraud." *Id.* at 17. The flaw in Baig's rudderless approach manifests in his conclusory reasoning.

### 2.    Baig Did Not Report Any Misrepresentations.

Baig's Complaint does not approximate the first element of a shareholder fraud claim. He failed to allege that he reported any affirmative, material misrepresentations made by Defendants. The allegations in Baig's Complaint belie his argument to the contrary. *Contra* Opp. at 19.

There, Baig alleges in conclusory fashion that his "disclosures consistently focused on conduct he reasonably believed constituted . . . securities fraud through misrepresentations about WhatsApp's security capabilities in public filings and statements." Compl. ¶ 37. Baig's Complaint does not identify any actual, substantive misrepresentations, however, making it impossible for the Court to evaluate the reasonableness of his alleged belief that he reported shareholder fraud. *See, e.g., Magnuson v. Exelon Corp.*, 658 F. Supp. 3d 652, 663 (C.D. Ill. 2023) (granting motion to dismiss SOX whistleblower because it lacked "basic details" about the misrepresentations); *Fuqua v. SVOX AG*, No. 14 C 216, 2014 WL 3811047, at *7 (N.D. Ill. Aug. 1, 2014) (granting motion to dismiss SOX whistleblower claim because plaintiff's complaint identified no specific misrepresentations or omissions).

The Court should end its inquiry there. But even considering Baig's OSHA complaint, he merely avers there that Meta's SEC filings "created the false impression that security breaches were occasional, manageable incidents that the company was monitoring" or were "'hypothetical' future threats." Opp. at 19-20. The first problem for Baig is that he failed to allege in *any* complaint that

he ever *complained* about Meta's SEC filings. Compl. ¶¶ 33, 63; Compl., Ex. A ¶¶ 216, 349-51. Thus, his belated reliance on Meta's SEC filings now cannot save his claim. *See, e.g.*, *Neely v. Boeing Co.*, No. C16-1791 RAJ, 2018 WL 2216093, at *4 (W.D. Wash. May 15, 2018) (granting motion to dismiss SOX whistleblower claim because "Plaintiff does not allege that he reported his belief that [Boeing's] actions were defrauding Boeing's shareholders"); *Nordstrom v. U.S. Bank, N.A., Inc.*, No. 11-CV-1554 BEN (KSC), 2012 WL 3000416, at *4 (S.D. Cal. July 23, 2012) (same because, "[w]hile Plaintiff alleges that he believed SOX violations occurred, he does not indicate that he actually *reported* such violations to management or supervisors").

The second problem for Baig is that he misrepresents what is in Meta's SEC filings, conveniently omitting portions directly undermining his argument. Indeed, Meta did not downplay the risk of cyberattacks, informing the public that it "regularly experience[s]" them and about the limitations of its cybersecurity efforts:

- "We *regularly experience* such cyber-attacks and other security incidents of varying degrees . . . ."

- "[W]e are a particularly attractive target for such breaches and attacks . . . ."

- "[C]omputer malware, viruses, social engineering (such as spear phishing attacks), scraping, and general hacking continue to be prevalent in our industry, *have occurred on our systems*, and will occur on our systems in the future. We also *regularly* encounter attempts to create false or undesirable user accounts, purchase ads, or take other actions on our platform . . . ."

- "[A]t any given time, we face known and unknown cybersecurity risks and threats that are not fully mitigated, and we discover vulnerabilities."

- Meta's cybersecurity "measures will not provide absolute security, and we cannot assure you that we will be able to react in a timely manner to any cyber-attacks or other security incidents, or that our remediation efforts will be successful."

- "Our efforts to protect our company data or the information we receive, and to disable undesirable activities on our platform, may also be unsuccessful . . . ."

- "[W]e cannot . . . provide assurances that we have not experienced undetected cybersecurity

incidents."

- "[D]espite our efforts, we cannot eliminate all risks from cybersecurity threats, or provide assurances that we have not experienced undetected cybersecurity incidents."

