UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| ATTAULLAH BAIG,<br><br>    Plaintiff,<br><br>    v.<br><br>META PLATFORMS, INC., et al.,<br><br>    Defendants. | Case No. 25-cv-07604-LB<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: ECF No. 29 |

**INTRODUCTION**

The plaintiff, a former head of cybersecurity at WhatsApp, sued Meta Platforms, Inc. (WhatsApp's parent company), Mark Zuckerberg (Meta's CEO), Will Cathcart (head of WhatsApp), Nitin Gupta (head of engineering at WhatsApp), and Pinaki Mukerji and Mark Tsimelzon (the plaintiff's supervisors) for retaliation based on his reporting misconduct by the defendants, including (1) violations of rules and regulations of the Securities and Exchange Commission (SEC) regarding cybersecurity disclosures, (2) securities fraud, (3) violations of the requirement to maintain appropriate internal-accounting controls, and (4) wire fraud concerning systemic failures to protect user data. He brings one claim under Section 806 of the Sarbanes-Oxley Act (SOX), 18 U.S.C. § 1514A, which protects employees of publicly traded companies from discrimination in the terms and conditions of their employment when they report conduct that they

ORDER – No. 25-cv-07604-LB

reasonably believe constitutes securities fraud, wire fraud, bank fraud, mail fraud, any rule or regulation of the SEC, or any provision of federal law relating to fraud against shareholders.

The defendants moved to dismiss, contending that (1) the plaintiff's allegations that he reported violations of SEC rules or regulations are conclusory, (2) the plaintiff improperly relies on the allegations of a complaint he filed with OSHA to fill the gaps in his complaint, (3) the plaintiff has not pleaded conduct approximating the basic elements of securities fraud or wire fraud, (4) his reporting Meta's alleged misconduct does not relate to internal-accounting controls because cybersecurity violations do not involve financial reports, and (5) there are insufficient facts supporting individual claims against Zuckerberg, Cathcart, or Gupta. The plaintiff responds that (1) his pleadings about cybersecurity violations are protected under Section 806, (2) disclosures to the SEC and OSHA are protected activities, (3) he need only plead a reasonable belief of a violation and not approximate the basic elements of fraud (but has done so anyway), (4) his reporting about obstruction of the internal-audit function was a protected activity under Section 806, and (5) he sufficiently pleaded claims against the individual defendants.

The court dismisses the plaintiff's claim without prejudice. The complaint does not contain sufficient facts to show that the plaintiff reported violations of SEC rules or regulations, the plaintiff did not plead facts regarding the elements of securities fraud or wire fraud, and his reporting cybersecurity violations does not relate to rules governing internal-accounting controls.

## STATEMENT

In September 2021, the plaintiff joined WhatsApp as head of security and discovered several cybersecurity issues that he believed would violate a 2020 Federal Trade Commission (FTC) Privacy Order against Meta, including that about 1,500 engineers had unrestricted access to user data, allowing them to move or steal sensitive information without an audit trail.[1] He also found that Meta lacked basic security infrastructure like (1) a 24/7 Security Operations Center to detect

---

[1] Compl. – ECF No. 3 at 4 (¶ 17). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

United States District Court
Northern District of California

breaches in real time, (2) a monitoring system for user-data access, (3) an inventory of user-data locations, (4) a process to audit employee access to data, (5) adequate measures to prevent account takeovers, and (6) adequate measures preventing profile scraping.[2] The plaintiff warned Meta of legal consequences, pointing to SEC and FTC settlements for similar failures.[3]

Between September 2021 and September 2022, the plaintiff raised concerns about cybersecurity issues to his supervisor five times but was ignored.[4] In August 2022, the plaintiff met with Will Cathcart (head of WhatsApp) and other senior executives to disclose "dangerous cybersecurity understaffing and systemic security failures."[5] From October 2022 to September 2023, the plaintiff continued raising concerns about cybersecurity failures that resulted in data breaches.[6]

In January 2024, the plaintiff sent a letter to Meta CEO Mark Zuckerberg documenting "(a) violations of the 2020 Privacy Order; (b) violations of SEC rules and regulations; (c) escalating retaliation against him for raising these concerns; and (d) evidence that the central security team had falsified security reports to cover up decisions not to remediate data exfiltration risks."[7] In November 2024, the plaintiff "filed a Form TCR with the [SEC] documenting Meta's cybersecurity deficiencies and failure to inform investors about material cybersecurity risks."[8] The plaintiff sent a second letter to Zuckerberg in December 2024 in which the plaintiff documented continued cybersecurity problems and retaliation, informed him that the plaintiff had filed an SEC complaint, and requested action addressing his concerns.[9]

The plaintiff's disclosures during his employment with WhatsApp focused on what he believed were

---

[2] *Id.* at 5 (¶ 21).

