PAUL HASTINGS LLP
Elena R. Baca (SB# 160564)
elenabaca@paulhastings.com
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, California 90071-2228
Telephone: 1(213) 683-6000
Facsimile: 1(213) 627-0705

Attorneys for Defendants
META PLATFORMS, INC., PINAKI MUKERJI, MARK TSIMELZON, NITIN GUPTA, WILL CATHCART AND MARK ZUCKERBERG

(*Additional counsel listed on next page*)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ATTAULLAH BAIG,

Plaintiff,

vs.

META PLATFORMS, INC., PINAKI MUKERJI, MARK TSIMELZON, NITIN GUPTA, WILL CATHCART AND MARK ZUCKERBERG,

Defendants.

CASE NO. 3:25-CV-07604-LDB

**DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**

Date: September 17, 2026
Time: 2:00 p.m.
Judge: Laurel D. Beeler
Courtroom: B, 15th Floor

Paul C. Evans (admitted *pro hac vice*)
paulevans@paulhastings.com
Jeffrey A. Sturgeon (admitted *pro hac vice*)
jeffreysturgeon@paulhastings.com
Daniel S. Richards (admitted *pro hac vice*)
danrichards@paulhastings.com
200 Park Avenue
New York, NY 10166
Telephone: 1(212) 318-6000

Attorneys for Defendants
META PLATFORMS, INC., PINAKI MUKERJI,
MARK TSIMELZON, NITIN GUPTA,
WILL CATHCART AND MARK ZUCKERBERG

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

- A. The SAC's Shotgun Structure Denies Defendants Fair Notice of Baig's Claim. ..... 2
- B. Baig's OSHA Allegations Would Not Have Led OSHA to Discover Conduct Alleged for the First Time in the SAC. ..... 4
- C. Baig Failed to Allege That He Reported Most of the SAC's Alleged Conduct. ..... 5
- D. But Baig Did Allege that He Reported Inactionable Conduct. ..... 5
- E. Baig Did Not Reasonably Believe He Reported Violations of Covered Law Under Section 806. ..... 6
  - 1. Count 2 Should Be Dismissed. ..... 6
  - 2. Counts 3, 12, and 14 (and 5) Should Be Dismissed. ..... 7
  - 3. Counts 4 and 6 Should Be Dismissed. ..... 11
  - 4. Count 7 Should Be Dismissed. ..... 11
  - 5. Counts 8 and 9 Should Be Dismissed. ..... 12
  - 6. Count 10 Should Be Dismissed. ..... 12
  - 7. Count 11 Should Be Dismissed. ..... 13
  - 8. Count 13 Should Be Dismissed ..... 13
  - 9. Count 14 Should Be Dismissed. ..... 14
- F. Baig Failed to Plausibly Allege Zuckerberg or Cathcart Were Materially Involved in Any Adverse Action. ..... 14

III. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Baig v. Meta Platforms, Inc.*,
No. 25-CV-07604-LB, 2026 WL 821002 (N.D. Cal. Mar. 19, 2026) ("*Baig I*") ..... 5, 7, 12, 15

*Boyd v. Accuray, Inc.*,
593 F. App'x 647 (9th Cir. 2015) .......... 5

*Brinker v. Axos Bank*,
No. 22-CV-386-MMA (DDL), 2023 WL 4535529 (S.D. Cal. July 13, 2023) .......... 14

*Bury v. Force Protection, Inc.*,
No. CA 2:09-1708-DCN-BM, 2011 WL 2935916 (D.S.C. June 27, 2011), *report and recommendation adopted*, 2011 WL 2929827 (D.S.C. July 19, 2011) .......... 14

*Dawson v. Meta Platforms, Inc*,
No. 26-CV-00751-RFL, 2026 WL 2137134 (N.D. Cal. July 23, 2026) .......... 3

*Gibson v. City of Portland*,
165 F.4th 1265 (9th Cir. 2026) .......... 2, 3

*Gjovik v. Apple Inc.*,
No. 23-cv-04597-EMC, 2024 WL 2309100 (N.D. Cal. May 20, 2024) .......... 10

*Grimm v. Target Corp.*,
No. CV 16-2564(DSD/KMM), 2017 WL 481455 (D. Minn. Feb. 6, 2017) .......... 12

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) .......... 3

*In re Meta Pixel Tax Filing Cases*,
No. 3:22-cv-07557 (SI) (N.D. Cal. May 15, 2023), ECF No. 71 .......... 3

*Janbay v. Canadian Solar, Inc.*,
No. 10 CIV. 4430 (RWS), 2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012) .......... 8

*Leznik v. Nektar Therapeutics, Inc.*,
No. 2006-SOX-00093, 2007 WL 5596626 (D.O.L. Nov. 16, 2007) .......... 14

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
601 U.S. 257 (2024) .......... 9

*Meyer v. Cnty. of San Diego*,
No. 21-CV-341-RSH-BLM, 2025 WL 449747 (S.D. Cal. Feb. 10, 2025) .......... 2

*Nayab v. Capital One Bank (USA), N.A.*,
942 F.3d 480 (9th Cir. 2019) .......... 15

*Nordstrom v. U.S. Bank, N.A., Inc.*,
No. 11-CV-1554 BEN (KSC), 2012 WL 3000416 (S.D. Cal. July 23, 2012) .......................... 5

*Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
774 F.3d 598 (9th Cir. 2014) .......................... 3

*In re Paypal Holdings, Inc. S'holder Derivative Litig.*,
No. 17-CV-00162-RS, 2018 WL 466527 (N.D. Cal. Jan. 18, 2018) .......................... 9

*Potyondy v. Pacific Coast Energy Company, LP*,
No. 2:24-CV-09151-JLS-AGR, 2025 WL 1674392 (C.D. Cal. Apr. 10, 2025) .......................... 5

