United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| ATTAULLAH BAIG,<br>Plaintiff,<br>v.<br>META PLATFORMS, INC., et al.,<br>Defendants. | Case No. 25-cv-07604-LB<br>**AMENDED ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br>Re: ECF No. 84 |

**INTRODUCTION**

The plaintiff, WhatsApp's former head of security, sued Meta Platforms, Inc. (WhatsApp's parent), Mark Zuckerberg (Meta's CEO), Will Cathcart (the head of WhatsApp), Nitin Gupta (WhatsApp's head of engineering), and Pinaki Mukerji and Mark Tsimelzon (his supervisors) for retaliation under Section 806 of the Sarbanes-Oxley Act (SOX), 18 U.S.C. § 1514A, which protects employees of public companies who report conduct that they reasonably believe constitutes mail, wire, bank, or securities fraud, a violation of an SEC rule or regulation, or a violation of a federal law relating to fraud against shareholders. The court dismissed the original complaint with leave to amend because it did not plausibly plead protected activity: the allegations that the plaintiff reported violations of SEC rules were conclusory, the complaint pleaded no facts approximating securities or wire fraud, and the plaintiff's reports about cybersecurity were not reports about internal accounting controls. The court also held that the complaint did not plead

United States District Court
Northern District of California

retaliation by Zuckerberg or Cathcart.[1]

The operative second amended complaint (SAC) is 203 pages and 423 paragraphs and divides the single SOX claim into fourteen "counts," each a different legal theory of protected activity. The defendants moved to dismiss on four grounds: (1) the SAC is an impermissible shotgun pleading; (2) the plaintiff did not exhaust much of the newly alleged conduct before the Occupational Safety and Health Administration (OSHA); (3) the plaintiff still has not plausibly pleaded that he engaged in protected activity; and (4) the SAC does not plead that Zuckerberg or Cathcart participated in any retaliation.[2] The plaintiff responds that the SAC supplies the detail the court found lacking, the defendants left many of its theories unaddressed, reports of SEC-rule violations require no showing of fraud, that he exhausted every allegation, and the SAC pleads the individual defendants' personal participation.[3]

The court grants the motion in part and denies it in part. The SAC plausibly pleads protected activity on one theory. Beginning with his counsel's April 2023 letter, and continuing through his statements to Meta's investigators, his January and December 2024 letters to Zuckerberg, and his November 2024 whistleblower submissions to the SEC, the plaintiff reported that Meta's SEC filings misrepresented its FTC-mandated privacy program and its cybersecurity risks. A person with the plaintiff's training and experience could reasonably believe that those filings were materially misleading and thus violated the SEC's disclosure rules and the anti-fraud provisions of the securities laws. The claim survives on that theory against Meta, Gupta, Mukerji, and Tsimelzon. The other theories fail. Reports of cybersecurity deficiencies and noncompliance with the FTC's 2020 Privacy Order are not, without more, reports of conduct that Section 806 covers. The SEC's books-and-records, auditor, internal-controls, and disclosure-controls rules do not

[1] Order – ECF No. 70 (*Baig I*), *Baig v. Meta Platforms, Inc.*, No. 25-cv-07604-LB, 2026 WL 821002 (N.D. Cal. Mar. 23, 2026). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents. This order clarifies that the deadline for the plaintiff's third amended complaint is October 2, 2026, fourteen days after the original order was filed, with any response due within fourteen days after service of the amended pleading.

[2] Notice of Mot. – ECF No. 84 at 3; Mot. – ECF No. 84-1 at 13–33.

[3] Opp'n – ECF No. 89 at 9–10, 14–17, 33–38.

reach the conduct the plaintiff reported, and neither do Form 8-K Items 1.05 and 8.01 or Rule 21F-17. The plaintiff did not report any scheme to obtain money or property by mail or wire. The criminal obstruction statutes are not covered law. And a submission to OSHA or the SEC is protected for what it reports, not for the fact of filing. The claims against Zuckerberg and Cathcart are dismissed because the SAC does not plausibly allege that either participated in an adverse action. Because the SAC does not comply with Rules 8 and 10(b), the plaintiff must file a third amended complaint, limited to the surviving theory and in the form described in section 5 below, by October 2, 2026.

## STATEMENT

### 1. The Plaintiff's Reports and the Alleged Retaliation

The plaintiff became WhatsApp's head of security in February 2021.[4] Meta operates under a 2020 stipulated order with the Federal Trade Commission (the FTC Privacy Order) that requires it to maintain a comprehensive privacy program, including a user-data inventory, access controls, breach detection, and incident reporting, and Meta trained the plaintiff on the order when he started.[5] Meta's annual reports on Form 10-K for fiscal years 2020 through 2024 state that Meta was implementing or maintaining a comprehensive privacy program in connection with the FTC Privacy Order and that its disclosure controls were effective, describe cyberattacks and noncompliance with the order as risks, and (beginning with the fiscal-year 2023 report) describe Meta's cybersecurity risk management and board oversight under Item 106 of Regulation S-K. Meta's 2022 proxy statement says that the Board's Privacy Committee oversees compliance with the privacy program. Zuckerberg certified the annual reports.[6]

[4] Second Am. Compl. (SAC) – ECF No. 81 at 26 (¶ 62). The original complaint alleged that he joined WhatsApp in September 2021. Compl. – ECF No. 3 at 4 (¶ 17).

[5] SAC – ECF No. 81 at 13 (¶¶ 27–28), 26–28 (¶¶ 62–65); *see United States v. Facebook, Inc.*, 456 F. Supp. 3d 115 (D.D.C. 2020).

[6] SAC – ECF No. 81 at 5–6 (¶ 8), 17 (¶ 42), 18–25 (¶¶ 44–50, 53, 56, 59), 60–61 (¶ 126), 118 (¶ 187), 135–38 (¶ 228); Forms 10-K – ECF Nos. 50-2 at 53; 50-3 at 45–46, 51–52, 57, 67–68, 164; 50-4 at 44–45, 49–50, 58–60, 155; Pl.'s Req. for Judicial Notice, Exs. 1–3 – ECF Nos. 86-2 at 37, 118; 86-3 at 38, 116; 86-4 at 22.

From September 2021 through March 2023, the plaintiff reported cybersecurity deficiencies that he believed violated the FTC Privacy Order. In September 2021, he reported to his then-supervisor that about 1,500 engineers could move or steal user data undetected. In spring 2022, he reported that Meta's central security team (X-Sec) generated falsified security reports, and he learned that a Board-ordered access audit he had joined had been narrowed to avoid confirming the deficits he had reported. In August 2022, he briefed Cathcart on six deficiencies (understaffing, no inventory of user data, unrestricted access by about 1,500 engineers, no monitoring, no real-time breach detection, and about 100,000 daily account compromises). In September and October 2022, at Cathcart's request, he circulated a written "pre-read" and presented his findings to Cathcart, Gupta, and other executives, warning that "[t]he penalties can be severe both in terms of brand damage and fines." The next day he sent the executives an article about a former Twitter security executive who had accused Twitter of cybersecurity violations, and he filed a retaliation complaint with human resources. In March 2023, he circulated a "recap" document stating that WhatsApp "risk[ed] additional legal action by the FTC, SEC, [IDPC], and other regulators for not meeting our legal obligations."[7]

Beginning in April 2023, the plaintiff's reports referred to Meta's SEC filings and its investors. On April 18, 2023, his counsel sent Meta a letter asserting that Meta had retaliated against him in violation of SOX, identifying violations of SEC Rules 10b-5, 13b2-1, and 13b2-2 relating to the cybersecurity deficiencies he had reported, and alleging that Meta's SEC filings contained misstatements about its cybersecurity practices.[8] In September 2023, he circulated an internal "vision document" that, the plaintiff contends, stated that Meta's Form 10-K statements about maintaining a privacy program in connection with the FTC Privacy Order were false because the program had "never been built."[9] In eight internal investigations between 2023 and

[7] SAC – ECF No. 81 at 32–33 (¶¶ 69–70), 39–43 (¶¶ 84–87, 90–91), 59–64 (¶¶ 125, 127–29), 66–67 (¶ 133); Mot. – ECF No. 84-1 at 9–10; Opp'n – ECF No. 89 at 12.

