PAUL HASTINGS LLP
Elena R. Baca (SB# 160564)
elenabaca@paulhastings.com
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, California 90071-2228
Telephone: 1(213) 683-6000
Facsimile: 1(213) 627-0705

Attorneys for Defendants
META PLATFORMS, INC., PINAKI MUKERJI,
MARK TSIMELZON, AND NITIN GUPTA

(*Additional counsel listed on next page*)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ATTAULLAH BAIG,

Plaintiff,

vs.

META PLATFORMS, INC., PINAKI MUKERJI, MARK TSIMELZON, NITIN GUPTA, WILL CATHCART AND MARK ZUCKERBERG,

Defendants.

CASE NO. 3:25-CV-07604-LDB

**DEFENDANTS' NOTICE OF MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6) OR IN THE ALTERNATIVE, MOTION TO DISMISS IN PART AND STRIKE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

[Filed concurrently with Declaration of Elena R. Baca, Request for Judicial Notice, and [Proposed] Order]

Date: December 3, 2026
Time: 9:30 a.m.
Judge: Hon. Laurel D. Beeler
Courtroom: B, 15th Floor

Paul C. Evans (*pro hac vice*)
paulevans@paulhastings.com
Jeffrey A. Sturgeon (*pro hac vice*)
jeffreysturgeon@paulhastings.com
Daniel S. Richards (*pro hac vice*)
danrichards@paulhastings.com
200 Park Avenue
New York, NY 10166
Telephone: 1(212) 318-6000

*Attorneys for Defendants*
META PLATFORMS, INC., PINAKI MUKERJI,
MARK TSIMELZON, AND NITIN GUPTA

TO THE PLAINTIFF AND HIS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on December 3, 2026, at 9:30 a.m., or as soon thereafter as this matter may be heard, before the Honorable Hon. Laurel D. Beeler in Courtroom B, 15th Floor, San Francisco Federal District Courthouse, 450 Golden Gate Ave, San Francisco, California 94102, Defendants Meta Platforms, Inc., Pinaki Mukerji, Mark Tsimelzon and Nitin Gupta, (collectively, “Defendants”) will and hereby do move pursuant to Rule 12(b)(6) and Rule 12(f) of the Federal Rules of Civil Procedure for dismissal of Plaintiff Attaullah Baig’s Third Amended Complaint with prejudice.

Specifically, this motion is made on the following grounds:

1. Baig’s first cause of action fails to state a claim upon which relief can be granted because he did not adequately plead that Defendants knew he engaged in any purported protected activity under the Sarbanes-Oxley Act, 18 U.S.C. § 1514A(a)(1) and because he did not adequately plead that he engaged in protected activity under the Sarbanes-Oxley Act, 18 U.S.C. § 1514A(a)(1).

2. Alternatively, should the Court decline to dismiss the TAC in its entirety, Defendants request that the Court dismiss the claim to the extent it rests on reports that do not constitute protected activity under Sarbanes-Oxley that are identified in paragraphs 22 (in part), 23, 24 (in part), 25, 26, 41 (in part), 42 (in part), 43, 45, 46, 47, and 48, and strike the allegations in paragraphs 1, 2, 22-26, and 41 (in part) that exceed the scope of leave this Court granted to plead his claims in its prior Order.

This Motion is based upon this Notice of Motion, the Memorandum of Points and Authorities in support, the Declaration of Elena R. Baca, the Request for Judicial Notice, the pleadings and record on file with this Court, and any evidence and argument as may be presented by counsel during the hearing on this Motion.

DATED: October 27, 2026

PAUL HASTINGS LLP

By: ______________________________

Elena R. Baca
Paul C. Evans (*pro hac vice*)
Jeffrey A. Sturgeon (*pro hac vice*)
Daniel S. Richards (*pro hac vice*)

Attorneys for Defendants
META PLATFORMS, INC., PINAKI MUKERJI, MARK TSIMELZON, AND NITIN GUPTA

# TABLE OF CONTENTS

I. INTRODUCTION ........ 1

II. PROCEDURAL BACKGROUND ........ 4

III. PLAINTIFF'S CURRENT FRAMING OF HIS SOX WHISTLEBLOWER CLAIM ........ 5

A. The Alleged Protected Activity. ........ 5

B. The Alleged Adverse Actions. ........ 8

IV. ARGUMENT ........ 9

A. Standard of Review. ........ 9

B. Baig Does Not Plead That Any Alleged Decisionmaker Knew of His Purported Protected Activity. ........ 10

C. Section 806 Does Not Cover Most of Baig's Alleged Protected Activities. ........ 14

1. Section 806 Does Not Protect Certain Alleged Disclosures Baig Made to Meta's Internal Investigators. ........ 15

2. Section 806 Does Not Protect Baig's January 2, 2024, Letter to Zuckerberg. ........ 16

3. Section 806 Does Not Protect Baig's December 4, 2024, Email to Zuckerberg. ........ 18

4. Section 806 Does Not Protect Baig's November 2024 Forms TCR as Pleaded. ........ 18

5. Baig Cannot Build Protected Activity Out of Statements He Never Reported. ........ 20

D. The TAC Strays Beyond the Order. ........ 21

V. CONCLUSION ........ 23

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 9, 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 9, 10

*Blantz v. Cal. Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*,
727 F.3d 917 (9th Cir. 2013) .......... 10

*Brinker v. Axos Bank*,
No. 22-CV-386-MMA (DDL), 2022 WL 17724408 (S.D. Cal. Dec. 15, 2022) .......... 14

*Choochagi v. Barracuda Networks, Inc.*,
60 Cal. App. 5th 444 (2020) .......... 12

*DeLeon v. Wells Fargo Bank, N.A.*,
No. 10-CV-01390-LHK, 2010 WL 4285006 (N.D. Cal. Oct. 22, 2010) .......... 21

*Foman v. Davis*,
371 U.S. 178 (1962) .......... 23

*Frezza v. Google Inc.*,
No. 5:12-CV-00237-RMW, 2013 WL 1736788 (N.D. Cal. Apr. 22, 2013) .......... 23

*Hartranft v. Encore Cap. Grp., Inc.*,
543 F. Supp. 3d 893 (S.D. Cal. 2021) .......... 13

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .......... 6

*Lenk v. Monolithic Power Sys., Inc.*,
No. CV-23-02083-PHX-SHD, 2026 WL 2474467 (D. Ariz. Aug. 24, 2026) .......... 11

*Loth v. City of New York*,
No. 20 Civ. 9345 (GBD), 2021 WL 4311569 (S.D.N.Y. Sept. 21, 2021) .......... 12

*Park v. Thompson*,
851 F.3d 910 (9th Cir. 2017) .......... 10

*Ruckus Wireless, Inc. v. Netgear, Inc.*,
No. C 08-2310 PJH, ECF No. 112 (N.D. Cal. May 28, 2013) .......... 21