ECF No. 50-3 at 45-46 (emphases added), 52; *accord* ECF No. 50-4 at 44-45, 50. Thus, Baig's argument that Meta's SEC filings contain misstatements of fact are contradicted by the very documents he now tries to inappropriately introduce through briefing. The filings themselves render the authority he cites manifestly distinguishable. *See In re Facebook, Inc. Sec. Litig.*, 84 F.4th 844, 859 (9th Cir. 2023) (faulting Facebook's 2016 10-K for presenting cyberattack risks as "purely hypothetical" when they were ongoing); *In re Alphabet Sec. Litig.*, 1 F.4th 687, 704 (9th Cir. 2021) (same with respect to Alphabet's 2018 Form 10-Q that stated data breaches could happen when Alphabet was aware of leak of user data to third-party developers).

3.    Any Alleged Omissions or Misrepresentations Were Immaterial.

Baig's materiality argument omits reference to his Complaint. Opp. at 22-24. He never explains why Meta's alleged omissions were material to investors. *Id.* Instead, he dismantles another straw man—that he need not establish a drop in Meta's share price to state a claim. *Id.*

But Defendants argued that share price is but one of many factors[8] considered in the materiality analysis. Mov. at 16 (setting forth the standard as whether the misrepresentation "significantly altered the 'total mix' of information made available" (citation omitted)); *accord* 17 C.F.R. Part 211, Release No. SAB 99 at 3-4 (Aug. 12, 1999). Meta established that Baig failed to allege anything whatsoever about whether any alleged misrepresentation "impacted Meta's financial condition or results of operations, revenue, or earnings, caused a failure to meet analysts'

---

[8] To the extent Baig argues Meta's share-price increase is wholly irrelevant to materiality, he is wrong. *See* Mov. at 17-18; 17 C.F.R. Part 211, Release No. SAB 99 at 4 (Aug. 12, 1999) ("When . . . a known misstatement may result in a significant positive or negative market reaction, that . . . should be taken into account when considering whether a misstatement is material.").

consensus expectations, or disrupted Meta's business by losing customers."[9] Mov. at 16. Meta

further demonstrated that the alleged misrepresentations Baig vaguely alludes to concerning

*WhatsApp's* cybersecurity controls would be immaterial to a *Meta* investor given the size and scale

of Meta's operations. *Id.* at 16-17. Baig does not respond to these arguments. Opp. at 22-24.

His attempt to escape his pleading obligations on the ground that materiality is a fact-

intensive inquiry should also be rejected. *Contra id.* Materiality is a shareholder-fraud element that

Baig's alleged disclosures must still "approximate." *Supra* § II.E.1. Courts therefore grant motions

to dismiss Section 806 claims premised on reports of immaterial public misrepresentations. *See,*

*e.g., Gjovik*, 2024 WL 2309100, at *12–13; *Wagner*, 2019 WL 1746127, at *4.

### 4.    The Alleged Misrepresentations Do Not Approximate Scienter.

Defendants' alleged omissions in Baig's Complaint do not give rise to an inference of

scienter. Mov. at 18-19. Nor do the statements in Meta's Form 10-K identified in Baig's OSHA

complaint. Baig must allege that Meta *intended* for those statements to deceive shareholders. *Id.* at

18. He only alleges, however, that Meta employees blocked cybersecurity audits contrary to its

representation that its audit function was effective. Compl., Ex. A ¶¶ 216, 351. Baig does not allege

that Meta intentionally misrepresented its cybersecurity audit function to deceive shareholders. *Id.*

And he failed even to allege that Meta made misleading statements about cyberattack risks, *supra*

p. 9, let alone allege that Meta intended for such statements to deceive shareholders.

### 5.    Baig's Alleged Reports About Increased Regulatory Scrutiny Have No Connection to the Purchase or Sale of a Security.