[3] *Id.* at 5–6 (¶ 22).

[4] *Id.* at 4 (¶ 18).

[5] *Id.* at 4–5 (¶ 20).

[6] *Id.* at 5–7 (¶¶ 22–28).

[7] *Id.* at 7 (¶ 29).

[8] *Id.* at 8 (¶ 33).

[9] *Id.* at 9 (¶ 34).

(a) violations of SEC rules and regulations regarding internal controls and material cybersecurity risks; (b) securities fraud through misrepresentations about WhatsApp's security capabilities in public filings and statements; (c) violations of the 2020 Privacy Order constituting potential shareholder fraud; and (d) wire fraud through systemic failures to protect user data as represented to regulators and the public.[10]

The plaintiff suffered retaliation based on these disclosures.

On September 29, 2022, defendant Pinaki Mukerji gave the plaintiff negative performance feedback that he was "not performing well" and that the "quality of his written work product was insufficient."[11] During a performance review in October 2022, Mukerji told the plaintiff that he was in "Needs Support" territory and issued an ultimatum that the plaintiff must secure positive feedback from the Integrity and Data Science teams by the end of the year or face negative impact on his performance rating.[12] In his February 2023 annual performance review, the plaintiff received a rating of "Consistently Meets Expectations," despite his supervisor's promising that he would receive a rating of "Greatly Exceeds Expectations," which resulted in the plaintiff's losing out on a promotion, higher bonus payments, and discretionary equity grants worth approximately $600,000, denied by Mukerji and Gupta.[13]

Throughout 2024, the defendants "engaged in systemic sabotage of [the plaintiff's] successful cybersecurity initiatives," including by blocking implementation of the plaintiff's suggested security improvements, refusing to provide necessary staffing to address security gaps, and excluding the plaintiff's team from budget allocations for 250 additional engineers that Gupta received for initiatives.[14] Cathcart refused a request by one of the plaintiff's team members to prioritize "user safety over internal politics" and to restore a project by the team that had been discontinued by supervisor Mark Tsimelzon.[15]

---

[10] *Id.* (¶ 37).

[11] *Id.* at 10 (¶ 40).

[12] *Id.* at 11 (¶ 44).

[13] *Id.* at 12–13 (¶¶ 48–51).

[14] *Id.* at 15–17 (¶¶ 63, 65–66, 68).

[15] *Id.* at 16 (¶¶ 65–66).

ORDER – No. 25-cv-07604-LB                4

In January 2025, the plaintiff filed a complaint with OSHA based on the above violations.[16] The plaintiff was terminated on February 10, 2025, and he filed an additional OSHA complaint based on his termination.[17]

The parties consented to magistrate-judge jurisdiction.[18] 28 U.S.C. § 636(c). The court grants the requests for judicial notice of an OSHA letter with its findings for the plaintiff's case and SEC filings from Meta.[19] Fed. R. Evid. 201(b). The court held a hearing on March 19, 2026.

## LEGAL STANDARD

A complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief to give the defendant fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It may fail by lacking a cognizable legal theory or sufficient facts under one. *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016). The court accepts factual allegations as true and construes them favorable to plaintiffs. *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018). But allegations must state a plausible claim. *Twombly*, 550 U.S. at 570. Threadbare recital of the elements of a claim, supported by mere conclusory statements, do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## SARBANES-OXLEY ACT, 18 U.S.C. § 1514A

SOX's whistleblower provision protects employees of publicly traded companies from discrimination in the terms and conditions of their employment when they take certain actions to report conduct that they reasonably believe constitutes wire fraud, bank fraud, securities fraud, mail fraud, any rule or regulation of the Securities and Exchange Commission, or any provision of

[16] *Id.* at 3 (¶ 12).