*SEC v. Hilsenrath*,
No. C 03-03252 WHA, 2008 WL 2225709 (N.D. Cal. May 29, 2008), *aff'd*,
406 F. App'x 197 (9th Cir. 2010) .......................... 11

*SEC v. SolarWinds*,
741 F. Supp. 3d 37 (S.D.N.Y. 2024) .......................... 9

*SEC v. Todd*,
642 F.3d 1207 (9th Cir. 2011) .......................... 11

*SEC v. Trabulse*,
526 F. Supp. 2d 1001 (N.D. Cal. 2007) .......................... 14

*SEC v. Wilcox*,
663 F. Supp. 3d 146 (D. Mass. 2023) .......................... 11

*Sosa v. Hiraoka*,
920 F.2d 1451 (9th Cir. 1990) .......................... 5

*Tovar v. City of San Jose*,
No. 5:21-CV-02497-EJD, 2021 WL 6126931 (N.D. Cal. Dec. 28, 2021) .......................... 5

*United States v. Hussain*,
972 F.3d 1138 (9th Cir. 2020) .......................... 3

*United States v. Nichols*,
No. SACR 08-00139CJC, 2008 WL 5233199 (C.D. Cal. Dec. 15, 2008) .......................... 10

*United States v. Singh*,
979 F.3d 697 (9th Cir. 2020) .......................... 14

*Veal v. LendingClub Corp.*,
423 F. Supp. 3d 785 (N.D. Cal. 2019) .......................... 9

*Wagner v. S. Cal. Edison Co.*,
No. 2:16-CV-06259-ODW(PLA), 2019 WL 1746127 (C.D. Cal. Apr. 18,
2019), *aff'd*, 840 F. App'x 993 (9th Cir. 2021) .......................... 10

*Yates v. United States*,
574 U.S. 528 (2015) ........ 14

**Statutes**

18 U.S.C. § 1512 ........ 13

18 U.S.C. § 1513(e) ........ 13

18 U.S.C. § 1514A(a)(2) ........ 12

18 U.S.C. § 1519 ........ 13

18 U.S.C. § 1520 ........ 13

**Other Authorities**

17 C.F.R. § 240.13a-15(e) ........ 8

*Commission Statement and Guidance on Public Company Cybersecurity Disclosures*, 83 Fed. Reg. 8166, 8166-67 (Feb. 26, 2018) ........ 7

Fed. R. Civ. P. 8(a)(2), 8(d)(1), 10(b) ........ 2

Form 8-K, U.S. Securities and Exchange Commission,
https://www.sec.gov/files/form8-k.pdf, at p. 11 (last visited Aug. 25, 2026) ........ 12

## I. INTRODUCTION

This is still not a SOX whistleblower case. The factual narrative remains unchanged: an engineering manager disagreed with colleagues about cybersecurity risks, technical systems, and Meta's response. But SOX only protects an employee who reports facts supporting a reasonable belief that an enumerated law, rule, or regulation was violated. Rather than identify such facts, Baig's Opposition, ECF No. 86 ("Opp."), reimagines his engineering concerns, attaching "theories" of securities fraud, deficient SEC disclosures, audit obstruction, mail fraud, wire fraud, and numerous SEC-rule violations. Those post-hoc legal labels concocted by his lawyers cannot supplant a reasonable belief under SOX.

The SAC's[1] structure only amplifies these problems. It spans 423 paragraphs and asserts 13 overlapping "Counts," each incorporating every preceding allegation. Its multipage paragraphs and improper legal argument are designed to confound and make any response impossible. The Opposition asserts that Count 3 alone contains seventeen theories of liability and faults Defendants for failing to address "roughly half" of the theories scattered throughout the SAC. That response confirms the SAC's defect. A complaint must provide fair notice. It cannot require Defendants and the Court to reconstruct the claim from hundreds of incorporated allegations and shifting theories.

The SAC also relies on disclosures, conduct, and theories absent from Plaintiff's OSHA complaint. His Opposition does not identify OSHA allegations that would have prompted an investigation into the particular conduct now alleged. Worse still, new conduct Baig never reported to anyone cannot constitute protected activity. These are not technicalities. The required connections remain missing: a protected disclosure, a reasonable belief that the reported conduct violated a covered law, a decisionmaker's knowledge of that disclosure, and a resulting adverse action. The SAC adds length and legal labels, not the facts the Court previously found absent.

The claims against Zuckerberg and Cathcart fail independently. Without supporting facts, the Opposition argues that they participated in, approved, or were materially involved in the alleged adverse actions. The SAC does not plausibly allege that Zuckerberg or Cathcart personally took or

---

[1] All terms used but not defined herein shall have the meanings ascribed to them in Defendants' moving brief. ECF No. 84-1 ("Mov.").

directed any adverse action. The Court should dismiss the SAC with prejudice and has independent grounds to dismiss Baig's claim against them.

## II. ARGUMENT

### A. The SAC's Shotgun Structure Denies Defendants Fair Notice of Baig's Claim.

The SAC violates all four shotgun-pleading rules. Mov. at 7-9. Although Rules 8(d)(2) and (3) and 10(c) permit alternative pleading and incorporation by reference, they do not displace Rule 8's requirement of "a short and plain statement" containing allegations that are "simple, concise, and direct," or Rule 10(b)'s requirements that separate transactions or occurrences be pleaded separately and each paragraph be "limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 8(a)(2), 8(d)(1), 10(b). Indeed, incorporation by reference violates Rule 8 when used indiscriminately. *Gibson v. City of Portland*, 165 F.4th 1265, 1288 (9th Cir. 2026).