[8] SAC – ECF No. 81 at 44 (¶ 93), 67–68 (¶ 135); Mot. – ECF No. 84-1 at 9; Opp'n – ECF No. 89 at 12.

[9] SAC – ECF No. 81 at 44 (¶ 94); Opp'n – ECF No. 89 at 12–13. The defendants describe the document differently: as stating that compliance with the FTC Privacy Order would require building

2025, he told Meta's investigators that Meta's Form 10-K statements about the privacy program were false and, in his final interview, that "Meta was violating SEC rules . . . [and] lying to investors."[10] On January 2, 2024, he wrote to Zuckerberg reporting violations of the FTC Privacy Order, violations of SEC rules ("including rules relating to falsification of records and false statements to auditors"), evidence that X-Sec had falsified security reports to cover up decisions not to remediate data-exfiltration risks, blocked internal audits, and escalating retaliation, and warning that the SEC's enforcement action against SolarWinds meant that Meta was at risk. Zuckerberg certified Meta's fiscal-year 2023 annual report a month later.[11]

During 2024, the plaintiff also reported to engineering, privacy, audit, and compliance personnel, and to Tsimelzon (who became his supervisor), the following: user-data tables remained accessible to tens of thousands of Meta employees; WhatsApp was "leaking Covered Information on millions, if not billions, of users daily" and "severely under reporting scraping Covered Incidents to the FTC and other regulators"; the results of a data-exfiltration test had been withheld from the Board's audit committee and reported as a success; an auditor under the European Electronic Communications Code had been pressured to exclude findings; 400 million user profile photos were being scraped daily; and a proposed login feature would increase account takeovers. In a May 2024 "Business Case" presented to infrastructure executives, he estimated Meta's regulatory exposure from FTC Privacy Order violations at "up to $1B."[12]

In November 2024, after Tsimelzon reprimanded him for reporting the under-reporting of scraping incidents and ordered the deletion of an internal security report documenting the failures the plaintiff had compiled, the plaintiff filed two Forms TCR with the SEC reporting Meta's "failure to inform investors about material cybersecurity risks, including the systematic under-

---

systems for data inventory, access restriction, breach detection, incident reporting, and audit documentation. Mot. – ECF No. 84-1 at 9–10.

[10] SAC – ECF No. 81 at 56–59 (¶¶ 118–22), 64–65 (¶ 130), 70–71 (¶ 139), 75 (¶ 147), 78 (¶ 152); Mot. – ECF No. 84-1 at 11 n.1; Opp'n – ECF No. 89 at 12.

[11] SAC – ECF No. 81 at 47–48 (¶ 99), 68–69 (¶ 136), 87–98 (¶¶ 164, 166–68), 105 (¶ 172(k)); Mot. – ECF No. 84-1 at 10; Opp'n – ECF No. 89 at 13; Form 10-K – ECF No. 50-3 at 164.

[12] SAC – ECF No. 81 at 48–53 (¶¶ 100–08, 110), 69–77 (¶¶ 137–46, 148); Mot. – ECF No. 84-1 at 10–11; Opp'n – ECF No. 89 at 13–14.

reporting of scraping incidents," "misleading statements in Meta's public SEC filings regarding its FTC Privacy Order compliance program," and "ongoing violations of federal securities laws and rules."[13] On December 4, 2024, he wrote to Zuckerberg again, told him that he had filed a complaint with the SEC, reported continuing deficiencies and retaliation, and said that Meta's leadership was "not being truthful to the auditors and the regulators."[14] He filed a SOX complaint with OSHA on January 17, 2025. Meta terminated his employment on February 10, 2025.[15]

The alleged retaliation began three days after the plaintiff circulated his September 2022 findings, when Mukerji gave him his first negative performance feedback and another supervisor warned him that Gupta would fire him for making the report. It continued with a 2023 performance rating that cost him a promotion, a bonus, and about $600,000 in equity; the blocking of his security initiatives and the exclusion of his team from staffing allocations in 2024; Tsimelzon's November 2024 reprimand and deletion order; and the February 2025 termination.[16] As to Zuckerberg and Cathcart, the SAC alleges that Cathcart solicited the September 2022 report, directed a subordinate to address it, and then withdrew from all engagement with the plaintiff's security work; that Zuckerberg allocated engineers to the executives who were retaliating against the plaintiff "while [the plaintiff's] team received nothing"; and, "on information and belief," that both personally approved the termination.[17]

---

[13] SAC – ECF No. 81 at 53–54 (¶¶ 110–12), 75–77 (¶ 148); Mot. – ECF No. 84-1 at 11, 23; Opp'n – ECF No. 89 at 14.

[14] SAC – ECF No. 81 at 54–55 (¶ 113), 77 (¶ 149); Mot. – ECF No. 84-1 at 11; Opp'n – ECF No. 89 at 14.

[15] SAC – ECF No. 81 at 55 (¶ 114), 77 (¶ 150).

[16] *Id.* at 39–42 (¶¶ 85, 87–88), 62–64 (¶¶ 128–29), 75–77 (¶ 148), 102–07 (¶ 172); Opp'n – ECF No. 89 at 12, 14.

[17] SAC – ECF No. 81 at 39–42 (¶¶ 85, 87), 86 (¶ 162(g)), 105 (¶ 172(k)), 122–23 (¶ 201), 139 (¶ 230), 179 (¶ 269), 180 (¶ 274); Mot. – ECF No. 84-1 at 11; Opp'n – ECF No. 89 at 14, 34 n.19.

United States District Court
Northern District of California

**2. The Second Amended Complaint and the Procedural History**

The court dismissed the original complaint on March 19, 2026, with leave to amend.[18] The plaintiff filed a first amended complaint and a corrected version, withdrew both by stipulation after the defendants raised Rule 11 objections to their allegations about WhatsApp's encryption, and filed the SAC.[19] The SAC asserts one claim under Section 806 in fourteen counts. Count 1 asserts no theory of recovery independent of the others.[20] Counts 2 through 14 each allege retaliation for reporting a different category of conduct: violations of the SEC's cybersecurity-disclosure rule, Item 106 of Regulation S-K (Count 2); shareholder fraud, with (by the plaintiff's count) seventeen statutory and regulatory predicates (Count 3); falsification of records and false statements to auditors under Rules 13b2-1 and 13b2-2 (Counts 4 and 6); false certifications about internal and disclosure controls (Count 5); failures to file current reports on Form 8-K about cybersecurity incidents and about the FTC's 2023 administrative proceeding against Meta (Counts 7 and 12); the OSHA complaint and the Forms TCR themselves (Counts 8 and 9); mail and wire fraud (Count 10); impeding communications with the SEC in violation of Rule 21F-17 (Count 11); violations of four criminal obstruction statutes (Count 13); and violations of Section 17(a) of the Securities Act (Count 14).[21] Each count incorporates all preceding paragraphs, and each is asserted against all six defendants.[22] The defendants moved to dismiss.[23]

---

[18] *Baig I* – ECF No. 70.

[19] ECF Nos. 76, 78–81; Mot. – ECF No. 84-1 at 12. The parties dispute how to characterize the withdrawal. Opp'n – ECF No. 89 at 35 n.20. The dispute does not matter to the motion.

[20] SAC – ECF No. 81 at 122 (¶ 200).

[21] *Id.* at 128–203 (¶¶ 217–306); Opp'n – ECF No. 89 at 16 n.3.

[22] SAC – ECF No. 81 at 132 (¶ 224), 153 (¶ 233); Mot. – ECF No. 84-1 at 13–14; Reply – ECF No. 90 at 8.

[23] Mot. – ECF No. 84. The court grants the plaintiff's unopposed request for judicial notice of Meta's Forms 10-K for fiscal years 2020 and 2021 and its 2022 proxy statement, and considers them, the previously noticed Forms 10-K for fiscal years 2022 through 2024, and OSHA's findings letter for their existence and contents, not for the truth of contested facts. Reqs. for Judicial Notice – ECF Nos. 29-1, 50-1, 86-1; Fed. R. Evid. 201(b). OSHA's findings are not entitled to deference: because the Secretary of Labor did not issue a final decision within 180 days, the plaintiff was entitled to bring this action for de novo review. 18 U.S.C. § 1514A(b)(1)(B); Fed. R. Evid. 201. The parties consented to magistrate-judge jurisdiction. 28 U.S.C. § 636(c)(1). Consents – ECF Nos. 6, 55; 28 U.S.C. § 636(c)(1). The court can decide the motion without oral argument. Civil L.R. 7-1(b).