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) .......... 10

*Stewart v. Doral Fin. Corp.*,
997 F. Supp. 2d 129 (D.P.R. 2014) .......... 6

*Van Asdale v. Int'l Game Tech.*,
577 F.3d 989 (9th Cir. 2009) .......... 11, 14

*Woods v. U.S. Bank N.A.*,
831 F.3d 1159 (9th Cir. 2016) .......... 10

**STATUTES**

18 U.S.C. § 1514A(a)(1) .......... 14, 22

## I. INTRODUCTION

Plaintiff Attaullah Baig is not a whistleblower under the Sarbanes-Oxley Act ("SOX"). He was an engineering manager. ECF No. 99 ("TAC") ¶¶ 63–64. He alleges he was WhatsApp's Head of Security. *Id.* ¶ 14. His job: to identify cybersecurity risks. *Id.* ¶ 31. He insisted that certain risks take priority and be handled his way. *Id.* ¶¶ 58–60, 66. Baig's peers and managers repeatedly raised concerns "around relationship building, collaboration, and partnership expectations with [cross-functional partners]." *Id.* ¶ 62; *see id.* ¶¶ 64–65. Baig recast his engineering preferences as legal mandates and allegedly raised concerns accordingly. His supervisor's review faulted him for "conflating what's a legal requirement vs. your opinion." *Id.* ¶ 65.

The crux of his "reports" is little more than a technical disagreement among engineers about cybersecurity priorities. That is why, despite repeated chances, he still fails to assert a legally cognizable SOX claim. Reciting statute titles does not trigger statutory protection. What matters is the substance of the claim or facts disclosed when "blowing the whistle." Amended Order Granting in Part and Denying in Part Motion to Dismiss Second Amended Complaint, ECF No. 94 ("Order"), at 10 n.25, 13–14. Past pleadings and amendments make plain that the core of Baig's concerns and reports was engineering disputes. ECF Nos. 3, 76, 81. Those reports, as this Court has twice held, are not protected. Baig's reports that, in his opinion, WhatsApp's security was deficient or Meta was not complying with its FTC consent order, are purported "reports of security failures and of noncompliance with the FTC Privacy Order." Order at 14; *see* ECF No. 70 at 7–8. They are not reports of securities fraud or of a violation of an SEC rule.[1]

For context, the TAC is Baig's fourth attempt to state a claim. Most recently, in September 2026, the Court found that Baig's Second Amended Complaint was a shotgun

---

[1] Baig describes the OSHA proceedings but omits their result. TAC ¶¶ 11–13. After investigating, OSHA concluded that Baig's "asserted protected activity likely does not qualify as objectively reasonable under SOX," and that any adverse action was likely due to his own "performance and/or behavior." Declaration of Elena R. Baca ("Baca Decl."), Ex. A. Defendants recognize that OSHA's findings are not entitled to deference in this *de novo* action, Order at 7 n.23, and cite them only to complete the record Baig selectively describes.

pleading. Order at 9. The Court also dismissed Baig's claims against Mark Zuckerberg and Will Cathcart. *Id.* at 26. The Court held that Baig's reports to his supervisors and colleagues about WhatsApp's security were not protected. *Id.* at 14–15. The only theory that survived began not with those reports, but with a letter Baig's lawyer sent Meta on April 18, 2023. That letter asserted that Meta had made "misleading omissions in its public filings about the current state of its cybersecurity." *Id.* at 2, 15, 28; TAC ¶ 41. It then fell to Baig to show whether he could actually plead that claim. The Court ordered him to identify "each protected report by date, recipient, and substance, including what the plaintiff said about Meta's SEC filings or its investors." Order at 27. The TAC, filed October 14, 2026, alleges that the reports pleaded in paragraphs 41 through 49 are those protected activities. TAC ¶¶ 7, 51. Measured against the standard this Court has already set, the TAC still fails. It should be dismissed or, in the alternative, dismissed in part to the extent that the claim rests on unprotected reports, and allegations that exceed the scope of leave granted by this Court should be struck as inconsistent with the Court's Order.

*First*, Baig does not plausibly allege that the individuals who participated in the alleged adverse actions knew that he engaged in protected activity. His reports allegedly went to Cathcart, Zuckerberg, Meta's General Counsel and Ethics and Compliance team, Meta's internal investigators, the SEC, and Meta's outside counsel. TAC ¶¶ 41–50. The alleged adverse actions came from others: Nitin Gupta, Pinaki Mukerji, and Mark Tsimelzon. *Id.* ¶¶ 58–72. Even assuming the recipients received what Baig says he sent, the TAC alleges no facts showing that any of them passed his reports, or their contents, to Gupta, Mukerji, or Tsimelzon. What the TAC alleges those three did know about is Baig's complaints about FTC compliance, security reports, and internal audits. The Court has already correctly held that conduct is not protected. Order at 14–15, 19–20.

*Second*, much of the reporting on which Baig relies is not protected activity. A protected report "must convey that what he is reporting is, in his reasonable belief, a fraud on shareholders or a violation of an SEC rule, for example, that the company's filings misdescribe the conduct."

Order at 13–14. The Court previously accepted the Second Amended Complaint's characterization of Baig's letters to Zuckerberg and his Forms TCR. *Id.* at 15, 24. Now required to plead what those reports actually said, Baig pleads cybersecurity deficiencies, FTC Privacy Order noncompliance, and workplace grievances. TAC ¶¶ 43, 45–48. Beyond a category Baig selected on the SEC's intake form and the bare label that Meta was "misleading investors," the TAC does not plead what Baig said about any statement in Meta's SEC filings. *Id.* ¶¶ 46–47, 67. Allowing Baig to proceed on those reports would expand discovery, summary judgment, and trial beyond the theory the Court allowed. Should the Court decline to dismiss the TAC in its entirety, Defendants request that the Court dismiss the claim to the extent it rests on these unprotected reports.

*Third*, the TAC strays beyond the Order. The Court denied leave to replead every theory but one and barred legal argument. Order at 27. Baig ignored both limits. He opens with Meta's assurances to WhatsApp users that the platform is the "most secure place to have a private conversation." TAC ¶¶ 1–2. Yet he concedes that this action "rests not on what Meta told its users." *Id.* ¶ 3. The Court already rejected his user-facing theory because he never reported it. Order at 23; *see id.* at 11. Baig also adds a new theory of protected activity: that "[e]ach of the subsequent requests for Meta to enter into tolling agreements . . . was a further protected activity under SOX." TAC ¶ 41. That is a legal conclusion, not a fact. A request to extend a filing deadline reports nothing about Meta's SEC filings. And a submission is "protected for what it reports, not for the fact of filing." Order at 3. Should the Court decline to dismiss the TAC in its entirety, these allegations should be struck.

Baig has had enough chances to plead a SOX whistleblower claim. The Court should dismiss the TAC with prejudice. Alternatively, it should dismiss the allegations of protected activity that were impermissibly included and strike those exceeding the scope of the Court's prior order, as they do not survive the Court's prior analysis.