Baig fails to state a whistleblower claim based on shareholder fraud because his Complaint

does not tie potential regulatory fines to Meta's SEC filings. Even if it did, it is not shareholder

---

[9] The same is true of the Form 10-K statements alleged in Baig's OSHA complaint, OSHA Compl.
¶¶ 216, 351, which Meta's moving brief did not address. Baig just alleges those statements
contradict what he saw, not anything that would facilitate a finding of materiality. *Id.*

DEFENDANTS' REPLY
MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS

fraud to omit unrealized fines from public statements.

Contrary to his Opposition, Baig's Complaint does not allege that he complained to anyone that Meta's Form 10-K misled shareholders by omitting potential regulatory fines for violating the 2020 Privacy Order. Compl. ¶ 33; Compl., Ex. A ¶ 307. At most, he alleges that he reported Meta might face such regulatory penalties, Compl. ¶¶ 21, 25-31, and now he *argues* that Meta's SEC's filings omitted those risks, Opp. at 24-25. That is a distinction with a difference. *Supra* p. 4.

Besides, it is not as if Meta allegedly failed to disclose significant monetary fines to investors. Instead, Baig claims that Meta failed to inform shareholders about his own speculative concern that it might someday incur penalties. Accepting Baig's argument would mean *any* public-company employee could bring a Section 806 claim by complaining that regulators *might* come knocking. That is not the law. Mov. at 20 (collecting cases); *see also Portes v. Wyeth Pharms., Inc.*, No. 06 CIV. 2689 (WHP), 2007 WL 2363356, at *4 (S.D.N.Y. Aug. 20, 2007) ("The purported violations involved the Consent Decree, FDA regulations, EU regulations, and other drug manufacturing guidelines, not SEC rules or other federal law related to fraud against shareholders."). Baig never addresses these authorities, and none of his cases suggest that merely reporting potential regulatory fines approximates a shareholder-fraud claim. *Cf. Alphabet*, 1 F.4th at 702–04 (faulting Alphabet's Form 10-Q for other reasons and noting it did properly "warn[] of the harms that could follow from the detection and disclosure of security vulnerabilities, including public concerns about privacy and regulatory scrutiny"); *Sharkey v. J.P. Morgan Chase & Co.*, 805 F. Supp. 2d 45, 55–57 (S.D.N.Y. 2011) (ruling that Section 806 claim was plausible based on plaintiff's reports of financial crimes by customer, and distinguishing regulatory violations in *Portes* as not qualifying as protected activity under Section 806).[10]

---

[10] Baig's Opposition ignores that his disclosures did not approximate the elements of loss causation or economic loss. The Court can reject his shareholder-fraud theory on this ground alone.

- 13 -   DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

**F.    Baig's Belief that He Complained About Wire Fraud Was Unreasonable.**

The term wire fraud appears exactly *once* in Baig's Complaint. He alleges in conclusory fashion that he believed he reported wire fraud. Compl. ¶ 37. He references it twice in his OSHA complaint to explain that Section 806 covers reports of violations of the wire-fraud statute and again to reassert his conclusory belief he reported wire fraud. Compl., Ex. A ¶¶ 341, 348, 354. In none of those instances does Baig allege that Defendants operated a scheme to deprive anyone of money or property or specifically intended to do so. That pleading failure dooms his claim. Mov. at 21-22.

Baig argues (but fails to allege in his Complaint) that Meta's supposed failure to limit employee access to user data and external access to user photos and accounts qualifies as a scheme to deprive users of money or property, but the lone authority he cites does not stand for that proposition. *See Liu v. Tutor-Perini Corp.*, No. 2-21-CV-05803-AB-Ex, 2023 WL 5434444, at *6–8 (C.D. Cal. July 12, 2023) (finding that plaintiff reasonably believed he reported wire fraud because company repeatedly emailed fraudulent environmental test results "to obtain money and/or property" from public agency with which company had a contract). Baig's threadbare allegations are insufficient for the Court to conclude he reasonably believed he reported wire fraud.

**G.    The Claims Against Zuckerberg, Cathcart, and Gupta Should be Dismissed.**

Baig's Opposition simply invents allegations to argue that Zuckerberg, Cathcart, and Gupta were involved in any adverse action taken against him. Mov. at 22. This is not an overstatement.