[17] *Id.* at 3 (¶ 13), 16 (¶ 70).

[18] Consent – ECF No. 55.

[19] Reqs. Judicial Notice – ECF Nos. 29-1, 50-1. The plaintiff's objection to the defendants' request for judicial notice are moot because the court does not rely on OSHA's findings in deciding the issues. *See* Objs. – ECF No. 50-7.

United States District Court
Northern District of California

federal law relating to fraud against shareholders. 18 U.S.C. § 1514A. Section 1514A claims are governed by a burden-shifting procedure where the plaintiff is first required to establish a prima facie case of retaliatory discrimination. *Id.* § 1514A(b)(2)(A); 49 U.S.C. § 42121(b)(2)(B)(i).

To make a prima facie case, the plaintiff must show that (1) he engaged in protected activity or conduct, (2) his employer knew or suspected, actively or constructively, that he engaged in the protected activity, (3) he suffered an unfavorable personnel action, and (4) the circumstances were sufficient to raise an inference that the protected activity was a contributing factor in the unfavorable action. *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 996 (9th Cir. 2009); 29 C.F.R. § 1980.104(e)(1)–(2). An employee must also have a subjective belief that the conduct being reported violated a listed law, and this belief must be objectively reasonable. *Rocheleau v. Microsemi Corp.*, 680 F. App'x 533, 535 (9th Cir. 2017) (cleaned up). If the plaintiff meets his burden of establishing a prima facie case, then "the employer assumes the burden of demonstrating by clear and convincing evidence that it would have taken the same adverse employment action in the absence of the plaintiff's protected activity." *Van Asdale*, 577 F.3d at 996.

### ANALYSIS

The motion turns on whether the plaintiff engaged in a protected activity under SOX Section 806. The defendants assert that (1) the plaintiff's allegations that he reported violations of SEC rules or regulations are conclusory, (2) the plaintiff improperly relies on the allegations of his OSHA complaint to fill the gaps in his pleadings, (3) the plaintiff must plead conduct approximating the basic elements of securities fraud or wire fraud but has not done so, (4) and his reporting of alleged misconduct does not relate to internal-accounting controls because cybersecurity violations do not involve financial reports.[20] The plaintiff responds that he engaged in a protected activity by reporting four categories of conduct: (1) violations of SEC rules and regulations regarding cybersecurity disclosures, (2) securities fraud through misrepresentations about WhatsApp's cybersecurity risks, audit activities in public filings and statements, and

---

[20] Reply – ECF No. 64 at 8–9.

violations of the 2020 Privacy Order, (3) violations of the requirement to maintain appropriate internal-accounting controls and intentional circumvention of controls through blocking the internal-audit function, and (4) wire fraud concerning systemic failures to protect user data.[21]

On this record, the plaintiff has not plausibly pleaded a reasonable belief that he performed a protected activity under SOX because (1) the allegations of his complaint lack sufficient detail to show that he reported violations of SEC rules or regulations, (2) he has not pleaded facts for the basic elements of securities fraud or wire fraud, (3) the plaintiff's alleged cybersecurity violations are not violations of accounting controls, and (4) the plaintiff cannot rely on the allegations in his OSHA complaint to fill these gaps.

### 1. Violations of SEC Rules and Regulations

The plaintiff contends that he engaged in protected activity by reporting (both internally and externally) the defendants' (1) noncompliance with SEC regulations requiring a public company to disclose certain cybersecurity information in Form 10-K filings under 17 C.F.R. § 229.106 and (2) noncompliance with SEC rules requiring public companies to disclose all material cybersecurity incidents.[22] The defendants counter that there are no allegations in the complaint that the plaintiff had a reasonable belief that SEC cybersecurity regulations were a violation of relevant law, and the allegations in his OSHA complaint cannot take the place of allegations missing from his complaint.[23]

The complaint does not contain allegations that the plaintiff reasonably believed that he was disclosing violations of SEC rules or regulations by the defendants. The plaintiff alleged that he "filed a Form TCR with the [SEC] documenting Meta's cybersecurity deficiencies and failure to inform investors about material cybersecurity risks," but without more detail about what he stated in the form, he has not plausibly pleaded a protected activity.[24] The plaintiff's pleading that he

[21] Opp'n – ECF No. 50 at 14.