The 203-page SAC violates all of these Rules. Eighty-four pages consist largely of legal argument. Each of the 13 substantive Counts incorporates all 423 preceding paragraphs. Facts are repeated across multipage paragraphs that combine disparate factual allegations, legal argument, and numerous statutory predicates. The Counts assert overlapping theories and allegations, often unrelated to their titles, against every Defendant. Mov. at 7-9.

The resulting prejudice is practical, not a technicality. Neither Defendants nor the Court can determine which disclosure supports which predicate, adverse action, or claim against which Defendant. That uncertainty will define discovery and persist through summary judgment and trial. Baig must state the claim; Defendants and the Court need not find it. *See, e.g.*, *Meyer v. Cnty. of San Diego*, No. 21-CV-341-RSH-BLM, 2025 WL 449747, at *17 (S.D. Cal. Feb. 10, 2025) ("The Court is under no obligation to sift through Plaintiff's FAC in an attempt to match the alleged wrongdoings to a plausible claim for relief.").

Baig's Opposition responds to only a few of Defendants' points and incorrectly in any event. The SAC does not "tailor[]" the factual allegations to the Counts they supposedly support. *Contra* Opp. at 38. For example, the same allegedly falsified X-Sec reports appear in Counts 3, 5, 10, and 14 without explaining how they support each theory. SAC ¶¶ 226, 245, 280(b), 304. Baig identifies no meaningful distinction between substantially overlapping Counts 4 and 6. And his

conclusory assertion that the SAC identifies the conduct underlying each Defendant's liability does not connect any Defendant to any particular Count. *Contra* Opp. at 38.

Baig's cases involved far narrower defects. *Contra* Opp. at 37-38. *In re Meta Pixel Tax Filing Cases* involved a 42-page complaint challenged only for failing to identify within each claim the supporting allegations from a common factual section. 724 F. Supp. 3d 987, 1005 (N.D. Cal. 2024); *In re Meta Pixel Tax Filing Cases*, No. 3:22-cv-07557 (SI) (N.D. Cal. May 15, 2023), ECF No. 71. *Dawson v. Meta Platforms, Inc.* involved a 49-page complaint challenged for incorporating preceding counts and asserting multiple claims within some counts. No. 26-CV-00751-RFL, 2026 WL 2137134, at *10 (N.D. Cal. July 23, 2026). Neither approached the SAC's combined defects.

Most tellingly, Baig faults Defendants for overlooking "roughly half" of the statutes and regulations scattered throughout the SAC. Opp. at 15-17, 16 n.3. Yet, Rule 8 does not permit Baig to assert every conceivable predicate and then argue that the SAC must survive because Defendants did not separately address each one. Shotgun pleadings are improper precisely because they make a response "difficult, if not impossible." *Gibson*, 165 F.4th at 1288. Put differently, Baig's argument reveals precisely why the SAC is a shotgun pleading.

Defendants instead addressed the defects common to Baig's overlapping theories. For example, and contrary to his claim, Defendants explained why Baig failed to approximate the elements shared by 18 U.S.C. § 1348 and Rule 10b-5, which are common to any shareholder fraud claim. Mov. at 17-22; *see United States v. Hussain*, 972 F.3d 1138, 1146 (9th Cir. 2020); *Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 603 (9th Cir. 2014). Defendants likewise addressed Count 2 with the shareholder-fraud theories because Baig used that Count to repeat allegations concerning misrepresentations in Meta's SEC filings. SAC ¶¶ 219, 221. The Opposition's clarification that the cybersecurity rules do not require fraud reveals another reason why the SAC is a shotgun pleading: it failed to distinguish Count 2 from its overlapping misrepresentation theories.

The parties should not be required to define Baig's claim through discovery. Because the SAC denies fair notice and leaves the case's scope undefined, it should be dismissed.

### B. Baig's OSHA Allegations Would Not Have Led OSHA to Discover Conduct Alleged for the First Time in the SAC.

The OSHA complaint and the SAC differ materially in scope. Baig's OSHA complaint alleged that he made a series of cybersecurity disclosures and Meta later terminated his employment. ECF No. 3, Ex. A. OSHA characterized Baig's concerns as involving "*data vulnerabilities*" and concluded that they did not qualify as protected activity. ECF No. 29-2, Ex. A (emphasis added). The SAC now relies on materially different allegations and theories that never reached OSHA. *See* Mov. at 9-11.

Baig's table does not establish otherwise. He asserts that "[*e*]*very* entry on Meta's list either has a documented counterpart in the OSHA complaint or relates to the same subject matter . . . ." Opp. at 35 (emphasis added). Only *two* of the OSHA complaint paragraphs cited in Baig's table, however, even tangentially relate to the new SAC allegations (but even those do not help Baig frame a claim).[2] Past those, Baig's table stretches his OSHA allegations beyond their breaking point. For instance, it cites an OSHA allegation that Cathcart distanced himself from Baig, ECF No. 3, Ex. A ¶ 96, claiming that this allegation would have prompted an investigation into Cathcart's alleged approval of Baig's termination, Zuckerberg's and Li's alleged false certifications of SEC filings, Meta's alleged provision of false information to EY and obstruction of EY's audit, Opp. at 35-36. Not so. Those allegations concern different conduct, actors, and disclosures.

Baig's cited cases do not support a different result. The SAC alleges for the first time, among other things, that Meta failed to disclose the FTC's for-cause administrative proceeding, misrepresented its compensation decisions to investors, incorrectly attributed marketing revenue in SEC filings, provided false information to EY and obstructed EY's audit, that Zuckerberg testified falsely before the Senate Judiciary Committee, and that Meta defrauded WhatsApp Business API customers. Nothing in the OSHA complaint would have led to an investigation of those distinct subjects. Mov. at 9-11.