## LEGAL STANDARDS

### 1. Rule 12(b)(6)

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of the claim and the grounds on which it rests. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint may fail for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016). The court accepts the factual allegations as true and construes them in the plaintiff's favor, *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018), but the allegations must state a plausible claim, *Twombly*, 550 U.S. at 570, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### 2. Section 806 of the Sarbanes-Oxley Act

Section 806 prohibits a public company, and any officer, employee, contractor, subcontractor, or agent of the company, from discharging, demoting, suspending, threatening, harassing, or in any other manner discriminating against an employee in the terms and conditions of employment because the employee provided information, or caused it to be provided, to a supervisor or a federal regulatory or law-enforcement agency regarding conduct that the employee "reasonably believes constitutes a violation of" 18 U.S.C. §§ 1341, 1343, 1344, or 1348 (mail, wire, bank, and securities fraud), "any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders." 18 U.S.C. § 1514A(a)(1). The statute separately protects an employee who files, testifies in, participates in, or otherwise assists in "a proceeding filed or about to be filed (with any knowledge of the employer) relating to an alleged violation" of those laws. *Id.* § 1514A(a)(2).

United States District Court
Northern District of California

A prima facie case requires that (1) the employee engaged in protected activity, (2) the employer knew or suspected, actually or constructively, that he did, (3) he suffered an unfavorable personnel action, and (4) the circumstances raise an inference that the protected activity was a contributing factor in the unfavorable action. *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 996 (9th Cir. 2009). Protected activity requires a subjective belief that the reported conduct violated a listed law and an objectively reasonable belief, judged from the perspective of a reasonable person with the employee's training and experience. *Id.* at 1000–01; *Wadler v. Bio-Rad Labs., Inc.*, 916 F.3d 1176, 1187–88 (9th Cir. 2019). The employee need not cite a code section, and a reasonable but mistaken belief suffices; the threshold is a "minimal" one. *Van Asdale*, 577 F.3d at 997, 1001. A "rule or regulation of the Securities and Exchange Commission" means an administrative rule or regulation promulgated by the SEC, not a statute. *Wadler*, 916 F.3d at 1186–87. A reasonable belief that an SEC rule was violated need not involve fraud. *Id.* at 1187, 1189. But for a belief in shareholder fraud to be objectively reasonable, the employee's theory of the fraud "must at least approximate the basic elements of a claim of securities fraud." *Van Asdale*, 577 F.3d at 1001; *Rocheleau v. Microsemi Corp.*, 680 F. App'x 533, 535 (9th Cir. 2017) (cleaned up).

## ANALYSIS

### 1. The Form of the SAC

The defendants first ask the court to dismiss the SAC as a shotgun pleading, meaning, a complaint that adopts all preceding allegations into each count, is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action," fails to separate claims into distinct counts, or asserts claims against multiple defendants without specifying who is responsible for what. *Gibson v. City of Portland*, 165 F.4th 1265, 1288 (9th Cir. 2026) (cleaned up). District courts need not accept such pleadings: "It is not the job of the district courts to make sense of the pleading, to supply facts to support the claim, or to imagine the claims that might fit the facts." *Id.* at 1289. But "shotgun pleading" describes a class of defects rather than a bright-line rule, and the question is whether the complaint gives the opposing parties and the court fair notice of the claims and their basis. *Id.* at 1289–90.

The SAC has the defects the defendants identify. It is 203 pages, about 84 of them legal argument. Each of its thirteen substantive counts incorporates every preceding paragraph, including the preceding counts. Single paragraphs run for pages and combine a dozen facts with multiple legal theories. The counts overlap: Counts 4 and 6 rest on the same two rules, and Counts 2, 3, and 7 all assert theories under Rule 10b-5 or Item 106. And every count is asserted against every defendant without differentiating who is alleged to have done what.[24] That is not the "short and plain statement" that Rule 8(a)(2) requires or the "simple, concise, and direct" allegations, "limited as far as practicable to a single set of circumstances," that Rules 8(d)(1) and 10(b) require. Rules 8(d)(2) and 10(c) permit alternative theories and incorporation by reference; they do not permit wholesale incorporation that leaves the reader to guess which allegations support which theory against which defendant. *Gibson*, 165 F.4th at 1288. The plaintiff's own defense of the SAC — that the defendants "fail[ed] to attack dozens of legal predicates" scattered through its counts and thereby forfeited any challenge to them — illustrates the problem.[25] The cases the plaintiff cites involved 42- and 49-page complaints with narrower defects.[26]

The remedy, however, is repleading, not dismissal with prejudice, and the merits determine what a further amended complaint may contain. The defendants were able to respond to each count, and the court can identify the theories that the SAC advances. The court therefore addresses the merits and, in section 5, orders the plaintiff to file a third amended complaint that complies with Rules 8 and 10(b) and is limited to the single theory that survives.[27]

**2. Exhaustion**

A SOX plaintiff must file a complaint with the Secretary of Labor and may sue in district court

---

[24] Mot. – ECF No. 84-1 at 13–14; Reply – ECF No. 90 at 8–9.

[25] Opp'n – ECF No. 89 at 16–17. The court rejects the forfeiture argument. The defendants challenged the defects common to the SAC's overlapping theories, and a plaintiff cannot insulate a claim from review by multiplying the legal labels attached to the same reported conduct. Reply – ECF No. 90 at 9.

[26] *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1005 (N.D. Cal. 2024); *Dawson v. Meta Platforms, Inc.*, No. 26-cv-00751-RFL, 2026 WL 2137134, at *10 (N.D. Cal. July 23, 2026); Reply – ECF No. 90 at 9.

[27] *Gibson*, 165 F.4th at 1289–90; Opp'n – ECF No. 89 at 38.

if the Secretary has not issued a final decision within 180 days. 18 U.S.C. § 1514A(b)(1). The judicial complaint is limited to the scope of the administrative investigation that could reasonably be expected to grow out of the administrative complaint, which is construed "with utmost liberality." *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002) (cleaned up) (Title VII); *Wallace v. Tesoro Corp.*, 796 F.3d 468, 476 (5th Cir. 2015) (applying the same rule to Section 806); *Erhart v. BofI Holding, Inc.*, 612 F. Supp. 3d 1062, 1087 (S.D. Cal. 2020). The defendants contend that fourteen categories of conduct alleged in the SAC never appeared in the plaintiff's OSHA complaint and that the plaintiff cannot rely on them. The plaintiff responds with a table matching each category to paragraphs of the OSHA complaint and argues that any reasonable investigation of that complaint would have reached the rest.[28]

The court need not resolve the dispute item by item. The claim before the court is the claim the plaintiff presented to OSHA: retaliation, culminating in the same termination, for the same course of reports about WhatsApp's security deficiencies, falsified assessments and blocked audits, and (as the OSHA complaint alleged) "misleading omissions in [Meta's] public filings," fraud on shareholders, and an intent to mislead "regulators, users, employees, investors, etc."[29] Exhaustion limits the conduct and adverse actions that a plaintiff may litigate; it does not require the administrative complaint to identify every legal theory, or every statement in a public filing, that the reported conduct implicates. The theory on which the SAC survives (that the plaintiff reported that Meta's SEC filings misrepresented its FTC-mandated privacy program and its cybersecurity risks) is within the scope of an investigation of an OSHA complaint that alleged misleading omissions in those filings. The new conduct that the defendants identify (misrepresentations to WhatsApp Business API customers, Zuckerberg's Senate testimony, press releases about spyware vendors, the attribution of advertising revenue to WhatsApp, and the like) fails for the independent reason that the SAC does not allege that the plaintiff ever reported it, and the court does not reach exhaustion,

[28] Mot. – ECF No. 84-1 at 15–17; Opp'n – ECF No. 89 at 35–37; Reply – ECF No. 90 at 10–11.