## II. PROCEDURAL BACKGROUND

Baig filed this action on September 8, 2025. ECF No. 3. On March 19, 2026, the Court dismissed his original complaint with leave to amend. ECF No. 70. The Court held that Baig had not plausibly pleaded protected activity under 18 U.S.C. § 1514A(a)(1) ("Section 806"), and that he had not pleaded retaliation by Zuckerberg or Cathcart. *Id.*; Order at 1–2.

Baig filed the First Amended Complaint, corrected that pleading, and then withdrew both by stipulation after Defendants raised Rule 11 objections to Baig's false allegations that WhatsApp was not end-to-end encrypted given Baig alleged the complete opposite to OSHA. ECF Nos. 76, 78, 79, 80. After that, Baig filed the Second Amended Complaint ("SAC"): 205 pages, 307 paragraphs, and fourteen counts, all for a single Section 806 claim. ECF No. 81; Order at 2.

The Court granted in part and denied in part Defendants' motion to dismiss the SAC. Order at 2. It held that the SAC was a shotgun pleading. *Id.* at 10. It also held that "most of the plaintiff's reports are not protected." *Id.* at 14. Those include his reports of alleged cybersecurity deficiencies; Meta's alleged noncompliance with its 2020 stipulated order with the Federal Trade Commission (the "FTC Privacy Order"); allegedly falsified security assessments; allegedly unduly narrowed internal audits; Meta's exposure to regulatory action and fines; user data allegedly improperly accessible to tens of thousands of employees; allegedly massive scraping and account-takeover incidents that were under-reported to regulators; and allegedly false commitments by Meta to the Irish Data Protection Commission. *Id.* at 3, 14. None of those reports "asserts that Meta's SEC filings were false, that its investors were being misled, or that an SEC rule was being violated." *Id.* at 14. Reports of falsified assessments and blocked audits are protected only insofar as Baig reported them as rendering Meta's SEC filings misleading. *Id.* at 19.

The Court also rejected Baig's theories based on the SEC's books-and-records, auditor, internal-controls, and disclosure-controls rules; Form 8-K; Rule 21F-17; the mail- and wire-fraud statutes; the criminal obstruction statutes; and the theory that his OSHA and SEC filings were

protected regardless of content. *Id.* at 19–24. It denied leave to replead any of those theories. *Id.* at 27–28.

The Court allowed one theory to proceed: that, beginning with his counsel's April 18, 2023 letter, Baig reported that Meta's SEC filings misrepresented its FTC-mandated privacy program and its cybersecurity risks. *Id.* at 19, 28. It dismissed the claims against Zuckerberg and Cathcart without leave to amend on the allegations then before it. That dismissal was without prejudice to a Rule 15(a)(2) motion if discovery reveals that either participated in the termination decision. *Id.* at 26, 28.

The Court ordered Baig to replead that single theory in a complaint of no more than thirty pages. The new complaint was required to (1) assert one claim without dividing it into counts; (2) identify "each protected report by date, recipient, and substance, including what the plaintiff said about Meta's SEC filings or its investors"; (3) identify "each adverse action by date and by the person who took it"; and (4) omit legal argument and case citations. *Id.* at 27.

Following a stipulated extension, ECF No. 96, Baig filed the TAC on October 14, 2026. ECF No. 99.

## III. <u>PLAINTIFF'S CURRENT FRAMING OF HIS SOX WHISTLEBLOWER CLAIM</u>

### A. <u>The Alleged Protected Activity.</u>

Baig alleges that Meta employed him as WhatsApp's Head of Security from February 2021 until it notified him of his termination on February 10, 2025, effective April 18, 2025. TAC ¶¶ 14, 72. The TAC quotes statements from Meta's Forms 10-K for fiscal years 2020 through 2024, and from its 2022 proxy statement, some of which Baig alleges he reported as false. *Id.* ¶¶ 19–27. Baig alleges that he made the following disclosures, which he contends are protected activity:[2]

- On April 18, 2023, Baig's counsel sent a letter to Cathcart, the head of WhatsApp, asserting that Baig had suffered retaliation in violation of SOX and that Meta "has made

---

[2] While the TAC includes other allegations as "background," it contends that only the disclosures appearing at paragraphs 41 through 49 constitute protected activity. TAC ¶ 8. Every report Baig made before April 18, 2023 is pleaded as background only. *Id.*

misleading omissions in its public filings about the current state of its cybersecurity." *Id.* ¶ 41. The letter was labeled a "confidential" communication sent "for settlement purposes only," was copied to a Meta in-house attorney, and offered to "enter into settlement discussions to try to reach a private, amicable resolution." Baca Decl., Ex. B at 1, 30 (emphasis omitted).[3] The TAC also alleges that each later request for a tolling agreement "was a further protected activity under SOX." TAC ¶ 41.

- On May 10 and June 8, 2023, Meta employment investigator Brendan Brownfield interviewed Baig in the investigation Meta opened in response to counsel's letter. *Id.* ¶ 42. Baig allegedly told Brownfield that Meta's Form 10-K representations of a functioning privacy program were also materially false. *Id.* On December 15, 2023, investigator Kanita Viranond interviewed Baig in a separate investigation of anonymous negative feedback about him. *Id.* ¶¶ 42, 58. Baig allegedly told her that the X-Sec team's security reports were falsified, that internal pre-read documents misrepresented the facts, and that he had been blocked from raising security risks that could seriously harm Meta and its investors. *Id.* ¶ 42.

- On January 2, 2024, Baig wrote to Zuckerberg, General Counsel Jennifer Newstead, and Meta's Ethics and Compliance team. *Id.* ¶ 43. The letter allegedly stated that "[t]he X-Sec team is falsifying cybersecurity reports" and that, in his opinion, "[i]f we fail to remediate these gaps, we are not meeting our legal obligations from the 2020 FTC Order." *Id.* It allegedly warned that a large-scale data breach "will expose Meta, our users, and our investors to serious harm." *Id.* It also warned that falsifying cybersecurity reports "can result in criminal penalties," citing the criminal conviction of Uber's former chief security officer and the SEC's

---

[3] The TAC quotes the April 18, 2023 letter at length and pleads it as the first report on which Baig's claim rests. TAC ¶¶ 4, 41, 51, 53. The Court may therefore consider the full letter under the incorporation-by-reference doctrine. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (a document is incorporated by reference into a complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim," which "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims"); *Stewart v. Doral Fin. Corp.*, 997 F. Supp. 2d 129, 131–32, 131 n.1 (D.P.R. 2014) (in a SOX retaliation case, finding that a letter sent by the plaintiff and referenced in the plaintiff's complaint as alleged protected activity was incorporated by reference into the complaint).

enforcement action against SolarWinds. *Id.* Brownfield allegedly interviewed Baig about the letter on January 29, February 5, and February 7, 2024. *Id.* ¶ 44.