As for Zuckerberg, Baig's Complaint alleges he sent two letters to Zuckerberg raising concerns. *Id.* at 23. Baig's Opposition, by contrast, argues that Zuckerberg was "actively involved" in "reassigning [Baig] to a new manager, colluding to cover up retaliation against Mr. Baig, eliciting negative feedback" on Baig, and "participating in the decision to terminate Mr. Baig." Opp. at 12 (citing Compl. ¶¶ 67-68, 70-73 and Compl. Ex. A ¶¶ 251-252, 335). None of these allegations, all of which are false, are pled in Baig's Complaint (or his irrelevant OSHA complaint).

1
2
3
4
5
6
7

Next, Baig avers that Cathcart can be liable "through calculated indifference." Opp. at 28. But he does not plead that Cathcart was aware of, much less personally participated in, any alleged adverse action Baig experienced, which warrants dismissal of the claim against Cathcart. Mov. at 24-25 (citing Compl. ¶¶ 20-21, 23, 39, 66). Even the OSHA complaint only ever alleges Cathcart's "calculated indifference" with respect to Baig's *concerns*, not any adverse action. Compl., Ex. A ¶¶ 58-59, 63-64, 72, 85, 89, 94-96, 215, 224, 299, 319, 347.

8
9
10
11
12
13
14
15
16

As for Gupta, Baig alleges that *another employee* told Baig that preparing a document outlining cybersecurity failures would lead Gupta to fire Baig, not that *Gupta* actually said or did anything. Compl. ¶ 39; Compl., Ex. A ¶ 67; Mov. at 23-24. There also is no allegation in any complaint that Gupta approved Baig's termination of employment. And there is but one allegation in Baig's *OSHA complaint* that Gupta did not act on Baig's request for "staffing support . . . to remediate the profile scraping risk." Compl., Ex. A ¶ 229. That is hardly the sort of materially adverse action sufficient for individual liability. *See Halliburton, Inc. v. Admin. Rev. Bd.*, 771 F.3d 254, 260 (5th Cir. 2014) (setting forth the standard for a Section 806 qualifying personnel action).[11]

17

### III.    CONCLUSION

18
19
20
21
22
23

Baig's Complaint should be dismissed with prejudice because he failed to plead that he engaged in protected activity under Section 806. Baig's claims against Zuckerberg, Cathcart, and Gupta should be dismissed for the additional reason that he cannot connect them to any materially adverse actions. And even if Baig's manufactured allegations were properly before the Court, he still failed to state a claim. Thus, leave to amend would be futile.

24
25
26
27
28

[11] Baig's cases are consistent with dismissal of the claims against these Defendants who took no alleged action against Baig. *See Jones v. Southpeak Interactive Corporation of Delaware*, 777 F.3d 658, 675 (4th Cir. 2015) (affirming jury verdict against individual officers because they "were involved in the decision to fire" plaintiff); *Wadler v. Bio-Rad Laboratories, Inc.*, 141 F. Supp. 3d 1005, 1021 (N.D. Cal. 2015) (dismissing claims against directors because plaintiff failed to allege "any specific conduct on the part of these individuals").

1  DATED: February 11, 2026          PAUL HASTINGS LLP

2

3                                    By: _____

4                                        Elena R. Baca (SB# 160564)
                                         Kristen Arabaci (SB # 341682)
5                                        Paul C. Evans (admitted *pro hac vice*)
                                         Jeffrey A. Sturgeon (admitted *pro hac vice*)
6                                        Daniel S. Richards (admitted *pro hac vice*)

7

8                                    Attorneys for Defendants
                                     META PLATFORMS, INC., PINAKI
9                                    MUKERJI, MARK TSIMELZON, NITIN
                                     GUPTA, WILL CATHCART AND MARK
10                                   ZUCKERBERG

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                     DEFENDANTS' REPLY
                                                     MEMORANDUM IN SUPPORT OF
                                                     MOTION TO DISMISS