[22] *Id.* at 14–16.

[23] Reply – ECF No. 64 at 9–10.

[24] Compl. – ECF No. 3 at 9 (¶ 33); Reply – ECF No. 64 at 9 n.4, 10.

reasonably believed that he was disclosing "violations of SEC rules and regulations" is a conclusion that does not support a plausible claim.[25]

The plaintiff contends that communications to "federal regulatory or law enforcement agenc[ies]" are independently protected under SOX regardless of content. This ignores the requirement in § 1514A(a)(1) that the employee must reasonably believe that the information he is providing is a violation of one of the six categories of law listed in the statute.[26] While the plaintiff attached his OSHA complaint that he contends contains those allegations, he must still plead the required facts in his complaint.[27] *See Rubi v. Summers*, No. CV 19-10885-ODW (AS), 2020 WL 6647725, at *3 (C.D. Cal. Oct. 19, 2020) ("Although the administrative filings attached to the Complaint offer more details about the underlying incidents, Plaintiff's claim here cannot rely simply on facts contained within exhibits and attachments."). The plaintiff also cited Meta's SEC filings that the court judicially noticed, but the court does not search through exhibits without pin cites. *See Northfield Ins. Co. v. Yates, Wood, & MacDonald, Inc.*, No. 2:24-cv-00441-TL, 2024 WL 4751181, at *2 (W.D. Wash. Nov. 12, 2024) ("The Court is not obligated to hunt through the Parties' submissions for evidence." (citing *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003))).

On this record, the plaintiff has not plausibly pleaded that he reasonably believed that he reported violations of SEC rules or regulations.

## 2. Securities Fraud

Initially, the parties dispute what the plaintiff must plead to show a reasonable belief that he disclosed securities fraud. The defendants contend that his allegations must approximate the basic elements of securities fraud, and the plaintiff counters that he only needs a reasonable belief that his disclosures related to a possible violation of securities law.[28] The plaintiff must have "an

---

[25] Compl. – ECF No. 3 at 9 (¶ 37); Reply – ECF No. 64 at 10–11 (making this point).

[26] Reply – ECF No. 9–10 (making this point).

[27] *Id.* at 9.

[28] Opp'n – ECF No. 50 at 17–18; Reply – ECF No. 64 at 14–15.

United States District Court
Northern District of California

objectively reasonable belief there has been shareholder fraud," and the "theory of such fraud must at least approximate the basic elements of a claim of securities fraud." *Rocheleau*, 680 F. App'x at 535 (cleaned up). The plaintiff does not cite authority supporting a contrary result.[29]

The issue then is whether the plaintiff has pleaded facts for the elements of a securities-fraud claim: "material misrepresentation or omission, scienter, a connection with the purchase or sale of a security, reliance, economic loss, and loss causation." *Id.* (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 231 (1988)).

The plaintiff asserts that he alleged that Meta engaged in material misrepresentation of facts by (1) submitting SEC filings that stated that the company maintained an internal-audit position while omitting that the company actively blocked this function from proceeding, (2) misrepresenting security breaches as "hypothetical" future threats despite the fact that these problems had already materialized, and (3) failing to disclose that Meta violated the FTC order.[30] The defendants counter that the allegations in the complaint about misrepresentations are conclusory and that, even if the court considered the allegations in his OSHA complaint, the plaintiff never complained about SEC filings and mischaracterizes what Meta's SEC filings say.[31]

Here, the complaint states that the plaintiff's "disclosures consistently focused on conduct he reasonably believed constituted . . . securities fraud through misrepresentations about WhatsApp's security capabilities in public filings and statements" and that the defendants' conduct posed a "material risk to shareholders and constituted fraud against investors who relied on the company's representations about its cybersecurity capabilities and regulatory compliance."[32] These are conclusions. The plaintiff also pleaded that he complained to the SEC about WhatsApp's cybersecurity deficiencies and failures to inform investors of cybersecurity risks and that the defendants prevented his proposed cybersecurity fixes, but these are not misrepresentations.[33] The

---

[29] Opp'n – ECF No. 50 at 17–18 (citing no contrary Ninth Circuit or Supreme Court decisions).