[2] Baig told OSHA and alleged in the SAC that Cathcart distanced himself from Baig. ECF No. 3, Ex. A ¶ 96. Baig also told OSHA (as alleged in the SAC) that Meta's 10-Ks presented cybersecurity risks as hypothetical, albeit in a footnote—reflecting that Meta's statements to shareholders were *not* the focus of his OSHA complaint. *Id.* ¶ 351 n.2.

By contrast, the only difference between the OSHA and federal complaints in *Potyondy v. Pacific Coast Energy Company, LP* was whether the plaintiff had complained only to the SEC or also internally. No. 2:24-CV-09151-JLS-AGR, 2025 WL 1674392, at *4 (C.D. Cal. Apr. 10, 2025). Likewise, the broad allegations in the EEOC charge in *Sosa v. Hiraoka* reasonably encompassed the related instances of discriminatory and retaliatory conduct later alleged in federal court. 920 F.2d 1451, 1458 (9th Cir. 1990). Here, the SAC does not merely add details concerning the same alleged disclosures and retaliation. It adds distinct conduct and theories that the OSHA allegations would not reasonably have uncovered.

### C. <u>Baig Failed to Allege That He Reported Most of the SAC's Alleged Conduct.</u>

The parties agree that, to state a Section 806 claim, Baig must allege that he *reported* what he reasonably believed was a violation of law covered under Section 806. Mov. at 13; Opp. at 18; *see also Baig I*, at *5. Defendants established that Baig failed to allege having reported a large swath of the newly alleged conduct in the SAC. Mov. at 13-15. For example, Baig alleged that Meta defrauded WhatsApp Business API customers, but he does not allege that he complained to anyone about that. *Id.* at 15.

Baig does not specifically disagree. Instead, he avers that he allegedly complained about *other things*—like Meta's alleged failure to implement the requirements of the FTC Privacy Order, Opp. at 18—which misses the point. His attempt to distinguish Defendants' authorities does, too. *Id.* (citing *Boyd v. Accuray, Inc.*, 593 F. App'x 647 (9th Cir. 2015), and *Nordstrom v. U.S. Bank, N.A., Inc.*, No. 11-CV-1554 BEN (KSC), 2012 WL 3000416 (S.D. Cal. July 23, 2012)). Even if the plaintiffs in those cases failed to raise any concerns (and the *Nordstrom* plaintiff "did make complaints," 2012 WL 3000416, at *4), the point is those courts refused to find any protected activity in the absence of an underlying disclosure that caused a subsequent adverse action.

### D. <u>But Baig Did Allege that He Reported Inactionable Conduct.</u>

The parties also agree that Section 806 covers disclosures of violations of only certain enumerated categories of law. Mov. at 12; Opp. at 14-15.; *see also Baig I*. Accordingly, Section 806 does not protect Baig's alleged FTC Privacy Order violation reporting.[3] The FTC Privacy Order

[3] Section 806 does not cover many of the statutes and regulations identified in the SAC. Mov. at 12-13. Baig admits this argument is correct by failing to respond. *See Tovar v. City of San Jose*,

is a stipulated order entered by a district court, not an SEC rule or regulation or a statute listed in Section 806 or one concerning shareholder fraud. Mov. at 12-13. Moreover, Baig's "FTC-to-SEC" pipeline theory is a bridge too far. *Id.* at 16. Baig's Opposition merely *repeats* that theory. He never offers any authority or facts to support it. Opp. at 20-21.

**E. Baig Did Not Reasonably Believe He Reported Violations of Covered Law Under Section 806.**

None of the 13 substantive Counts state a claim upon which relief can be granted. Baig's alleged cybersecurity disclosures do not fit within any of his lawyers' *ex post facto* legal theories.[4]

1. Count 2 Should Be Dismissed.

Baig's defense of Count 2 is meritless. For starters, the alleged reports his Opposition relies upon concerning data storage, monitoring access, access controls, a failed security test, account takeovers, and profile scraping are reports of cybersecurity issues, not reports about any failure to disclose cybersecurity deficiencies in Meta's Form 10-K. That is what is required for him to have reasonably believed he reported a violation of 17 C.F.R. § 229.106 ("Item 106"). *Contra* Opp. at 19-20. And that is a distinction with a difference. Mov. at 16 (collecting cases).

Baig's attempts to connect the dots by relying on his FTC Privacy Order reporting and Form TCRs fails as set forth in Defendants' moving brief. Mov. at 17. His attempt to rehabilitate those allegations should also be rejected. *Contra* Opp. at 21. He cites only his letter to Zuckerberg, which is not mentioned in Count 2 and does not reflect Baig reporting any cybersecurity deficiency in Meta's Form 10-K. *Id.* (citing SAC ¶¶ 59-60, 112-113, 148-149).

Even if Baig alleged that he reported violations of Item 106, his belief that any such violations occurred would have been objectively unreasonable. As Baig acknowledges, "Item 106 did not take effect until Meta's FY 2023 annual report[.]" Opp. at 20. Accordingly, Meta's 2023 and 2024 Form 10-Ks both contained detailed cybersecurity sections addressing the requirements of Item 106. ECF No. 50-3 at 45-46, 51-52; ECF No. 50-4 at 44-45, 49-50. For good measure,

No. 5:21-CV-02497-EJD, 2021 WL 6126931, at *2 (N.D. Cal. Dec. 28, 2021) ("By failing to respond to the City's arguments, Plaintiffs have conceded those arguments").

[4] Baig faults Defendants for arguing dismissal was warranted because he "failed to affirmatively plead that Meta actually committed fraud or another violation." Opp. at 15. Nonsense. Meta never artificially inflated the bar for Baig in this manner. He just cannot meet the relatively low one needed to avoid dismissal. Mov. at 11-12.