[29] OSHA Compl., Ex. A to Compl. – ECF No. 3 at 100 (¶ 321), 107–08 (¶ 348), 109 (¶ 351 & n.2); Opp'n – ECF No. 89 at 36–37; Reply – ECF No. 90 at 10 n.2 (acknowledging that the OSHA complaint alleged that Meta's Forms 10-K presented cybersecurity risks as hypothetical).

or the defendants' related timeliness argument, as to it.[30]

**3. Protected Activity**

**3.1 What Section 806 Covers and What the Plaintiff Must Plead**

Three threshold points frame the analysis.

First, most of the statutes the SAC invokes technically are not "rule[s] or regulation[s] of the Securities and Exchange Commission." Sections 13(a), 13(b), and 14(a) of the Exchange Act (15 U.S.C. §§ 78m(a), 78m(b), 78n(a)), Sections 302, 303, and 404 of SOX (15 U.S.C. §§ 7241, 7242, 7262), and 18 U.S.C. §§ 1350, 1512(c), 1513(e), 1519, and 1520 are statutes. *Wadler*, 916 F.3d at 1186–87; *Baig I* – ECF No. 70 at 10. The plaintiff does not argue otherwise, except as to the criminal statutes underlying Count 13, which the court addresses in section 3.6.[31] By contrast, the SEC rules that implement those statutes — Rules 10b-5, 12b-20, 13a-11, 13a-14, 13a-15, 13b2-1, 13b2-2, 14a-9, and 21F-17, the items of Regulation S-K, and the items of Form 8-K — are SEC rules or regulations, and the plaintiff is right that the defendants' contrary suggestion about several of them is wrong.[32] The FTC Privacy Order is a court-entered stipulated order and fits none of Section 806's categories; the plaintiff does not contend that it does.[33]

Second, the plaintiff need not plead a fraud claim to plead protected activity, but the reasonable-belief requirement matters. For the SEC-rule category, the employee must reasonably believe that the conduct he reported violated an SEC rule. No element of fraud is required. *Wadler*, 916 F.3d at 1187, 1189. For the shareholder-fraud category, the employee's theory of fraud must approximate the basic elements of a securities-fraud claim. *Van Asdale*, 577 F.3d at 1001. The plaintiff asks the court to follow the Department of Labor's Administrative Review

---

[30] Mot. – ECF No. 84-1 at 17 n.5, 19–21; *see infra* §§ 3.3, 3.5.

[31] Mot. – ECF No. 84-1 at 18–19; Reply – ECF No. 90 at 11 n.3. Whether those statutes instead "relat[e] to fraud against shareholders" is a separate question, addressed below where it matters.

[32] Mot. – ECF No. 84-1 at 18 n.6; Opp'n – ECF No. 89 at 17. Auditing Standard 2201 is a standard of the Public Company Accounting Oversight Board, not an SEC rule, but the point does not matter because the SAC does not allege that the plaintiff reported anything about the conduct of Meta's outside auditor. *See infra* § 3.4.1.

[33] Mot. – ECF No. 84-1 at 19; Opp'n – ECF No. 89 at 20.

Board and the Third, Sixth, and Eighth Circuits, which hold that a whistleblower need not approximate the elements of fraud at all.[34] The court applies *Van Asdale*, which binds it and which it applied in *Baig I*.[35] But the "basic elements" that an employee's theory must approximate are the core of a fraud — a material misrepresentation or omission, made with knowledge, in connection with the company's securities — not the elements of a private damages action, such as reliance, economic loss, and loss causation, that an employee reporting ongoing conduct is in no position to assess. That is how the Ninth Circuit applied the standard in *Van Asdale*, where it held the "minimal threshold requirement" met by employees' belief that a possible defect in a patent had not been disclosed in connection with a merger, without any inquiry into loss causation. 577 F.3d at 1001–02. The court therefore rejects the defendants' argument that the plaintiff's belief was unreasonable because Meta's share price rose after this lawsuit was filed.[36]

Third, the report must relate to covered law. Section 806 protects reports about the listed categories of conduct, not reports about every legal violation that might eventually bear on a company's public disclosures. An employee who reports that his employer is violating aviation regulations, the FTC Privacy Order, or European privacy law has not reported securities fraud or a violation of an SEC rule merely because the violation, if it became public, might matter to investors. *Platone v. U.S. Dep't of Labor*, 548 F.3d 322, 327 (4th Cir. 2008); *Neely v. Boeing Co.*, No. C16-1791 RAJ, 2018 WL 2216093, at *4 (W.D. Wash. May 15, 2018); *Katzel v. Am. Int'l Grp.*, No. 20 Civ. 7220 (AKH), 2022 WL 17251362, at *3 (S.D.N.Y. Nov. 28, 2022), *aff'd*, 2024 WL 3063461 (2d Cir. June 20, 2024). The employee need not cite a rule or use the word "fraud,"

---

[34] Opp'n – ECF No. 89 at 26–27 (citing *Sylvester v. Parexel Int'l LLC*, ARB No. 07-123, 2011 WL 2165854 (ARB May 25, 2011) (en banc); *Wiest v. Lynch*, 710 F.3d 121, 131–34 (3d Cir. 2013); *Rhinehimer v. U.S. Bancorp Invs., Inc.*, 787 F.3d 797, 811–12 (6th Cir. 2015); and *Beacom v. Oracle Am., Inc.*, 825 F.3d 376, 380 (8th Cir. 2016)). The plaintiff's prediction that the Ninth Circuit would defer to the Board's interpretation is doubtful after *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), and in any event does not free this court from *Van Asdale*.

[35] *Baig I* – ECF No. 70 at 8–9. The Ninth Circuit has not decided whether to adopt *Sylvester*. *Rocheleau*, 680 F. App'x at 535 n.2.

[36] Mot. – ECF No. 84-1 at 28; Reply – ECF No. 90 at 16–17. The share-price data, news articles, and Google Finance pages the defendants cite are outside the pleadings, and the inference they would draw from them is not one the court can draw on a motion to dismiss in any event.

but his report must convey that what he is reporting is, in his reasonable belief, a fraud on shareholders or a violation of an SEC rule, for example, that the company's filings misdescribe the conduct. *Van Asdale*, 577 F.3d at 997, 1001–02.

**3.2 Reports of Cybersecurity Deficiencies and FTC Privacy Order Noncompliance**

Measured against those principles, most of the plaintiff's reports are not protected. From September 2021 through March 2023, he reported that WhatsApp's security was deficient in ways that violated the FTC Privacy Order, that assessments were being falsified and audits narrowed, and that the deficiencies exposed Meta to regulatory action and fines. During 2024, he reported to engineering, privacy, and compliance personnel that user data was accessible to tens of thousands of employees, that scraping and account-takeover incidents were massive and under-reported to the FTC and other regulators, that Meta's commitments to the Irish Data Protection Commission were false, and that a proposed feature would increase account takeovers, and he estimated the company's regulatory exposure at up to $1 billion. These are reports of security failures and of noncompliance with the FTC Privacy Order and foreign privacy law. None asserts that Meta's SEC filings were false, that its investors were being misled, or that an SEC rule was being violated. The March 2023 warning that WhatsApp "risk[ed] additional legal action by the FTC, SEC, [IDPC], and other regulators" is a warning of regulatory exposure arising from the deficiencies, not a report that Meta had violated an SEC rule or defrauded its shareholders.[37]

The plaintiff's "FTC-to-SEC pipeline" theory — that because Meta's filings represented compliance with the FTC Privacy Order, every report of noncompliance was also a report that the filings were false — requires too much. It would make every internal compliance complaint at a public company protected activity under SOX, which is not the law. *Platone*, 548 F.3d at 327; *Neely*, 2018 WL 2216093, at *4. The court rejected the same theory, in its original form, in *Baig I*.[38]

---

[37] SAC – ECF No. 81 at 39–75 (¶¶ 84–91, 100–08, 125, 127–29, 133, 137–46). The plaintiff's sending the executives an article about the Twitter whistleblower after his October 2022 presentation does not change the analysis; circulating an article about another company is not a report about Meta's filings. *Id.* (¶¶ 86, 125).

[38] *Baig I* – ECF No. 70 at 7–8; Mot. – ECF No. 84-1 at 22; Opp'n – ECF No. 89 at 20–21; Reply – ECF No. 90 at 12.