- Brownfield interviewed Baig again on July 11, August 30, and October 25, 2024, in an investigation of Baig's reports of retaliation and blocked projects. *Id.* ¶ 45. In the July 11 interview, Baig allegedly described projects that had been blocked and provided documents about those projects and about negative feedback he had received. *Id.* The TAC alleges that, across these interviews, Baig told Brownfield "that Meta was misleading investors." *Id.* ¶ 46. It elsewhere alleges that, on October 25, Baig described under-reporting of scraping incidents to the FTC as "among the ways Meta was misleading investors." *Id.* ¶ 67.

- On November 27 and 30, 2024, Baig allegedly filed two Forms TCR with the SEC. *Id.* ¶ 47. He allegedly categorized them as complaints about a "[m]aterial misstatement or omission in a company's public filings or financial statements, or a failure to file," and specifically "[f]alse/misleading financial statements." *Id.* The November 27 submission allegedly reported four things: "serious Cybersecurity gaps" that were "in direct violation of" the FTC Privacy Order; that "[t]o the best of my knowledge they have not disclosed these Cybersecurity gaps either to the SEC or the FTC"; that data-warehouse tables "could be accessed by 60000+ employees"; and that Meta was "significantly underreporting scraping covered incidents to the FTC." *Id.* The November 30 submission allegedly added supporting documents. *Id.* The TAC does not allege which of Meta's disclosures were purportedly misleading. *Id.* Baig does not attach either submission, and he does not allege that he provided either one to anyone at Meta. *Id.*

- On December 4, 2024, Baig allegedly emailed Zuckerberg as an update to his January letter. *Id.* ¶ 48. Baig allegedly wrote that Meta's cybersecurity posture "has not improved by much except on paper," that the retaliation against him had increased, and that he raised concerns with colleagues when they were "not being truthful to the auditors and the regulators." *Id.* He added: "I have now filed a complaint with the SEC under the Whistleblower Retaliation Protection Program." *Id.* The TAC does not allege that the email described what the SEC submissions said. *Id.*

- On January 17, 2025, Baig filed a complaint with OSHA. *Id.* ¶¶ 11, 49. The same day, his counsel notified Meta's outside counsel "by email that Mr. Baig had filed a SOX complaint with OSHA that day." *Id.* ¶ 50.

**B. <u>The Alleged Adverse Actions.</u>**

Baig alleges that he suffered the following adverse actions as a result of the alleged protected activity described above:

- Mukerji was Baig's direct supervisor from June 2021 through May 2024. *Id.* ¶ 17. Mukerji allegedly rated Baig "Exceeded Expectations" in February 2022 and "Consistently Met Expectations" in February 2023. *Id.* ¶ 57. In August 2023, while Meta was investigating counsel's April 2023 letter, Mukerji allegedly rated Baig "Significantly Above Expectations," a rating the TAC calls Baig's "peak." *Id.* ¶¶ 62, 74. On March 4, 2024, Mukerji allegedly rated Baig "Consistently Met Expectations" for the 2023 cycle, attributing the rating to "feedback around relationship building, collaboration, and partnership expectations with XFNs." Baig was not promoted. *Id.* ¶ 62.

- In 2023, members of Meta's central security team (X-Sec), including Gregory Heimbuecher, Steve Clarke, Chad Greene, and Bhavesh Mehta, allegedly gave negative feedback about Baig's collaboration. *Id.* ¶¶ 58–59. None of them is a defendant. Baig alleges only "[o]n information and belief" that Heimbuecher submitted anonymous feedback. *Id.* ¶ 58. On December 26, 2023, Mukerji allegedly emailed Baig that his collaboration problems had caused the X-Sec team to drop data exfiltration from its quarterly plan. *Id.* ¶ 60.

- Gupta, WhatsApp's Vice President and Head of Engineering, allegedly directed the 23 engineers Meta allocated in early 2024 to other teams. *Id.* ¶¶ 16, 61. Baig alleges "[o]n information and belief" that Gupta reassigned him to report to Tsimelzon in May 2024. *Id.* ¶ 63.

- Tsimelzon became Baig's supervisor in approximately May 2024. *Id.* ¶ 18. On May 29, 2024, Tsimelzon allegedly emailed Baig about "unsolicited feedback from others around collaboration challenges." *Id.* ¶ 64. In August 2024, Tsimelzon allegedly gave Baig a "Below Expectations" mid-year rating based on collaboration deficiencies, including "conflating what's a

legal requirement vs. your opinion." *Id.* ¶ 65. In October 2024, Tsimelzon allegedly declined to give Baig architectural authority over WhatsApp's account-security work, citing "collaboration issues." *Id.* ¶ 66. In November 2024, Tsimelzon allegedly reprimanded Baig for a written communication about WhatsApp's FTC reporting obligations, and directed the deletion of a team member's internal post about scraping. *Id.* ¶¶ 67–68. In December 2024, Tsimelzon allegedly reassigned the Post-Compromise Account Recovery project to another team. *Id.* ¶ 69.

- In late 2024, a lawyer in Meta's legal department, whom the TAC does not name, allegedly denied two of Baig's patent proposals. *Id.* ¶ 70.
- In January 2025, Gupta allegedly excluded Baig's team from an allocation of new engineering staff. *Id.* ¶ 71.
- On February 10, 2025, Meta notified Baig by form email from its "Leadership Team" that it was "accelerating performance terminations during the year-end cycle" and that, "due to your performance, your employment is being terminated." *Id.* ¶ 72. A letter signed by Janelle Gale, Vice President, People, set the termination for April 18, 2025. *Id.* Baig alleges "[o]n information and belief" that Tsimelzon recommended, and Gupta approved, the termination. *Id.*

Baig does not allege that any recipient of his reports took any adverse action against him. Those recipients were Cathcart, Zuckerberg, Newstead, the Ethics and Compliance team, Brownfield, Viranond, and Meta's outside counsel. Nor does he allege that any of them shared his reports with Gupta, Mukerji, or Tsimelzon.

## IV. ARGUMENT

### A. Standard of Review.

To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line

between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks and citation omitted). A complaint may fail for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016); Order at 8.

The Court accepts factual allegations as true, but not legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; Order at 8. A plausible claim "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* Nor must the Court accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

A plaintiff may plead on information and belief facts that are peculiarly within the defendant's knowledge. But the allegation must be accompanied by facts that make the belief plausible. Order at 25 (citing *Park v. Thompson*, 851 F.3d 910, 928–29 (9th Cir. 2017), and *Blantz v. Cal. Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*, 727 F.3d 917, 926–27 (9th Cir. 2013)).