[30] *Id.* at 18–19.

[31] Reply – ECF No. 64 at 15–17.

[32] Compl. – ECF No. 3 at 9 (¶¶ 37–38).

[33] *Id.* at 8–9 (¶ 33), 15 (¶ 63).

United States District Court
Northern District of California

court does not consider the allegations from the OSHA complaint.[34] Because the plaintiff has not pleaded facts approximating a misrepresentation by Meta, he has not plausibly pleaded a reasonable belief that he disclosed securities fraud. The remaining elements of securities fraud are better addressed after amendment of the complaint.

### 3.  Violations of Requirements to Maintain Internal-Accounting Controls

The plaintiff contends that he engaged in a protected activity by reporting the defendants' obstructing of the audit function under 15 U.S.C. § 78m(b)(2), (5) and failing to maintain adequate internal controls under 15 U.S.C. § 7262.[35] The defendants respond that (1) the plaintiff's belief that he engaged in protected activity was objectively unreasonable because §§ 78m and 7262 are not protected disclosures under Section 806, (2) even if they were, the SEC's internal-financial-controls rule applies to accounting processes for financial statements, not cybersecurity audits, and (3) the conduct that the plaintiff reported does not fall under § 7262.[36]

For the reasons given by the defendants, the plaintiff did not have a reasonable belief that his reporting about internal controls was a protected activity under Section 806. The internal-financial-controls rule applies to financial reporting, and the plaintiff's reporting concerned cybersecurity. *See Wadler v. Bio-Rad Labs, Inc.*, 916 F.3d 1176, 1185 (9th Cir. 2019) (15 U.S.C. § 78m(b)(5) is not a rule or regulation of the SEC under Section 806); *SEC v. SolarWinds Corp.*, 741 F. Supp. 3d 37, 108 (S.D.N.Y. 2024) ("The history and purpose of the statute confirm that cybersecurity controls are outside the scope of Section [78m](b)(2)(B).").

In *SolarWinds*, the SEC alleged that, based on its cybersecurity deficiencies, SolarWinds had failed to "devise and maintain a system of internal accounting controls" under 15 U.S.C. § 78(b)(2)(B). 741 F. Supp. 3d at 49. The court rejected that claim, reasoning that the alleged cybersecurity failings did not fall under § 78(b)(2)(B) because "accounting controls" refers to

---

[34] *Supra* § 1, Violations of SEC Rules and Regulations.

[35] Opp'n – ECF No. 50 at 25–27.

[36] Reply – ECF No. 64 at 11–14.

financial accounting and cybersecurity controls "cannot fairly be said to be in place to prevent and detect errors and irregularities that arise in the accounting systems of the company." *Id.* at 107.

The plaintiff counters that the reasoning from *SolarWinds* does not apply to his case because it involved an SEC enforcement action where the SEC was required to show an actual violation, while here, the plaintiff need only show a reasonable belief of a violation.[37] This is unpersuasive because even though the plaintiff need only show a reasonable belief that he reported violations under Section 806, the fact that § 78m(b)(2)(B) does not cover cybersecurity violations makes his belief that he engaged in a protected activity objectively unreasonable.[38]

The cases cited by the plaintiff in support are distinguishable. *Thomas v. Tyco International Management Co., LLC*, involved a plaintiff who complained about a lack of data security in addition to "the lack of segregation of duties in the process used to verify the accuracy of consolidated financial information," but here, the plaintiff does not allege violations about financial information.[39] 262 F. Supp. 3d 1328, 1336–37 (S.D. Fla. 2017). The court in *Prioleau v. Sikorsky Aircraft Corp.* reversed and remanded the ALJ's decision granting the defendant summary judgment because allegations that the plaintiff had "received SOX training" and "was familiar with SOX provisions requiring certification of a company's financial reporting system" created a genuine issue of material fact regarding his objective belief. ARB Case No. 10-060, 2011 WL 6122422, at *6–7 (Dep't of Lab. Nov. 9, 2011). Here, the plaintiff has pleaded no similar allegations.