Meta's earlier Form 10-Ks contained similar cybersecurity disclosures, too.[5] ECF No. 50-2 at 42-43; ECF No. 86-2 at 39-40; ECF No. 86-3 at 40-41.

2. Counts 3, 12, and 14 (and 5) Should Be Dismissed.

As a threshold matter, Baig's *sub silentio* challenge to the Court's prior ruling—that he must approximate the elements of a shareholder fraud claim, *Baig I*, at *5—should be rejected. He still does not cite any "contrary Ninth Circuit or Supreme Court decisions." *Id.* at *5 n. 29. Nor could he. Ninth Circuit courts are uniform on this point and consistent with the First, Second, and Fourth Circuits. ECF No. 64 at 8 (collecting cases). And Baig fails to approximate four of the requisite elements of any shareholder fraud claim.

a. *Baig Did Not Allege Any Misrepresentations or Omissions.*

Realizing he has an uphill battle, Baig's Opposition narrows the challenged representations in Meta's SEC filings to just four,[6] and he is wrong for four different reasons. First, Meta's representation that it had a "comprehensive" privacy program is a classic example of unverifiable puffery. Mov. at 18. Recognizing this flaw in his argument, Baig's approach has evolved. Now, he claims that Meta has no privacy program whatsoever. Opp. at 20-21. Not only is that claim facially absurd, but Baig's own allegations prove that Meta had a privacy program (even if it was allegedly inadequate). *E.g.*, SAC ¶¶ 66 ("Baig observed serious systemic failures in WhatApp's cybersecurity and privacy program . . . ."), 178 ("[T]he FTC itself . . . reached conclusions about Meta's privacy program deficiencies . . . ."), 195 ("Meta and WhatsApp . . . knowingly maintain[ed] a security and privacy program that was systematically inadequate[.]").[7]

Second, Baig asserts that Meta falsely represented its disclosure controls were effective. Opp. at 27. But he does not base his claim on any allegations about information *not* reaching Meta's

[5] But even if they did not, the pre-Item 106 guidance Baig references was not an SEC rule or regulation within Section 806's ambit. *Commission Statement and Guidance on Public Company Cybersecurity Disclosures*, 83 Fed. Reg. 8166, 8166-67 (Feb. 26, 2018) (referring to itself as an "interpretive guidance" and "interpretive release").

[6] Baig's scheme-liability argument merits little attention. He cites no paragraph of the SAC to support it. Opp. at 28-29. And it beggars belief to liken Baig's technical disagreements with other engineers to something as sinister and significant as a Ponzi scheme.

[7] For the same reasons, the statement in Meta's 2022 Proxy Statement concerning its Board's oversight of its "comprehensive" privacy program is inactionable. As a result, Baig could not have reasonably believed he was reporting a violation of Rule 14a-9. *Contra* Opp. at 28; SAC ¶ 228.

"management, including its principal executive and principal financial officers . . . ." 17 C.F.R. § 240.13a-15(e). Nor could he. He alleges the cybersecurity issues he raised did, in fact, reach Meta's CEO, CFO, Chief Product Officer, and other "top leadership." SAC ¶¶ 16 (alleging Chris Cox "received or had constructive access to Mr. Baig's cybersecurity disclosures"), 101 ("[T]he data exfiltration risks were very well known to Meta's top leadership[.]"), 201 ("Defendant Zuckerberg's direct personal receipt of Mr. Baig's January 2, 2024 and December 4, 2024 letters[.]"), 257 ("Syed Abidi . . . had been escalating Mr. Baig's concerns to CFO Susan Li.").

Instead, Baig relies on four alleged isolated incidents not involving executives responsible for making required disclosures. *Contra* Opp. at 23. And collectively, those incidents do not reveal a systemic flaw in the design of Meta's disclosure controls and procedures. Mov. at 23-24. For example, Baig alleges information he reported did not reach AROC, but he does not allege AROC ensures the accuracy of Meta's SEC filings or oversees its disclosure controls and procedures, or even that the information that did not reach AROC should have flowed through Meta's disclosure controls and procedures. *See, e.g.*, *Janbay v. Canadian Solar, Inc.*, No. 10 CIV. 4430 (RWS), 2012 WL 1080306, at *9 (S.D.N.Y. Mar. 30, 2012) (granting motion to dismiss disclosure-controls claim because "Plaintiffs have failed to allege specific facts concerning the purportedly deficient internal controls, including how they were deficient, when and why").[8]

Third, forced to acknowledge that Meta described in its Form 10-Ks that it "experienc[es] regular cyberattacks," Baig shifts the goalposts, claiming that Meta failed to disclose its "lack of defenses and vulnerability to" cyberattacks. Opp. at 22. Wrong again. Meta told shareholders: (a) "at any given time, we face known and unknown cybersecurity risks and threats that are not fully mitigated, and *we discover vulnerabilities*"; (b) Meta's cybersecurity "measures will *not* provide absolute security, and we cannot assure you that we will be able to react in a timely manner to any cyber-attacks or other security incidents, or that our remediation efforts will be successful"; "our efforts to protect our company data or the information we receive, and to disable undesirable activities on our platform, may also be *unsuccessful*"; "we cannot . . . provide assurances that we

[8] Count 5 fails in its entirety for these reasons.

have not experienced undetected cybersecurity incidents"; and "despite our efforts, we cannot eliminate all risks from cybersecurity threats, or provide assurances that we have not experienced undetected cybersecurity incidents." ECF No. 50-3 at 45-46, 52 (emphases added); *accord* ECF No. 50-4 at 44-45, 50. Reporting such statements as misleading or insufficient —which Baig did not even allegedly do, Mov. at 13-16—would be objectively unreasonable.