The plaintiff's reports of cybersecurity deficiencies and FTC Privacy Order noncompliance are therefore not protected activity, and the claim is dismissed to the extent it rests on them.[39]

**3.3 Reports that Meta's SEC filings Were False or Misleading (Counts 2, 3, 12, and 14)**

The plaintiff's later reports are different. The SAC alleges that beginning in April 2023 he reported (through his counsel's letter, to Meta's investigators, in two letters to Zuckerberg, and in two submissions to the SEC) that Meta's SEC filings contained misstatements about its cybersecurity practices, the Form 10-K statements about maintaining a privacy program in connection with the FTC Privacy Order were false because the mandated program had never been built, security assessments had been falsified and audits blocked, Meta's leadership was "not being truthful to the auditors and the regulators," and Meta was "violating SEC rules . . . [and] lying to investors." He identified SEC rules, invoked the SEC's SolarWinds enforcement action, and reported that Meta was failing to inform investors about material cybersecurity risks, including the under-reporting of scraping incidents.[40] The defendants respond that the Zuckerberg letters do not identify any statement in a Form 10-K and that the plaintiff's reports remained reports of cybersecurity issues, not of disclosure failures.[41] But an employee need not identify the statement with a lawyer's precision. *Van Asdale*, 577 F.3d at 997. Taking the SAC's allegations as true, the plaintiff told Meta, in substance, that its public filings misdescribed the state of the FTC-mandated program and its cybersecurity risks and that investors were being misled. That is a report about covered law.

The question is whether the belief was objectively reasonable. The SAC identifies the statements: Meta was implementing or maintaining a comprehensive privacy program in connection with the FTC Privacy Order; a Board committee oversaw compliance with it; Meta's

[39] This includes Count 2 to the extent it rests on reports of FTC Privacy Order violations, Count 3's "scheme" theory to the extent it rests on the same reports, and Count 14 to the same extent. SAC – ECF No. 81 at 129–53 (¶¶ 219, 221, 225–26, 228–32), 201–02 (¶¶ 303–04). The court does not decide causation, which the defendants did not raise. It notes only that protected activity cannot be a contributing factor in an adverse action that preceded it.

[40] SAC – ECF No. 81 at 44–77 (¶¶ 93–94, 99, 112–13, 118–22, 130, 135–36, 147–49).

[41] Reply – ECF No. 90 at 12–13.

disclosure controls were effective; noncompliance with the order and cyberattacks were risks that "could" or "may" harm the company; Meta had not identified cybersecurity threats that materially affected it; and (from fiscal year 2023) the Item 106 descriptions of Meta's cybersecurity risk management and oversight and the statement that Meta's internal audit function provides independent assessment of its cybersecurity and privacy programs.[42] And it pleads the facts the plaintiff reported: that the program's mandated components (a data inventory, access controls, and breach detection) had not been built; that user data was accessible to between 1,500 and 65,000 employees without monitoring; that hundreds of thousands of accounts were being compromised, and hundreds of millions of profile photos scraped, every day; that assessments were being falsified and audits narrowed or blocked so that the Board's audit committee received a false picture; and that Meta faced regulatory exposure of up to $1 billion. A reasonable person with the plaintiff's training and experience — a twenty-year security professional whom Meta had trained on the 2020 order, and who knew that the SEC had fined Meta $100 million in 2019 for describing as hypothetical a data-misuse risk that had already materialized — could believe that filings describing the mandated program as being maintained, the controls as effective, and cyber incidents and noncompliance as contingent risks were materially misleading.[43] The Ninth Circuit has twice held that risk disclosures framing as hypothetical a risk that has already materialized can be misleading half-truths, *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 703–04 (9th Cir. 2021); *In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 949–52 (9th Cir. 2023), and that reasonable investors would likely find omissions about significant cybersecurity incidents material, *Alphabet*, 1 F.4th at 704–05. The *SolarWinds* court, in the enforcement action the plaintiff cited to Zuckerberg, sustained the SEC's fraud claims premised on a company's false statements about its cybersecurity practices. *SEC v. SolarWinds Corp.*, 741 F. Supp. 3d 37, 80–83 (S.D.N.Y. 2024).

---

[42] SAC – ECF No. 81 at 18–22 (¶¶ 44–50, 53, 56), 60–61 (¶ 126), 118 (¶ 187), 135–66 (¶¶ 228, 232(a), 238–40, 249–50); Forms 10-K & Proxy Statement – ECF Nos. 50-2 at 53; 50-3 at 45–46, 51–52, 57, 67–68; 50-4 at 44–45, 49–50, 58–60; Exs. 1–3 to Req. for Judicial Notice – ECF Nos. 86-2 at 37, 86-3 at 38, 86-4 at 22.

[43] SAC – ECF No. 81 at 13–17 (¶¶ 27–28, 34, 41), 27 (¶ 64(a)), 39–53 (¶¶ 85, 94, 99, 102–03, 106–08), 139–40 (¶ 231), 202–03 (¶ 305).

Whether Meta's filings were in fact misleading is not the question. The question is whether the plaintiff's belief that they were was reasonable, and on these allegations it was.

The defendants' contrary arguments do not defeat plausibility.

*Puffery.* The defendants characterize the statement that Meta maintained a "comprehensive" privacy program as unverifiable corporate optimism. *Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 804 (N.D. Cal. 2019); *In re PG&E Corp. Sec. Litig.*, 806 F. Supp. 3d 962, 992, 995 (N.D. Cal. 2025). "Comprehensive" is a characterization, but the statement that Meta was maintaining a privacy program in connection with the FTC Privacy Order asserts that the program the order requires existed and was being kept up, and the plaintiff reported that its required components had not been built. That the SAC elsewhere refers to Meta's "privacy program" does not make the belief unreasonable; the reported falsity concerned the mandated program, and the court cannot read the SAC's references against the plaintiff on this motion.[44]

*No duty to confess.* A company need not disclose unproven allegations of noncompliance or "self-flagellate." *Veal*, 423 F. Supp. 3d at 806; *Kang v. PayPal Holdings, Inc.*, 620 F. Supp. 3d 884, 897–98 (N.D. Cal. 2022). That principle answers a pure-omission theory, and the court agrees that pure omissions are not actionable. *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 263–64 (2024). But the plaintiff's theory is that Meta's affirmative statements about maintaining the program, the effectiveness of its controls, and the contingent nature of its cyber risks were half-truths, and Item 106 imposes affirmative disclosure obligations about cybersecurity risk management, the effects of past incidents, and oversight. 17 C.F.R. § 229.106(b)–(c). *Kang*, which involved a statement that the company was "cooperating" with a regulator, is not to the contrary.[45]

*Meta's actual disclosures.* The defendants' strongest point is that Meta's Forms 10-K disclosed that Meta regularly experiences cyberattacks, faces "known and unknown" risks that are not fully mitigated, cannot assure that undetected incidents have not occurred, and (from fiscal

[44] Mot. – ECF No. 84-1 at 24; Opp'n – ECF No. 89 at 33; Reply – ECF No. 90 at 13 (citing SAC ¶¶ 66, 178, 195).

[45] Mot. – ECF No. 84-1 at 25; Opp'n – ECF No. 89 at 21, 25–26; Reply – ECF No. 90 at 15.

United States District Court
Northern District of California

year 2023) that the FTC had initiated a proceeding alleging deficient compliance with the Privacy Order.[46] Those disclosures may ultimately show that no reasonable investor was misled. They do not make the plaintiff's belief unreasonable as a matter of law. An employee who reported that the mandated program had never been built, that hundreds of thousands of accounts were compromised daily, and that the company's own assessments were being falsified could reasonably believe that a disclosure of the FTC's allegations and of generic vulnerability did not convey what the filings' affirmative statements implied. Reasonable minds could differ, which is enough at the pleading stage. *Cf. Rhinehimer*, 787 F.3d at 811–12.