Rule 12(b)(6) also permits partial dismissal. Where a single claim rests on several theories of protected activity, the Court may dismiss the claim to the extent it rests on theories that fail, while allowing it to proceed on any theory that survives. Order at 15 & n.39, 28. Indeed, that is what this Court did with the SAC: it dismissed the claim to the extent it rested on Baig's reports of cybersecurity deficiencies and FTC Privacy Order noncompliance, and allowed it to proceed only on the single theory it found plausible. *Id.*

### B. <u>Baig Does Not Plead That Any Alleged Decisionmaker Knew of His Purported Protected Activity.</u>

The TAC does not plausibly allege that those who allegedly participated in the adverse actions against Baig knew or suspected that he had engaged in protected activity. A prima facie case under Section 806 requires that "(1) the employee engaged in protected activity, (2) *the*

*employer knew or suspected, actually or constructively, that he did*, (3) he suffered an unfavorable personnel action, and (4) the circumstances raise an inference that the protected activity was a contributing factor in the unfavorable action." Order at 9 (citing *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 996 (9th Cir. 2009)) (emphasis added). Individual liability "requires participation in the adverse action." *Id.* at 25. There is no causation in the absence of knowledge of protected activity. *See, e.g.*, *Lenk v. Monolithic Power Sys., Inc.*, No. CV-23-02083-PHX-SHD, 2026 WL 2474467, at *5 (D. Ariz. Aug. 24, 2026) (granting motion to dismiss with prejudice because, "absent actual knowledge by [defendant] that [plaintiff] actually filed the SOX complaint, a claim for retaliation fails").

Measured report by report, the TAC does not connect any recipient of Baig's alleged disclosures to any of the three people who allegedly participated in adverse actions: Gupta, Mukerji, and Tsimelzon. *Supra* § III.B. The TAC's "knowledge" paragraphs announce that each of them "knew of Mr. Baig's reports." TAC ¶¶ 54–55. But the facts pleaded beneath those headings show, at most, that they knew of conduct this Court has already held is not protected. Knowledge of unprotected activity cannot support a Section 806 claim.

Baig's first alleged protected activity is the April 18, 2023, letter his counsel sent to Cathcart. TAC ¶ 41. The letter is labeled a "**confidential**" communication sent "**for settlement purposes only**." Baca Decl., Ex. B at 1 (emphasis in original); *see supra* n.3. It copied a Meta in-house attorney and told Meta that Baig was "willing to enter into settlement discussions to try to reach a private, amicable resolution." Baca Decl., Ex. B at 30. A confidential settlement communication addressed to the head of WhatsApp and in-house counsel gives no basis to infer that its contents reached Gupta, Mukerji, or Tsimelzon. The TAC does not allege that Cathcart, or anyone else for that matter, shared the letter or its contents with anyone, let alone any alleged decisionmaker here. TAC ¶ 41.

Next, Baig alleges that he spoke with Meta's employment investigators, Brendan Brownfield and Kanita Viranond, and made various disclosures during those interviews. *Id.* ¶¶

42, 44–46, 53, 55. Baig never alleges that either investigator told any decisionmaker what he said. *See id.*

Likewise, even assuming Zuckerberg, Newstead, and the Ethics and Compliance team received the January and December 2024 letters, Baig does not allege that any of them shared either letter or its contents with any decisionmaker. *Id.* ¶¶ 43, 48, 53. Baig never alleges that he shared his Forms TCR with anyone at Meta, much less the alleged decisionmakers here. *Id.* ¶ 47.

Finally, even assuming Meta's outside counsel was notified of the OSHA complaint, Baig does not allege that any decisionmaker knew about it. *Id.* ¶¶ 49–50.

Those omissions defeat Baig's reliance on timing. The exclusion of his team from the January 2025 staffing allocation and his February 2025 termination (*id.* ¶¶ 71–73) cannot have been "because of" filings that the actors are not alleged to have known about.

The TAC offers three instances related to Gupta, Mukerji and Tsimelzon, but all miss the mark.

*First*, Baig alleges that Tsimelzon's May 29, 2024, performance warning "prompted the investigation" in which the July 11, 2024, interview took place, and that Tsimelzon "remained Mr. Baig's supervisor during the August 30 and October 25, 2024 interviews." *Id.* ¶ 54. Prompting an investigation, or supervising an employee interviewed as part of it, is different from knowing what that employee said in his interview. *See Choochagi v. Barracuda Networks, Inc.*, 60 Cal. App. 5th 444, 461 (2020) (finding no causation because supervisors who triggered adverse actions were unaware of plaintiff's complaints to HR).

*Second*, Baig resorts to the fallacy that Gupta and Mukerji knew the contents of his purported disclosures because they were the subjects of the investigations. TAC ¶ 55. That does not establish their knowledge, either. *See Choochagi*, 60 Cal. App. 5th at 460; *see also Loth v. City of New York*, No. 20 Civ. 9345 (GBD), 2021 WL 4311569, at *10–11 (S.D.N.Y. Sept. 21, 2021) (dismissing claims in part because commencement of investigation does not itself establish subjects' knowledge of that investigation).

As to Mukerji, the only other fact pleaded is a different letter from Baig's counsel, dated March 7, 2023. TAC ¶ 55. The TAC itself disclaims that letter as protected activity. *Id.* ¶¶ 8, 41–49. Indeed, both that letter and Mukerji's April 14, 2023, instruction not to discuss the FTC Privacy Order (*id.* ¶¶ 55, 77) predate Baig's first alleged protected activity (the April 18 letter). The March 7 letter and Mukerji's instruction therefore cannot reflect knowledge of any protected activity. *See* Order at 15 n.39. Besides, four months after the March 7 letter, while the resulting investigation was pending, Mukerji rated Baig "Significantly Above Expectations," which the TAC calls Baig's "peak." TAC ¶¶ 62, 74. There can be no plausible Section 806 violation for conduct that predates the report that supposedly triggered the retaliation, or when the alleged retaliator gave the reporter a favorable performance review after the report.

As to Gupta, the TAC alleges that he was the subject of Baig's disclosures about X-Sec security reports and pre-read documents. *Id.* ¶ 55. Those are reports of falsified security assessments, which are not protected on their own. Order at 14, 19–20.

*Third*, Baig alleges that, two days after his second letter to Zuckerberg, Tsimelzon "insisted on attending" Baig's meeting with Meta's security auditor. TAC ¶ 54. Such an irrelevant allegation does not give rise to a reasonable inference that Tsimelzon knew the contents of Baig's second letter to Zuckerberg. *See Hartranft v. Encore Cap. Grp., Inc.*, 543 F. Supp. 3d 893, 927 (S.D. Cal. 2021) ("[I]n a motion to dismiss, the Court must construe all reasonable inferences in favor of the nonmoving party, but has no obligation to draw unreasonable inferences when determining whether the pleading under attack states a plausible claim." (citations omitted)).

And every other fact pleaded against Tsimelzon concerns conduct the Court has held is not protected: Baig's cooperation with Meta's internal auditor, his November 4, 2024, communication about WhatsApp's obligation to report scraping incidents to the FTC, and his meeting with the security auditor. TAC ¶ 54; Order at 14, 19–20.