Similarly, § 7262 does not apply to the plaintiff's disclosures because it governs evaluations and reports about the structure and procedure for "financial reporting," while the plaintiff's reporting related to cybersecurity violations.[40] 15 U.S.C. § 7262(a)–(b).

On this record, the plaintiff has not plausibly pleaded a reasonable belief that his reporting about cybersecurity concerns was a protected activity under §§ 78(b) or 7262. The issue of

---

[37] Opp'n – ECF No. 50 at 27.

[38] Reply – ECF No. 64 at 11–12.

[39] *Id.* at 13 (making this point).

[40] *Id.* at 12–13.

whether §§ 78(b) or 7262 are rules or regulations of the SEC under Section 806 is better addressed on fuller briefing.

### 4. Wire Fraud

The plaintiff asserts that he has plausibly pleaded wire fraud by alleging that Meta knowingly made false representations about security practices to induce users to entrust their personal information to WhatsApp.[41] The defendants respond that the plaintiff's allegations are conclusory and that he did not allege that the defendants operated a scheme to deprive anyone of money or property.[42]

The plaintiff has not pleaded facts approximating the basic elements of wire fraud, which are "(1) the existence of a scheme to defraud; (2) the use of wire, radio, or television to further the scheme; and (3) a specific intent to defraud." *United States v. Jinian*, 725 F.3d 954, 960 (9th Cir. 2013).

The complaint describes the plaintiff's efforts to report cybersecurity violations and states that Meta committed "wire fraud through systemic failures to protect user data" and "engaged in systemic sabotage of Mr. Baig's successful cybersecurity initiatives."[43] What is missing are allegations that the defendants' conduct constituted a scheme to defraud its users or that they intended to do so. Thus, the plaintiff has not plausibly pleaded a reasonable belief that he disclosed wire fraud by the defendants.

Because the plaintiff has not plausibly pleaded a reasonable belief that he reported any conduct covered by Section 806, the court dismisses his claim for retaliation against all defendants.

---

[41] Opp'n – ECF No. 50 at 27–28.

[42] Reply – ECF No. 64 at 20.

[43] Compl. – ECF No. 3 at 4–7 (¶¶ 17–31), 9 (¶ 37), 15 (¶ 63).

United States District Court
Northern District of California

**5. Individual Defendants**

The parties dispute whether the plaintiff has plausibly pleaded the involvement of individual defendants Zuckerberg, Cathcart, and Gupta.[44] SOX imposes individual liability on an employer's "officer, employee, contractor, subcontractor, or agent" who retaliates against a whistleblower. 18 U.S.C. § 1514A(a).

The complaint states that the plaintiff sent Zuckerberg letters documenting cybersecurity deficiencies in January and December 2024 and that the plaintiff was fired less than two months after informing Zuckerberg that he had filed a Form TCR with the SEC.[45] The plaintiff pleaded that he met with Cathcart to discuss cybersecurity deficiencies in August 2022, that the plaintiff presented further findings to Cathcart in October 2022, and that Cathcart refused to act on the plaintiff's requesting prioritization of user safety in January 2025.[46] These allegations do not show retaliation by Zuckerberg or Cathcart.

There are sufficient pleadings alleging Gupta's involvement in retaliation against the plaintiff: he pleaded that Gupta denied him a discretionary equity grant and excluded his team from budget allocations for 250 additional engineers.[47] Thus, if the plaintiff's claim for retaliation were not dismissed, the individual claim against Gupta would survive.

## CONCLUSION

The court dismisses the plaintiff's claim for retaliation under 18 U.S.C. § 1514A without prejudice. This order resolves ECF No. 29.

**IT IS SO ORDERED.**

Dated: March 19, 2026

LAUREL BEELER
United States Magistrate Judge

---

[44] Opp'n – ECF No. 50 at 28; Reply – ECF No. 64 at 20–21.

[45] Compl. – ECF No. 3 at 3 (¶ 29), 9 (¶ 34), 17 (¶ 70).

[46] *Id.* at 4–6 (¶¶ 20–23), 16 (¶¶ 65–66).

[47] *Id.* at 13 (¶ 51), 16 (¶ 68).

United States District Court
Northern District of California