Fourth, Baig does not dispute that, in its Form 10-Ks, Meta essentially repeated the FTC for-cause proceeding allegations and explained the potential risks to shareholders. Mov. at 20. Instead, he argues that Meta should have represented as fact the FTC's allegation that Meta violated the FTC Privacy Order—before any court resolved that allegation and based solely on his own alleged internal reports of noncompliance. Opp. at 25-26. That is not the law. *Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 804 (N.D. Cal. 2019) ("Companies are not required to engage in 'self-flagellation' by disclosing unproven allegations." (citation modified)); *In re Paypal Holdings, Inc. S'holder Derivative Litig.*, No. 17-CV-00162-RS, 2018 WL 466527, at *3 (N.D. Cal. Jan. 18, 2018) (same). Baig then pivots to criticizing Meta's "affirmative statements about its own compliance" with the FTC Privacy Order, but he fails to cite any such statements. *Contra* Opp. at 25-26.[9]

Against that backdrop, Baig's broad analogy to the alleged misrepresentations in *SolarWinds* is inapt. There, SolarWinds publicly touted its "access controls as strong" and that it "enforced a strong password policy." 741 F. Supp. 3d at 80, 82. But it was "routinely promiscuous in freely granting administrative rights to employees . . . way beyond those necessary for employees' specific job functions," and "the company's stated password policy was generally not enforced." *Id.* By contrast, Baig does not identify any specific false public statements by Meta.[10]

b. *Any Alleged Misstatements Were Immaterial.*

Baig argues that materiality cannot be resolved at the pleading stage because it is a fact-

[9] Baig overlooks Defendants' argument that Count 12 fails because Form 8-K Item 8.01 did not require disclosure of the FTC's show-cause proceeding in a current report. Mov. at 19-20.

[10] Baig's professed belief he reported Meta's supposed violation of several "other rules" fails for three reasons. Opp. at 29. He did not allegedly report any of that conduct. Mov. at 13-16. He did not exhaust those allegations before OSHA. *Id.* at 7-9. And they are all pure omissions. *See, e.g.*, Opp. at 29 n.10 (relying on "required disclosure[s]" Meta purportedly did not make). Baig cites no affirmative statements in Meta's SEC filings that make those alleged pure omissions misleading. *See* Mov. at 19 (citing *Macquarie*).

intensive inquiry. But he must plead facts approximating each element of the shareholder-fraud violation he claims to have reported. *Supra* §§ III.A; III.E.2. Courts therefore dismiss Section 806 claims premised on reports of immaterial public statements. *See, e.g.*, *Gjovik v. Apple Inc.*, No. 23-cv-04597-EMC, 2024 WL 2309100, at *12–13 (N.D. Cal. May 20, 2024); *Wagner v. S. Cal. Edison Co.*, No. 2:16-CV-06259-ODW(PLA), 2019 WL 1746127, at *4 (C.D. Cal. Apr. 18, 2019), *aff'd*, 840 F. App'x 993 (9th Cir. 2021). *United States v. Nichols* does not hold otherwise. It states only that, "[i]n a *criminal* case, materiality is a question of fact that must be determined by a jury." No. SACR 08-00139CJC, 2008 WL 5233199, at *2 (C.D. Cal. Dec. 15, 2008) (emphasis added).

The SAC does not plead facts approximating materiality. The Opposition relies on an alleged $1 billion exposure, citing Meta's 2020 FTC settlement and Baig's Business Case estimate of potential regulatory fines arising from WhatsApp's cybersecurity issues. Opp. at 29-30; SAC ¶¶ 6, 103. The SAC does not connect that figure to a specific public statement, explain why that statement would matter to a reasonable investor, or allege that Baig reported that Meta had concealed a probable $1 billion liability. An unexplained number, untethered to an alleged misrepresentation or its significance to investors, does not approximate materiality. By contrast, Baig also allegedly told the SEC that Meta's securities violations would cause a "$5,000,000" loss—a tiny fraction of Meta's annual revenue and net income. SAC ¶ 112; Mov. at 21. Baig does not explain how his claimed $1 billion is plausible in light of what he allegedly told the SEC.

c. *Baig Did Not Respond to Defendants' Economic Loss and Loss Causation Arguments.*

Baig's last argument with respect to materiality is a straw man. He faults Defendants for relying on Meta's share-price increase and arguing that Baig could not have reasonably believed Meta's alleged misstatements were *material*. Opp. at 30. In reality, however, Defendants argued based on Meta's share-price increase that Baig could not have reasonably believed Meta's alleged misrepresentations would *cause shareholders economic loss*. Mov. at 22. Loss causation and economic loss are distinct elements of a shareholder fraud claim, separate from materiality. And Baig makes no attempt to distinguish the cases that dismissed shareholder fraud claims on the

pleadings based on alleged misrepresentations that caused shareholders insignificant economic loss. Mov. at 22.

3. Counts 4 and 6 Should Be Dismissed.

Although Baig was not required to identify the correct legal provision, the facts he reported still must approximate the conduct Rules 13b2-1 and 13b2-2 prohibit. Rule 13b2-1 concerns falsification of corporate accounting books and records. Mov. at 23; *see also SEC v. Todd*, 642 F.3d 1207, 1225 (9th Cir. 2011). Rule 13b2-2 prohibits materially false or misleading statements to accountants in connection with financial audits, financial statements, or SEC filings. Mov. at 23; *see also SEC v. Hilsenrath*, No. C 03-03252 WHA, 2008 WL 2225709, at *8 (N.D. Cal. May 29, 2008), *aff'd*, 406 F. App'x 197 (9th Cir. 2010).