*Materiality.* The plaintiff's belief that the misstatements were material is plausible for the reasons already given: the scale of the alleged incidents and exposure, the Ninth Circuit's guidance in *Alphabet*, and the SEC's own judgment, in adopting Item 106, that information about cybersecurity risk and incidents is important to investors. Cybersecurity Risk Management, Strategy, Governance, and Incident Disclosure, 88 Fed. Reg. 51896 (Aug. 4, 2023). The defendants' comparison of a "$5,000,000" figure in the plaintiff's Form TCR to Meta's revenue does not establish otherwise; the SAC does not explain the figure, and the court cannot draw inferences against the plaintiff from it. *Clegg v. Amcor Rigid Packaging USA, LLC*, No. CV 5:21-232-DCR, 2022 WL 23215, at *3 (E.D. Ky. Jan. 3, 2022), which involved an inventory discrepancy, is not comparable.[47]

*Scienter.* To the extent the shareholder-fraud category requires the plaintiff's theory to approximate scienter, the SAC alleges that Zuckerberg certified the fiscal-year 2023 and 2024 annual reports after receiving the plaintiff's letters and that Gupta acknowledged that Meta had "known about these issues for a long time."[48] That suffices for a reasonable belief. The SEC-rule category requires no scienter at all.

---

[46] Reply – ECF No. 90 at 13–15; Forms 10-K – ECF Nos. 50-3 at 12, 43, 45–46, 52; 50-4 at 11, 42, 44–45, 50.

[47] Mot. – ECF No. 84-1 at 27–28; Opp'n – ECF No. 89 at 29–30 & n.11; Reply – ECF No. 90 at 15–16; SAC – ECF No. 81 at 53–54 (¶ 112).

[48] SAC – ECF No. 81 at 47–55 (¶¶ 99, 106, 113), 77 (¶ 149), 141–43 (¶ 232(a)); Opp'n – ECF No. 89 at 28–29.

United States District Court
Northern District of California

The SAC thus plausibly pleads protected activity to the extent the plaintiff reported that Meta's SEC filings misrepresented its FTC-mandated privacy program and its cybersecurity risks, and the motion is denied as to that theory. Two related points follow. First, the plaintiff's reports about falsified assessments and blocked audits are protected under this theory insofar as he reported them as rendering Meta's filings (including the statement about its internal audit function) misleading, even though they do not support the books-and-records theories addressed in section 3.4.1. Second, Count 12's "half-truth" theory about the fiscal-year 2023 disclosure of the FTC proceeding and Count 14's theory under Section 17(a) of the Securities Act are the same theory under different labels: each rests on the same reports about the same filings. The court dismisses them as duplicative. The third amended complaint may identify the SEC rules and statutes that the plaintiff contends the reported conduct violated, but it must plead the theory once.[49]

### 3.4 Theories Tied to Other SEC Rules

#### 3.4.1 Books-and-Records and Auditor Rules (Counts 4 and 6)

Rule 13b2-1 prohibits falsifying "any book, record or account subject to section 13(b)(2)(A)" of the Exchange Act, 17 C.F.R. § 240.13b2-1, that is, the books, records, and accounts that "accurately and fairly reflect the transactions and dispositions of the assets of the issuer," 15 U.S.C. § 78m(b)(2)(A). Rule 13b2-2 prohibits officers and directors from making materially false or misleading statements to an accountant in connection with an audit or review of the issuer's financial statements or the preparation of an SEC filing, and from coercing, manipulating, misleading, or fraudulently influencing an independent accountant engaged in an audit or review of the financial statements. 17 C.F.R. § 240.13b2-2(a), (b)(1). The plaintiff reported falsified security assessments provided to compliance personnel and the FTC's independent assessor, an exfiltration-test result withheld from the Board's audit committee, findings struck from a

---

[49] Opp'n – ECF No. 89 at 16–17, 25–26, 28–29 & n.10. The remaining predicates listed in Count 3 — Items 103, 303, 402, and 407 of Regulation S-K, Regulations FD and G, Item 10(e), Sections 11, 18(a), and 20(a), and the scheme-liability provisions of Rule 10b-5 — add nothing. The SAC does not allege that the plaintiff reported anything about executive compensation, selective disclosure, non-GAAP measures, or registration statements, and the "scheme" is the same alleged course of misrepresentation. Reply – ECF No. 90 at 13 n.6, 15 n.10.

telecommunications auditor's report, and instructions not to document compliance failures.[50] None of that concerns the records that reflect Meta's transactions and assets or statements to an accountant auditing Meta's financial statements. *See SEC v. Todd*, 642 F.3d 1207, 1225 (9th Cir. 2011); *SEC v. Wilcox*, 663 F. Supp. 3d 146, 162–64 (D. Mass. 2023) (revenue-recognition practices that overstated revenue in financial reports).

The plaintiff responds that an engineer could reasonably believe otherwise, that the SEC itself pressed a cybersecurity theory of the accounting-controls provision in *SolarWinds*, and that no court rejected it until after he raised it.[51] The reasonable-belief standard forgives an employee's mistakes about what the law requires; it does not extend the SEC's accounting rules to records and audits that have nothing to do with accounting. The court held in *Baig I* that reports about cybersecurity are not reports about internal accounting controls because "accounting controls" refers to financial accounting, and the SAC's new allegations about assessments, audits, and auditors do not describe accounting records or financial audits.[52] The words "audit" and "auditor" do not change what was audited. Nor does the SAC allege that the plaintiff reported to anyone the one allegation that would come closer: that Meta's outside auditor, Ernst & Young, was misled.[53] Counts 4 and 6 are dismissed.

**3.4.2 Internal Controls and Disclosure Controls (Count 5)**

Count 5 has two parts. The internal-controls part — that the plaintiff reported violations of Rule 13a-15(f), Section 13(b)(2)(B), and Section 404 of SOX — is foreclosed by *Baig I*: internal control over financial reporting concerns financial reporting, not cybersecurity, and Sections 13(b)(2)(B) and 404 are statutes, not SEC rules.[54]

The disclosure-controls part fails for a different reason. Disclosure controls and procedures are

[50] SAC – ECF No. 81 at 33 (¶ 70), 51–53 (¶¶ 106, 108), 72–75 (¶¶ 143, 146), 155 (¶ 238(a)); Opp'n – ECF No. 89 at 23–24.

[51] Opp'n – ECF No. 89 at 23–24; Reply – ECF No. 90 at 17.

[52] *Baig I* – ECF No. 70 at 10–12; *SolarWinds*, 741 F. Supp. 3d at 107–08.

[53] Mot. – ECF No. 84-1 at 21; Reply – ECF No. 90 at 17 n.11.

[54] *Baig I* – ECF No. 70 at 10–12; Mot. – ECF No. 84-1 at 29; Opp'n – ECF No. 89 at 23 n.5.

the controls designed to ensure that information required to be disclosed is "recorded, processed, summarized and reported" within the required time and is "accumulated and communicated to the issuer's management, including its principal executive and principal financial officers," to allow timely disclosure decisions. 17 C.F.R. § 240.13a-15(e). The plaintiff's theory is that Meta's system was "built to intentionally suppress" cybersecurity information.[55] But the SAC alleges that the plaintiff's information reached Meta's chief executive officer, chief financial officer, and other top leadership, through his own letters to Zuckerberg and through escalation by others.[56] On the SAC's own account, the alleged problem was not that the controls kept information from the officers who decide what to disclose; it was what those officers did with it. That is the misrepresentation theory addressed in section 3.3, not a controls theory. And the incidents the plaintiff cites — a false result reported to the Board's audit committee, an auditor pressured to omit findings, the X-Sec reports, an instruction to stop documenting compliance failures, and the deletion order — describe alleged misconduct by particular managers, not a defect in the design of Meta's disclosure controls. *SolarWinds*, 741 F. Supp. 3d at 110–12.[57] Count 5 is dismissed.

**3.4.3 Form 8-K Items 1.05 and 8.01 (Counts 7 and 12)**

Item 1.05 of Form 8-K requires a registrant to file a current report within four business days after it "determines" that a cybersecurity incident is material, and requires it to make that determination without unreasonable delay. Form 8-K, Item 1.05 & Instruction 1; 17 C.F.R. § 240.13a-11. The SAC alleges that the plaintiff reported the scale of scraping and account-takeover incidents and their under-reporting to the FTC and other regulators, and that Meta disclosed a smaller spyware incident in January 2025.[58] It does not allege that he reported that Meta had determined an incident to be material and failed to report it, or that Meta was unreasonably

[55] Opp'n – ECF No. 89 at 22–23.