Finally, Baig alleges that his December 2024 email to Zuckerberg (not any decisionmaker) mentioned the *fact* that Baig had complained to the SEC, not the contents of the submissions. TAC ¶¶ 48, 56. That is fatal. Baig does not allege that he ever sent his SEC

complaints to anyone at Meta. He does not make such an allegation because he never did so. As Baig concedes, his Forms TCR are protected only for the content they report, not for the fact of their filing. *Id.* ¶ 47 n.6; *accord* Order at 3, 24, 28 (dismissing without leave to amend the SAC's counts that relied on the mere filing of Baig's OSHA and SEC complaints). The Court previously found that the SAC pleaded Meta's knowledge that the filings had been made. Order at 24. But even assuming Zuckerberg received the December 4 email, the TAC does not allege that Gupta, Mukerji, or Tsimelzon knew of either filing, much less what either one said.

### C. <u>Section 806 Does Not Cover Most of Baig's Alleged Protected Activities.</u>

Should the Court decline to dismiss the TAC in its entirety, Defendants ask the Court to dismiss, at minimum, Baig's claim to the extent it rests on the unprotected reports addressed below. Specifically, this Court should dismiss paragraphs 22 (in part), 23, 24 (in part), 25, 26, 41 (in part), 42 (in part), 43, 45, 46, 47, and 48. Dismissing Baig's claim to the extent it relies on those allegations (or striking them, as explained below) now is warranted. Whether Baig engaged in protected activity at all is a threshold legal issue Defendants contest, and the disclosures pleaded in the TAC will set the scope of discovery, summary judgment, and trial. In its Order, the Court explicitly told Baig how he needed to plead reports that he believes constitute protected activity. Order at 27. To the extent he failed to comply with the Court's instruction, the time to deal with that issue is now. He should not be permitted to contravene the Court's Order and then benefit from it by expanding the size and scope of this case.

To plead the protected-activity element of a Section 806 claim, an employee's complaints must concern mail fraud, wire fraud, bank fraud, securities fraud, a rule or regulation of the Securities and Exchange Commission, or a federal law relating to fraud against shareholders. *See* 18 U.S.C. § 1514A(a)(1). "[T]o trigger the protections of the Act, an employee must also have (1) a subjective belief that the conduct being reported violated a listed law, and (2) this belief must be objectively reasonable." *Van Asdale*, 577 F.3d at 1000. "The objective reasonableness component is evaluated based on the knowledge available to a reasonable person in the same factual circumstances with the same training and experience as the aggrieved employee." *Brinker*

*v. Axos Bank*, No. 22-CV-386-MMA (DDL), 2022 WL 17724408, at *8 (S.D. Cal. Dec. 15, 2022) (internal quotation marks, ellipses, and citation omitted); *see* Order at 9.

Applying these principles to the SAC, this Court held that Section 806 "protects reports about the listed categories of conduct, not reports about every legal violation that might eventually bear on a company's public disclosures." Order at 13. To qualify, an employee's "report must convey that what he is reporting is, in his reasonable belief, a fraud on shareholders or a violation of an SEC rule, for example, that the company's filings misdescribe the conduct." *Id.* at 13–14. A report does not qualify "merely because the violation, if it became public, might matter to investors." *Id.* at 13.

The TAC does not cure the defects in Baig's prior complaints. Several of the reports on which Baig now relies violate the Court's Order because they do not fall under his sole surviving theory of protected activity. TAC ¶¶ 42 (in part), 43, 45–48. And the TAC pleads, as false, statements in Meta's filings that Baig never reported to anyone. *Id.* ¶¶ 22–26.

1. <u>Section 806 Does Not Protect Certain Alleged Disclosures Baig Made to Meta's Internal Investigators.</u>

On December 15, 2023, Baig allegedly told Viranond that "the security reports the X-Sec team generated were falsified, that the pre-read documents prepared for Defendant Gupta and for Meta's chief information security officer materially misrepresented the facts, and that he had been blocked from raising security risks that could seriously harm Meta and its investors." TAC ¶ 42. He also alleges that Brownfield interviewed him on July 11, August 30, and October 25, 2024, "in a continuing investigation of Mr. Baig's reports of escalating retaliation against him and his team and of the blocking of his team's projects." *Id.* ¶ 45. In the July 11 interview, Baig allegedly "described the projects that had been blocked and Defendant Gupta's statement that he would not 'let a security guy speak,'" and "provided documents on the blocked projects and the negative feedback." *Id.* He further alleges that, in unspecified interviews, he reported that "Meta's internal audit function was broken." He also allegedly provided documentation of the JUNGLE red-team results, of Meta's plan to present them as a security win, and of the suppression of the WAFFLE risk assessment. *Id.* ¶ 46.

Those are the same categories of disclosure this Court held are not protected, because none "assert[] that Meta's SEC filings were false, that its investors were being misled, or that an SEC rule was being violated." Order at 14. And Baig's alleged suspicion that investors may care about his cybersecurity disclosures is insufficient. A report is not protected "merely because the [reported] violation, if it became public, might matter to investors." *Id.* at 13.[4]

The TAC describes one more interview. It alleges that, on October 25, 2024, Baig told the investigator that WhatsApp's under-reporting of scraping incidents to the FTC was "among the ways Meta was misleading investors." TAC ¶ 67. That is the "FTC-to-SEC pipeline" theory this Court already rejected: the premise that, because Meta's SEC filings described its FTC-mandated program, every report of purported FTC noncompliance is also a report that the filings were false. Order at 14. That theory "would make every internal compliance complaint at a public company protected activity under SOX, which is not the law." *Id.*

Nor does Baig's assertion that he told the investigator "that Meta was misleading investors" change the analysis. TAC ¶ 46. That phrase is a label, not a report. Baig does not allege what Meta said that was misleading, which filing contained it, or what he told the investigator about it. Apart from October 25, he does not even allege in which interview he said it. Yet the Court ordered him to plead precisely that: "each protected report by date, recipient, and substance, including what the plaintiff said about Meta's SEC filings or its investors." Order at 27. He has not done so.

2. <u>Section 806 Does Not Protect Baig's January 2, 2024, Letter to Zuckerberg.</u>

Baig's January 2, 2024, letter to Zuckerberg fares no better. TAC ¶ 43. The gravamen of the letter is that Baig's cybersecurity disclosures were falling on deaf ears. Baca Decl., Ex. C.[5] He complains about internal quarterly security assessments and meeting pre-reads that allegedly

---

[4] Baig pleads the August 2024 written report to Meta's investigator described in paragraph 45 only "for what it shows Defendant Tsimelzon knew and did," not as protected activity. TAC ¶ 8.

[5] The TAC likewise quotes the January 2, 2024 letter extensively and pleads it as protected activity on which his claim rests. TAC ¶¶ 43, 51, 53. It is incorporated by reference for the reasons stated in note 3, *supra*.

omitted his preferred threat scenarios. *Id.* He references alleged potential deficiencies under the FTC Privacy Order. *Id.* He discloses alleged unfettered employee access to sensitive user data, account takeovers, and Meta's allegedly deficient cybersecurity protections. *Id.* Those are all the same allegations this Court has already ruled do not fall under Baig's lone surviving theory of protected activity. Order at 14.