Here, Baig alleges that results from a red-team exercise focused on data-exfiltration risk were not shared with AROC and that an auditor evaluating WhatsApp's cybersecurity controls under the European Electronic Communications Code omitted certain findings from his report. SAC ¶¶ 106, 108. Neither allegation concerns falsified accounting books or records, a false statement to an accountant, an audit of financial statements, or the preparation of an SEC filing. The words "audit" and "auditor" do not magically transform Baig's claim into an actionable one. And in the case Baig cites, the defendants allegedly engaged in improper revenue-recognition practices that overstated revenue and manipulated financial metrics in the company's financial reports. *SEC v. Wilcox*, 663 F. Supp. 3d 146, 162–64 (D. Mass. 2023). Baig alleges no comparable connection between the cybersecurity matters he reported and Meta's accounting records or financial reporting. His status as a nonlawyer does not make his belief objectively reasonable when the reported facts do not resemble the conduct the rules prohibit.[11]

4. Count 7 Should Be Dismissed.

Baig incorrectly claims that Defendants ignored Count 7. In fact, Defendants argued that he neither exhausted nor reported Meta's alleged failure to file required current reports. Mov. at 9-

[11] Baig also claims that Defendants did not respond to his argument that he reasonably believed he reported violations of 17 C.F.R. § 240.13b2-2(b)(1). They did. Mov. at 23 (arguing nothing Baig alleged qualified as a false or misleading statement made to an *accountant*). And the alleged misstatement Baig cites was in Meta's Form 10-Ks, not any statement to an accountant. SAC ¶ 238.

11, 13-16. Nor does the SAC allege facts approximating an Item 1.05 violation. Item 1.05 requires disclosure only "[i]f the registrant experiences a cybersecurity incident that is *determined by the registrant to be material*[.]" Form 8-K, U.S. Securities and Exchange Commission, https://www.sec.gov/files/form8-k.pdf, at p. 11 (last visited Aug. 25, 2026) (emphasis added). The SAC does not allege that Baig reported either that Meta made such a determination and failed to file a Form 8-K or that Meta unreasonably delayed making the determination. The scale of the reported cybersecurity issues and Meta's disclosure of the smaller Paragon incident may explain why Baig considered the incidents serious. Opp. at 24-25; SAC ¶¶ 71, 102, 140, 232(e), 257, 263-64. They do not establish that he reported conduct approximating Item 1.05's filing or determination requirements. Count 7 should be dismissed.

5. Counts 8 and 9 Should Be Dismissed.

Baig's renewed argument that the mere filing of complaints with OSHA and the SEC qualifies as protected activity under § 1514A(a)(1) is foreclosed. *Contra* Opp. at 32-33. It is both the law and the law *of this case* that a claim under Section 806 requires a reasonable belief that the employee reported a violation of covered law. *Baig I*, at *4; *see also* ECF No. 64 at 3-4.

Baig also *argues* he stated a participation claim under 18 U.S.C. § 1514A(a)(2), but he failed to plead it. *Contra* Opp. at 32-33. Count 8 cites Section 1514A(b), and Count 9 cites Section 1514A(a)(1). SAC ¶¶ 268, 272. Neither cites Section 1514A(a)(2). Even if he had pleaded it, however, he would have failed to state a claim. Like Section 1514A(a)(1), Section 1514A(a)(2) requires that any claim "relat[e] to" a law covered under Section 806. Accordingly, any derivative Section 1514A(a)(2) claim fails because the alleged cybersecurity disclosures underlying Baig's OSHA complaint and Form TCRs do not relate to any covered law under Section 806 for the reasons set forth in Defendants' briefing. *See, e.g.*, *Grimm v. Target Corp.*, No. CV 16-2564(DSD/KMM), 2017 WL 481455, at *5 (D. Minn. Feb. 6, 2017) (denying motion to amend complaint to include Section 1514A(a)(2) claim because proposed allegations did not "involv[e] the kinds of fraud enumerated in" Section 806).

6. Count 10 Should Be Dismissed.

Baig does not dispute that he never alleged having complained about any mail or wire

fraud. *Compare* Mov. at 13-16, *with* Opp. at 30-31. He also failed to exhaust his new claim that Defendants were allegedly scheming to defraud WhatsApp business API customers out of per-message fees. Mov. at 9-11. He claims paragraph 351 of his OSHA complaint would have led OSHA to discover that conduct, but no scheme to defraud WhatsApp business API customers appears in that paragraph. Opp. at 36; ECF No. 3, Ex. A ¶ 351 (alleging Meta falsely represented that WhatsApp was secure and that Meta's internal audit function was effective).

7. Count 11 Should Be Dismissed.

Baig's own allegations belie his SEC impedance claim. He allegedly complained to the SEC *twice*. Mov. at 25-26. And the conduct supporting Count 11 was allegedly intended to stop Baig from raising cybersecurity and FTC Privacy Order compliance concerns only. *Id.* Thus, he narrows the conduct supporting his impedance claim to one allegation: "Tsimelzon order[ing] deletion of the internal security report . . . ." Opp. at 26. But Baig never alleges Tsimelzon even knew Baig was communicating with the SEC. Baig also alleges that "Tsimelzon's stated rationale—that the report would make his team look bad to leadership—confirms the purpose was reputational concealment of documented compliance failures." SAC ¶ 148. Accordingly, insofar as Baig reported Tsimelzon's conduct, Baig would have believed he was reporting Tsimelzon's attempt to protect his team's reputation, not to impede Baig from communicating with the SEC.