[56] SAC – ECF No. 81 at 8–9 (¶ 16), 47–55 (¶¶ 99, 101, 113), 122–23 (¶ 201), 168–71 (¶ 257); Reply – ECF No. 90 at 13–14.

[57] Mot. – ECF No. 84-1 at 29–30; Reply – ECF No. 90 at 14. To the extent the plaintiff reported that Meta's certification that its disclosure controls were effective was false, that report is part of the theory addressed in section 3.3.

[58] SAC – ECF No. 81 at 33–34 (¶ 71), 49 (¶ 102), 71 (¶ 140), 146–47 (¶ 232(e)), 168–75 (¶¶ 257, 263–64); Opp'n – ECF No. 89 at 24–25.

delaying a materiality determination. A belief that incidents were serious and under-reported to regulators is not a belief that Item 1.05 was violated.[59] Count 7 is dismissed.

Item 8.01 permits, but does not require, a registrant to report "any events . . . that the registrant deems of importance to security holders." Form 8-K, Item 8.01. A belief that Meta violated an SEC rule by not filing an optional report is not objectively reasonable. The plaintiff does not respond to this argument; he recasts Count 12 as a half-truth theory about the fiscal-year 2023 Form 10-K's disclosure of the FTC proceeding, which is Count 3's theory and is addressed in section 3.3.[60] Count 12's Item 8.01 theory is dismissed.

**3.4.4 Rule 21F-17 (Count 11)**

Rule 21F-17 provides that "[n]o person may take any action to impede an individual from communicating directly with the Commission staff about a possible securities law violation, including enforcing, or threatening to enforce, a confidentiality agreement." 17 C.F.R. § 240.21F-17(a). The plaintiff is right that the rule is not limited to confidentiality agreements. But it is limited to actions to impede communication with the SEC. The plaintiff relies on Tsimelzon's order to delete an internal security report on the day the plaintiff was preparing his first Form TCR and on earlier instructions to stop raising FTC-compliance concerns. The SAC does not allege that Tsimelzon or anyone else knew that the plaintiff was preparing to communicate with the SEC, and it alleges that Tsimelzon's stated reason for the deletion was that the report would make his team look bad.[61] Conduct aimed at suppressing internal documentation of compliance failures, with no alleged connection to communications with the SEC, is not conduct that a person could reasonably believe violated Rule 21F-17. Count 11 is dismissed.

**3.5 Mail and Wire Fraud (Count 10)**

The court dismissed the wire-fraud theory in *Baig I* because the complaint alleged no scheme

---

[59] Reply – ECF No. 90 at 17–18. To the extent the plaintiff reported — as his Forms TCR did — that Meta was failing to inform investors of material cybersecurity risks and incidents, that report is part of the theory addressed in section 3.3.

[60] Mot. – ECF No. 84-1 at 25–26 & n.10; Opp'n – ECF No. 89 at 25–26; Reply – ECF No. 90 at 15 n.9.

[61] SAC – ECF No. 81 at 53–54 (¶ 112), 75–77 (¶ 148), 188–90 (¶¶ 282, 284); Opp'n – ECF No. 89 at 26; Reply – ECF No. 90 at 19.

United States District Court
Northern District of California

to defraud and no intent to defraud.[62] The SAC's new theory is that Meta used the mails and wires to misrepresent WhatsApp's security to users and to Business API customers in order to induce them to entrust their data to WhatsApp and to pay per-message fees.[63] The theory fails for a reason that precedes its elements: the SAC does not allege that the plaintiff ever reported it. His reports concerned security failures and regulatory reporting, not a scheme to obtain money or property from users or customers by deception. *Boyd v. Accuray, Inc.*, 593 F. App'x 647, 648 (9th Cir. 2015); *Nordstrom v. U.S. Bank, N.A.*, No. 11-cv-1554 BEN (KSC), 2012 WL 3000416, at *4 (S.D. Cal. July 23, 2012). The plaintiff does not contend otherwise; he argues that the defendants' reaction to his reports shows their intent, which is a different point.[64] Protected activity requires a report; a theory constructed in litigation is not one. Count 10 is dismissed.

**3.6 The Criminal Obstruction Statutes (Count 13)**

Count 13 alleges that the plaintiff reported violations of 18 U.S.C. §§ 1512(c), 1513(e), 1519, and 1520. They are statutes, not SEC rules, *Wadler*, 916 F.3d at 1186–87, and none is a "provision of Federal law relating to fraud against shareholders." That phrase reaches statutes whose subject is fraud on shareholders. It does not reach every provision enacted in the Sarbanes-Oxley Act, *Brinker v. Axos Bank*, No. 22-cv-386-MMA (DDL), 2023 WL 4535529, at *9 (S.D. Cal. July 13, 2023) (Section 404 of SOX is not covered because nothing on its face suggests that it relates to shareholder fraud), or every obstruction statute that might be violated in the course of concealing such a fraud. Sections 1512(c) and 1519 criminalize obstructing official proceedings and federal investigations of any kind; Section 1513(e) criminalizes retaliating against informants to law enforcement; and Section 1520 criminalizes accountants' destruction of audit work papers. That Congress enacted Section 1519 in response to Enron-era document destruction, *Yates v. United States*, 574 U.S. 528, 532, 541 (2015), does not make it a statute about shareholder fraud, and the plaintiff cites no case holding that any of these statutes is covered by Section 806.[65] Count 13 is

[62] *Baig I* – ECF No. 70 at 12.

[63] SAC – ECF No. 81 at 35–37 (¶¶ 76–81), 180–88 (¶¶ 275–80); Opp'n – ECF No. 89 at 30–31.

[64] Mot. – ECF No. 84-1 at 30–31; Opp'n – ECF No. 89 at 30–31 & n.14; Reply – ECF No. 90 at 18–19.

[65] Mot. – ECF No. 84-1 at 18–19, 32; Opp'n – ECF No. 89 at 31–32; Reply – ECF No. 90 at 19–20.

dismissed.

**3.7 The OSHA Complaint and the SEC Submissions (Counts 8 and 9)**

The court held in *Baig I* that a submission to OSHA or the SEC is not protected “regardless of content”; the employee must reasonably believe that the information he provides concerns a violation of covered law.[66] The plaintiff repeats the argument and adds that Section 1514A(a)(2) protects the filings without regard to the reasonableness of any belief.[67] Section 1514A(a)(2) protects participation in a proceeding “relating to an alleged violation” of the laws listed in Section 1514A(a)(1); it does not protect a proceeding about something else. *Grimm v. Target Corp.*, No. CV 16-2564 (DSD/KMM), 2017 WL 481455, at *5 (D. Minn. Feb. 6, 2017). The plaintiff’s Forms TCR and OSHA complaint are protected, then, to the extent that they related to alleged violations of covered law — and for the reasons in section 3.3 they did: the Forms TCR reported a failure to inform investors of material cybersecurity risks and misleading statements in Meta’s SEC filings about the FTC Privacy Order program, and the OSHA complaint alleged misleading omissions in Meta’s public filings and fraud on shareholders. The SAC also alleges the employer knowledge the statute requires: the plaintiff told Zuckerberg in December 2024 that he had filed with the SEC, and Meta knew from the plaintiff’s counsel and the parties’ tolling agreements that an OSHA complaint was coming.[68] The court therefore need not decide whether Section 1514A(a)(2) incorporates a reasonable-belief requirement or whether the SAC adequately invoked that subsection.[69] But Counts 8 and 9 are not independent theories of protected activity. The filings are protected because of what they reported, and the plaintiff must plead them as part of the single surviving theory. As independent counts, they are dismissed.

---

[66] *Baig I* – ECF No. 70 at 8.

[67] Opp’n – ECF No. 89 at 32–33.

[68] SAC – ECF No. 81 at 7–8 (¶ 13), 53–55 (¶¶ 112–14), 75–77 (¶¶ 148–50), 90 (¶ 164(c)).

[69] Reply – ECF No. 90 at 18. A complaint need not plead legal theories. *Johnson v. City of Shelby*, 574 U.S. 10, 11–12 (2014) (per curiam).