The TAC also abandons the allegation on which the Court previously relied. The SAC alleged that this letter reported "violations of SEC rules ('including rules relating to falsification of records and false statements to auditors')." Order at 5; *see id.* at 15. The TAC drops that allegation. Now required to plead the letter's substance, Baig pleads nothing about any SEC rule or any statement in Meta's SEC filings. TAC ¶ 43. And the rules the SAC described—falsification of records and false statements to auditors—are the books-and-records and auditor rules this Court held do not reach Baig's reports. Order at 19–20.

At most, Baig told Zuckerberg that a large-scale data breach "will expose Meta, our users, and our investors to serious harm," that "Meta could lose billions of dollars in market cap," and that there were "cybersecurity gaps that can harm Meta, its users, and its investors." Baca Decl., Ex. C at 2, 9; *accord* TAC ¶ 43. Those are concerns about the consequences of Meta's alleged cybersecurity issues for its investors. They are not assertions that Meta misled investors about anything. *See* Order at 14. The mere invocation of the word "investors" does not compel a different conclusion. *See id.* at 13 (a report is not protected "merely because the violation, if it became public, might matter to investors").

Nor does the letter's reference to *SolarWinds*. The Court noted that *SolarWinds* sustained fraud claims premised on a company's false statements about its cybersecurity practices. Order at 16. But the TAC now pleads why Baig cited it. Baig invoked *SolarWinds*, along with the criminal conviction of Uber's former chief security officer, to warn that falsifying cybersecurity reports "can result in criminal penalties." TAC ¶ 43. That warning about consequences for falsified internal security reports concerns conduct this Court held is not protected. Order at 14, 19–20. It says nothing about Meta's SEC filings.

3. Section 806 Does Not Protect Baig's December 4, 2024, Email to Zuckerberg.

Baig's December 4, 2024, "letter" is not a letter at all. TAC ¶¶ 48, 53. It was an email to Zuckerberg. Baca Decl., Ex. D.[6] That email primarily details Baig's perception of his own work accomplishments rather than any purported protected activity. *Id.* Then, in one bullet point under the heading "How I live the values of Meta, Metamates, Me," Baig wrote: "I treat all Metamates with respect and only raise concerns [w]hen they are putting their interests above the interests of the company, and [w]hen they are not being truthful to the auditors and the regulators." *Id.*; *see* TAC ¶ 48. That is an unparticularized, hypothetical statement about Baig's values.

The SAC presented that sentence as a report that Meta's leadership was "not being truthful to the auditors and the regulators," and the Court relied on that characterization. Order at 6, 15. The full email shows it was no such report. Baca Decl., Ex. D.

Nor is the email's statement that Meta's cybersecurity posture "has not improved by much except on paper" a report about Meta's SEC filings. TAC ¶ 48. It is a complaint about the pace of remediation.

Nor is the email protected because it informed Zuckerberg that Baig had "filed a complaint with the SEC under the Whistleblower Retaliation Protection Program." Baca Decl., Ex. D. A submission is "protected for what it reports, not for the fact of filing." Order at 3. Telling the CEO that a filing exists reports nothing. None of these statements mentions any specific misrepresentation in Meta's SEC filings or any violation of an SEC rule.

4. Section 806 Does Not Protect Baig's November 2024 Forms TCR as Pleaded.

Baig's November 27 and November 30, 2024, Forms TCR fare no better. TAC ¶ 47. The Court ordered Baig to plead "each protected report by date, recipient, and substance, including what the plaintiff said about Meta's SEC filings or its investors." Order at 27. For his Forms TCR, he has not done so.

---

[6] The TAC quotes the December 4, 2024, email and pleads it as protected activity. TAC ¶¶ 48, 51, 53. It is incorporated by reference for the reasons stated in note 3, *supra*.

Baig is no stranger to voluminous filings. In this Court alone, he has filed a 203-page, 423-paragraph SAC, Order at 2, and attached a 94-page OSHA complaint to his original complaint, ECF No. 3 at 22–115. Yet he has never attached the Forms TCR he now offers as protected activity. Instead, the TAC pleads fragments. Had the submissions said what Baig previously claimed, he would have attached or quoted them. He did neither.

The fragments he chose to plead are telling. The November 27 submission allegedly reported that Meta and WhatsApp had "serious Cybersecurity gaps" that were "in direct violation of" the FTC Privacy Order, that data-warehouse tables "could be accessed by 60000+ employees," and that Meta was "significantly underreporting scraping covered incidents to the FTC." TAC ¶ 47. The November 30 submission allegedly "added supporting documents." *Id.* Every one of those statements is a report of alleged cybersecurity deficiencies and FTC Privacy Order noncompliance—the precise category of report this Court has held is not protected. Order at 14. None "asserts that Meta's SEC filings were false, that its investors were being misled, or that an SEC rule was being violated." *Id.*

The TAC also omits the language on which the Court relied in finding the submissions protected. The SAC alleged that the Forms TCR reported Meta's "failure to inform investors about material cybersecurity risks," "misleading statements in Meta's public SEC filings regarding its FTC Privacy Order compliance program," and "ongoing violations of federal securities laws and rules." Order at 5–6; *see id.* at 24. None of that language appears in the TAC. *Compare id.*, *with* TAC ¶ 47.

What remains is a category Baig selected on the SEC's intake form: "[m]aterial misstatement or omission in a company's public filings or financial statements," and specifically "[f]alse/misleading financial statements." TAC ¶ 47. A category selected on an intake form is a label, not a report. And Baig never alleges that Meta's financial statements were false. This Court has already held that the records and audits Baig reported "have nothing to do with accounting." Order at 20.

The lone statement that Meta had "not disclosed these Cybersecurity gaps either to the SEC or the FTC" is, at most, a complaint that Meta failed to disclose alleged issues that supposedly amounted to FTC Privacy Order violations to regulators. TAC ¶ 47. This Court has already rejected that theory of protected activity. Order at 14 (holding that Baig's allegations of underreporting of FTC Privacy Order violations to FTC and other regulators were not protected activities).

Finally, even if the submissions said more, no one at Meta is alleged to have seen them, and no individual Defendant is alleged to have known they existed. *Supra* § IV.B. As such, the complaints Baig sent to the SEC cannot be protected activity.

5. Baig Cannot Build Protected Activity Out of Statements He Never Reported.

The TAC devotes an entire section to "[t]he statements in Meta's SEC filings that Mr. Baig reported as false." TAC ¶¶ 19–27. The heading promises more than the reports deliver. Many of those statements appear nowhere in any report Baig alleges he made. Baig does not allege that he ever told anyone:

- that the 2022 proxy statement's description of the Board's privacy committee was false (*id.* ¶ 22);
- that management's Item 9A conclusions about disclosure controls, or the CEO's Rule 13(a)-14(a) certifications, were false (*id.* ¶ 23);
- that the shift from experiencing cyberattacks "from time to time" to "regularly" experiencing them was misleading (*id.* ¶ 24);
- that the Item 1C statements under Item 106 of Regulation S-K were false, including the statement that Meta's internal audit function "provides independent assessment and assurance" of its cybersecurity and privacy programs (*id.* ¶ 25);[7] or

---

[7] Baig's alleged statement to an investigator that "Meta's internal audit function was broken" (TAC ¶ 46) does not change the analysis. He does not allege that he tied that complaint to Meta's Item 1C statement or to any other statement in Meta's filings. *See* Order at 19.