8. Count 13 Should Be Dismissed

None of Count 13's four statutory predicates are facially within the scope of Section 806. Mov. at 12-13. Baig's rejoinder that they are federal laws related to shareholder fraud is unpersuasive. *Contra* Opp. at 31. None of those four statutory provisions mention shareholders. 18 U.S.C. §§ 1512 (criminalizing corruptly altering or concealing records or otherwise obstructing official proceedings), 1513(e) (criminalizing retaliating against witnesses who provide information to law enforcement officers about federal crimes), 1519 (criminalizing the alteration or concealment of records to obstruct federal investigations),[12] 1520 (criminalizing "accountant[s']" failure to maintain audit or review workpapers). If "Congress intended [Section 806] to cover any violation

[12] Tsimelzon's deletion order was allegedly done to safeguard his team's reputation. SAC ¶ 148. Baig therefore cannot claim it was intended to obstruct a federal proceeding as contemplated in Section 1519. He cites no other conduct in the SAC to support this Count. *Contra* Opp. at 32.

of SOX . . . it would have stated as much." *Brinker v. Axos Bank*, No. 22-CV-386-MMA (DDL), 2023 WL 4535529, at *9 (S.D. Cal. July 13, 2023) (holding that Section 806 did not cover SOX Section 404 because there was "nothing on the face of this statute to suggest that it relates to shareholder fraud"). Moreover, neither of Baig's cases suggest any one of those provisions relate to shareholder fraud. *See Yates v. United States*, 574 U.S. 528 (2015) (involving commercial ship captain who violated federal agent's instruction to segregate undersized red grouper; not considering the scope of Section 806); *United States v. Singh*, 979 F.3d 697 (9th Cir. 2020) (involving foreign national who illegally contributed to political campaigns; not considering the scope of Section 806).

9. Count 14 Should Be Dismissed.

Baig's argument that Defendants failed to address Count 14 is flat wrong. *Contra* Opp. at 16-17. Defendants argued that Baig failed to exhaust before OSHA his allegations that Meta's registration of its equity compensation and securities offerings were misleading, Mov. at 9-11, never (even allegedly) complained about Meta's equity compensation plans or securities offerings, *id.* at 13-16, and failed to approximate the elements of a Section 17(a) claim, *id.* at 17-22. *See also SEC v. Trabulse*, 526 F. Supp. 2d 1001, 1004 (N.D. Cal. 2007) (setting forth elements of Section 17(a) claim, including a material misrepresentation or omission, which Baig failed to approximate).

Baig responds to just one of Defendants' arguments and claims that he allegedly complained about Meta's equity plans or securities offerings. Opp. at 17. He did not. The alleged complaints repeated in Count 14 of the SAC concern Meta's Form 10-K representations, Baig's objection to conduct that was "parallel" to conduct that led to the SEC's 2019 enforcement action, and other irrelevant disclosures, including Baig's letters to Zuckerberg. SAC ¶¶ 303, 305-06.

**F. Baig Failed to Plausibly Allege Zuckerberg or Cathcart Were Materially Involved in Any Adverse Action.**

Individual liability requires more than knowledge of protected activity. The individual must be materially involved in an adverse action and causally connected to it. *See Leznik v. Nektar Therapeutics, Inc.*, No. 2006-SOX-00093, 2007 WL 5596626, at *37–39 (D.O.L. Nov. 16, 2007); *Bury v. Force Protection, Inc.*, No. CA 2:09-1708-DCN-BM, 2011 WL 2935916, at *3 (D.S.C.

June 27, 2011), *report and recommendation adopted*, 2011 WL 2929827 (D.S.C. July 19, 2011). The SAC does not plead those facts as to Zuckerberg or Cathcart. Mov. at 26-27.

Cathcart allegedly encouraged Baig to report his concerns, directed Verma to address them, and later withdrew from Baig's security work. SAC ¶¶ 85, 87, 162(g), 231. Zuckerberg allegedly received two letters and allocated engineers to other teams. SAC ¶ 172(k). None of those allegations identifies an adverse employment decision involving either Defendant. And *Baig I* did not hold that a staffing allocation alone stated a claim. There, the claim against Gupta also rested on his alleged denial of $600,000 in discretionary equity grants. *Baig I*, at *2–3.

The only alleged connection to any adverse action is Baig's conclusory assertion, made "on information and belief," that Zuckerberg and Cathcart approved it. SAC ¶¶ 201, 269. Such an allegation still requires "a statement of facts" supporting the asserted belief. *Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d 480, 493 (9th Cir. 2019) (approving information and belief allegation that defendant obtained credit report for improper purpose because plaintiff pleaded specific facts negating possibility defendant did so for any permissible purpose under statute). The supposed "particularized facts" Baig alleged do not supply that connection. Mov. at 27. And Baig did not respond to that point. Opp. at 33-35.

The Opposition offers a "reverse" cat's-paw theory that fares no better. *Id.* at 34. The SAC does not allege that either Defendant directed a subordinate's decision, acted on a subordinate's recommendation, or otherwise caused an adverse action. However labeled, the same factual connection is missing. The claims against Zuckerberg and Cathcart should be dismissed.

## III. CONCLUSION

The SAC should be dismissed because Baig failed to plead that he engaged in protected activity under Section 806. Even if he did not, however, the Court should dismiss the claims against Zuckerberg and Cathcart because neither were involved in any adverse action Baig experienced.

Baig has now had two bites at the apple, and both have failed. It is obvious that his alleged cybersecurity disclosures have nothing to do with the laws covered by Section 806, Thus, leave to amend would be futile.

DATED: August 26, 2026

PAUL HASTINGS LLP

By: ______________________________

Elena R. Baca (SB# 160564)
Paul C. Evans (admitted *pro hac vice*)
Jeffrey A. Sturgeon (admitted *pro hac vice*)
Daniel S. Richards (admitted *pro hac vice*)

Attorneys for Defendants
META PLATFORMS, INC., PINAKI MUKERJI, MARK TSIMELZON, NITIN GUPTA, WILL CATHCART AND MARK ZUCKERBERG