**4. Zuckerberg and Cathcart**

Section 806 imposes liability on an "officer, employee, contractor, subcontractor, or agent" of the company who discharges, demotes, suspends, threatens, harasses, or otherwise discriminates against an employee. 18 U.S.C. § 1514A(a). Liability requires participation in the adverse action; knowledge of the protected activity is not enough.[70] The court held in *Baig I* that allegations that the plaintiff wrote to Zuckerberg and briefed Cathcart did not show retaliation by either.[71] The SAC adds three things, and none suffices.

First, the SAC alleges "on information and belief" that Zuckerberg and Cathcart personally approved the plaintiff's termination.[72] A plaintiff may plead on information and belief facts that are peculiarly within the defendant's knowledge, but the allegation must be accompanied by facts that make the belief plausible. *Park v. Thompson*, 851 F.3d 910, 928–29 (9th Cir. 2017); *Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 493 (9th Cir. 2019). The Ninth Circuit affirmed dismissal in *Blantz* where the complaint alleged on information and belief that a senior official had directed the challenged actions, alleged no other facts about his involvement, and it was not plausible on its face that an official at his level would have participated. *Blantz v. Cal. Dep't of Corr. & Rehab.*, 727 F.3d 917, 926–27 (9th Cir. 2013). The facts the plaintiff offers here — that both received his complaints, that his termination carried litigation exposure, and that he was the head of security of a major product — do not make it plausible that Meta's chief executive, four levels above the plaintiff, or the head of WhatsApp, three levels above him, personally approved the termination rather than the managers to whom he reported.[73] As to Cathcart, the SAC's own

[70] *Baig I* – ECF No. 70 at 13; Mot. – ECF No. 84-1 at 32–33; Reply – ECF No. 90 at 20–21 (citing *Leznik v. Nektar Therapeutics, Inc.*, No. 2006-SOX-00093, 2007 WL 5596626, at *37–39 (Dep't of Labor Nov. 16, 2007), and *Bury v. Force Prot., Inc.*, No. CA 2:09-1708-DCN-BM, 2011 WL 2935916, at *3 (D.S.C. June 27, 2011)). The plaintiff's authority is consistent: it affirmed liability against a chief executive and a board chairman who were "involved in the decision to terminate." *Jones v. Southpeak Interactive Corp. of Del.*, 777 F.3d 658, 675 (4th Cir. 2015).

[71] *Baig I* – ECF No. 70 at 13.

[72] SAC – ECF No. 81 at 122–23 (¶ 201), 179–80 (¶¶ 269, 274).

[73] *Id.* at 9–12 (¶¶ 17–20, 22); Mot. – ECF No. 84-1 at 33; Opp'n – ECF No. 89 at 34–35. The plaintiff's "cat's paw" theory does not help. That doctrine attributes a subordinate's retaliatory motive to an employer whose decisionmaker acted on the subordinate's input, *Staub v. Proctor Hosp.*, 562

allegation that he withdrew from all engagement with the plaintiff's security work after October 2022 cuts against an inference that he participated in a termination decision more than two years later.

Second, the SAC alleges that Cathcart, after soliciting the plaintiff's September 2022 report and directing a subordinate to address it, withdrew from the plaintiff's security work entirely — reviewing none of his projects against a norm of ten reviews a week — and that because promotions require a manager's endorsement, the withdrawal stalled the plaintiff's career.[74] Cathcart was not the plaintiff's manager, and the SAC does not allege that he was asked for or withheld an endorsement, that any decision about the plaintiff's compensation or promotion turned on his review of the plaintiff's projects, or any other way in which his disengagement changed the terms and conditions of the plaintiff's employment. A senior executive's ceasing to attend to a subordinate's projects is not, without more, an adverse action.

Third, the SAC alleges that Zuckerberg allocated engineers to the executives who were retaliating against the plaintiff "while [the plaintiff's] team received nothing."[75] Allocating engineers to an organization is not an adverse action against an employee within it. The exclusion of the plaintiff's team from that allocation is attributed to Gupta, whose involvement the court found sufficiently pleaded in *Baig I*; nothing in the SAC connects Zuckerberg to that exclusion.[76]

The claims against Zuckerberg and Cathcart are dismissed. The plaintiff has twice failed to plead facts showing their participation in any adverse action, and the SAC's additions are conclusory, so the court denies leave to amend on the current allegations. The dismissal is without prejudice to a motion for leave to amend under Rule 15(a)(2) if discovery reveals facts showing that either participated in the termination decision.

---

U.S. 411, 419–22 (2011); it does not make an officer liable for a decision that he is not plausibly alleged to have made or approved. And *Murray v. UBS Securities, LLC*, 601 U.S. 23, 34–36 (2024), which holds that a SOX plaintiff need not prove retaliatory intent, does not dispense with the requirement that the defendant took the adverse action.

[74] SAC – ECF No. 81 at 39–42 (¶¶ 85, 87), 86 (¶ 162(g)), 139 (¶ 230); Opp'n – ECF No. 89 at 34 n.19.

[75] SAC – ECF No. 81 at 105 (¶ 172(k)); Opp'n – ECF No. 89 at 34 n.19.

[76] *Baig I* – ECF No. 70 at 13; Reply – ECF No. 90 at 21.

United States District Court
Northern District of California

**5. Leave to Amend and the Form of the Third Amended Complaint**

Leave to amend is freely given, Fed. R. Civ. P. 15(a)(2), but a court may deny it for repeated failure to cure deficiencies, futility, or prejudice. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). The theories the court has dismissed fail as a matter of law or because the plaintiff did not report the conduct at issue, and this is the plaintiff's third complaint. Further amendment on those theories would be futile, and the court denies leave to replead them.

The surviving theory must be repleaded because the SAC does not comply with Rules 8 and 10(b). The third amended complaint must:

(1) assert the single claim under 18 U.S.C. § 1514A without dividing it into counts by legal theory (the plaintiff may identify the SEC rules and statutes that he contends the reported conduct violated);

(2) rest only on the theory that survives this order: that the plaintiff reported that Meta's SEC filings misrepresented its FTC-mandated privacy program and its cybersecurity risks;

(3) identify each protected report by date, recipient, and substance, including what the plaintiff said about Meta's SEC filings or its investors;

(4) identify each adverse action by date and by the person who took it, and plead the facts supporting an inference that a protected report was a contributing factor;

(5) omit legal argument and case citations and not incorporate all preceding paragraphs by reference into any part of the complaint; and

(6) not exceed 30 pages.

The plaintiff may attach the OSHA complaint and cite Meta's SEC filings, but he must plead in the body of the complaint, with pinpoint citations, the facts on which the claim rests.[77]

---

[77] *Baig I* – ECF No. 70 at 8.

**CONCLUSION**

The court grants the motion in part and denies it in part. The plaintiff's claim under 18 U.S.C. § 1514A survives against Meta, Gupta, Mukerji, and Tsimelzon to the extent it rests on the plaintiff's reports, beginning with his counsel's April 2023 letter, that Meta's SEC filings misrepresented its FTC-mandated privacy program and its cybersecurity risks, including the Forms TCR and the OSHA complaint that reported the same. The claim is dismissed without leave to amend to the extent it rests on any other theory of protected activity, including reports of cybersecurity deficiencies and FTC Privacy Order noncompliance that did not refer to Meta's SEC filings or its investors (Counts 2, 3, and 14 in part); the books-and-records, auditor, internal-controls, and disclosure-controls rules (Counts 4, 5, and 6); Form 8-K Items 1.05 and 8.01 (Counts 7 and 12); Rule 21F-17 (Count 11); mail and wire fraud (Count 10); the criminal obstruction statutes (Count 13); the OSHA complaint and Forms TCR as independently protected activity (Counts 8 and 9); and Count 12's half-truth theory and Count 14 as duplicative of Count 3. The claims against Zuckerberg and Cathcart are dismissed without leave to amend on the current allegations and without prejudice to a motion for leave under Rule 15(a)(2) if discovery reveals facts showing that either participated in the termination decision.

The plaintiff must file a third amended complaint that complies with section 5 of this order by October 2, 2026. The defendants must answer or otherwise respond within 14 days after it is filed. Fed. R. Civ. P. 15(a)(3).

This resolves ECF No. 84.

**IT IS SO ORDERED.**

Dated: September 24, 2026

LAUREL BEELER
United States Magistrate Judge