- that the fiscal year 2023 disclosure of the FTC's administrative proceeding was a half-truth (*id.* ¶ 26).[8]

This Court held that Baig cannot build protected activity out of matters he never reported. It rejected the SAC's new theories about other public statements because "the SAC does not allege that the plaintiff ever reported" them. Order at 11. And it explained that "[p]rotected activity requires a report; a theory constructed in litigation is not one." *Id.* at 23. Statements Baig never mentioned to anyone cannot have been the subject of any report. They cannot have informed any decisionmaker's knowledge. And they cannot supply the protected activity Baig must plead. Paragraphs 22 (in part), 23, 24 (in part), 25, and 26 should be dismissed.

**D. <u>The TAC Strays Beyond the Order.</u>**

The Court granted Baig leave for one purpose: to replead a single theory, in a prescribed form. Order at 27. The TAC was to "rest only on the theory that survives this order" and to "omit legal argument and case citations." *Id.* The Court denied leave to replead every other theory. *Id.* *See DeLeon v. Wells Fargo Bank, N.A.*, No. 10-CV-01390-LHK, 2010 WL 4285006, at *3 (N.D. Cal. Oct. 22, 2010) ("[W]here leave to amend is given to cure deficiencies in certain specified claims, courts have agreed that new claims alleged for the first time in the amended pleading should be dismissed or stricken."); *Ruckus Wireless, Inc. v. Netgear, Inc.*, No. C 08-2310 PJH, ECF No. 112, at 2 (N.D. Cal. May 28, 2013) (striking claims because the amended complaint "exceed[ed] the scope of the court's order granting leave to amend," where Rule 15(a)(2) required consent or leave). Baig exceeded that leave in two ways.

*First*, Baig opens with a theory the Court has already rejected. The TAC's first two paragraphs frame this case around Meta's promises to WhatsApp users. They allege that "[t]hree billion people trust WhatsApp with their private conversations" because of Meta's assurance that WhatsApp is the "most secure place to have a private conversation." TAC ¶ 1. They add that Baig was "the executive responsible for protecting that trust." *Id.* ¶ 2. The Court rejected Baig's theory

---

[8] The half-truth theory in paragraph 26 fails for a second reason: the Court already dismissed it as duplicative. Order at 19, 28.

based on Meta's representations to users because he never reported it. Order at 23; *see id.* at 11. And Baig concedes the point: "This action rests not on what Meta told its users, but on what Meta told its investors." TAC ¶ 3. By Baig's own account, paragraphs 1 and 2 have nothing to do with the claim the Court allowed. They serve only to reintroduce a theory the Court rejected. They should be stricken.

*Second*, Baig adds a new theory of protected activity. Paragraph 41 alleges that "[e]ach of the subsequent requests for Meta to enter into tolling agreements to preserve Mr. Baig's SOX claims was a further protected activity under SOX." *Id.* ¶ 41. That sentence is a legal conclusion, which the Order barred. Order at 27. It also asserts a theory the Order did not allow. *Id.* And it fails on its own terms. Section 1514A(a)(1) protects an employee who provides information "regarding any conduct which the employee reasonably believes constitutes a violation" of the listed laws. 18 U.S.C. § 1514A(a)(1). A request to extend a filing deadline provides no information about any conduct. Even Baig's OSHA and SEC submissions are "protected for what [they] report[], not for the fact of filing." Order at 3; *see id.* at 24. A request to toll the deadline for filing reports less still.

The tolling agreements themselves confirm the point. They recited that Baig would otherwise have had to file with OSHA "within 180 days of a verbal warning given on November 14, 2022," as well as other alleged adverse actions. TAC ¶ 13. Every report Baig made before that warning is one this Court has held is not protected. Order at 14. And the warning predates by five months the first report on which the surviving theory rests. *Id.* at 28. The tolling requests preserved a deadline. They reported nothing. The tolling sentence in paragraph 41 should be stricken.

*Third*, as explained above, the TAC devotes an entire section to "[t]he statements in Meta's SEC filings that Mr. Baig reported as false." TAC ¶¶ 19–27. But many of those statements appear nowhere in any report Baig alleges he made. Baig does not allege that he ever told anyone at Meta that the 2022 proxy statement's description of the Board's privacy committee was false (*id.* ¶ 22); that management's Item 9A conclusions about disclosure controls or the CEO's Rule

13a-14(a) certifications were false (*id.* ¶ 23); that the shift from experiencing cyberattacks "from time to time" to "regularly" experiencing them was misleading (*id.* ¶ 24); that the Item 1C statements under Item 106 of Regulation S-K—including the statement that Meta's internal audit function "provides independent assessment and assurance" of its cybersecurity and privacy programs—were false (*id.* ¶ 25); or that the fiscal year 2023 disclosure of the FTC's administrative proceeding was a half-truth (*id.* ¶ 26). As such, those allegations should be stricken.

## V. CONCLUSION

Baig has now had four opportunities to plead a viable claim under Section 806. The Court has found him unable to do so each time, and the TAC fares no better than its predecessors. Baig does not plausibly allege that any decisionmaker knew of a report that could qualify as protected activity. Many of the reports he pleads do not qualify at all. And the TAC strays beyond the leave the Court granted. Because Baig has repeatedly failed to cure these deficiencies, further amendment would be futile. Order at 27 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Defendants respectfully request that the Court dismiss the TAC with prejudice. *See, e.g.*, *Frezza v. Google Inc.*, No. 5:12-CV-00237-RMW, 2013 WL 1736788, at *5 (N.D. Cal. Apr. 22, 2013) (dismissing claim with prejudice because plaintiffs twice failed to state a claim).

Alternatively, should the Court decline to dismiss the TAC in its entirety, Defendants request that the Court dismiss the claim to the extent it rests on the unprotected reports identified in paragraphs 22 (in part), 23, 24 (in part), 25, 26, 41 (in part), 42 (in part), 43, 45, 46, 47, and 48, and strike the allegations that exceed the scope of leave this Court granted in paragraphs 1, 2, 22-26, and 41 (in part).

DATED: October 27, 2026

PAUL HASTINGS LLP

By: ______________________________

Elena R. Baca
Paul C. Evans (*pro hac vice*)
Jeffrey A. Sturgeon (*pro hac vice*)
Daniel S. Richards (*pro hac vice*)

Attorneys for Defendants
META PLATFORMS, INC., PINAKI MUKERJI, MARK TSIMELZON, AND NITIN GUPTA