PAUL HASTINGS LLP
Elena R. Baca (SB# 160564)
elenabaca@paulhastings.com
515 South Flower Street,
Twenty-Fifth Floor
Los Angeles, California 90071-2228
Telephone: 1(213) 683-6000
Facsimile: 1(213) 627-0705

Attorneys for Defendants
META PLATFORMS, INC., PINAKI MUKERJI,
MARK TSIMELZON, AND NITIN GUPTA

*(Additional counsel listed on next page)*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ATTAULLAH BAIG,

Plaintiff,

vs.

META PLATFORMS, INC., PINAKI MUKERJI, MARK TSIMELZON, and NITIN GUPTA,

Defendants.

CASE NO. 3:25-CV-07604-LB

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED COMPLAINT OR, IN THE ALTERNATIVE, MOTION TO DISMISS IN PART AND STRIKE**

Date: December 3, 2026
Time: 9:30 a.m.
Judge: Hon. Laurel Beeler
Courtroom: B, 15th Floor

Paul C. Evans (admitted *pro hac vice*)
paulevans@paulhastings.com
Jeffrey A. Sturgeon (admitted *pro hac vice*)
jeffreysturgeon@paulhastings.com
Daniel S. Richards (admitted *pro hac vice*)
danrichards@paulhastings.com
200 Park Avenue,
New York, NY 10166
Telephone: 1(212) 318-6000

Attorneys for Defendants
META PLATFORMS, INC., PINAKI MUKERJI,
MARK TSIMELZON, AND NITIN GUPTA

## TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. BAIG'S PROCEDURAL OBJECTIONS ARE MERITLESS. ........ 2

- A. The Motion Does Not Seek Reconsideration. ........ 2
- B. The Knowledge Argument Is Not Forfeited. ........ 3

III. THE TAC DOES NOT PLEAD THAT ANY INDIVIDUAL DEFENDANT KNEW OF PROTECTED ACTIVITY. ........ 4

- A. The Standard. ........ 4
- B. The "Nineteen Instances" Fall Into Three Categories, None of Which Pleads Knowledge. ........ 5
- C. The Allegations as to Each Individual Defendant Fail. ........ 6
  - 1. Gupta ........ 6
  - 2. Tsimelzon ........ 6
  - 3. Mukerji ........ 7
- D. Baig's Authorities Do Not Change the Analysis. ........ 8
- E. Baig Cannot Cure the TAC Through His Opposition. ........ 9

IV. THE CLAIM AGAINST META FAILS FOR THE SAME REASON. ........ 9

V. THE CHALLENGED REPORTS FALL OUTSIDE THE SURVIVING THEORY. ........ 10

- A. "Read Together" Is the Rejected "FTC-to-SEC Pipeline" Theory Restated. ........ 10
- B. The January 2, 2024 Email ........ 11
- C. The December 4, 2024 Email ........ 12
- D. The Forms TCR. ........ 13
- E. The Investigator Interviews ........ 13
- F. Paragraphs 22 Through 26. ........ 14

VI. THE REQUESTED ALTERNATIVE RELIEF IS PROPER ........ 14

VII. CONCLUSION ........ 15

# TABLE OF AUTHORITIES


Page(s)

**Cases**

*Bobreski v. J. Givoo Consultants, Inc.*,
ARB No. 09-057 (ARB June 24, 2011) ........ 8

*Castner v. First National Bank of Anchorage*,
278 F.2d 376 (9th Cir. 1960) ........ 3

*Cohen v. Fred Meyer, Inc.*,
686 F.2d 793 (9th Cir. 1982) ........ 9

*DeLeon v. Wells Fargo Bank, N.A.*,
No. 10-CV-01390-LHK, 2010 WL 4285006 (N.D. Cal. Oct. 22, 2010) ........ 14

*Green v. ADT, LLC*,
2016 U.S. Dist. LEXIS 130826 (N.D. Cal. Sept. 23, 2016) ........ 4

*Hernandez v. Spacelabs Medical, Inc.*,
343 F.3d 1107 (9th Cir. 2003) ........ 8

*In re Apple iPhone Antitrust Litigation*,
846 F.3d 313 (9th Cir. 2017) ........ 4

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ........ 11

*Lacey v. Maricopa County*,
693 F.3d 896 (9th Cir. 2012) (en banc) ........ 2

*Lenk v. Monolithic Power Systems, Inc.*,
No. CV-23-02083-PHX-SHD, 2026 WL 2474467 (D. Ariz. Aug. 24, 2026) ........ 8

*Poland v. Chertoff*,
494 F.3d 1174 (9th Cir. 2007) ........ 9

*Raad v. Fairbanks North Star Borough School District*,
323 F.3d 1185 (9th Cir. 2003) (as amended May 8, 2003) ........ 8

*Ruckus Wireless, Inc. v. Netgear, Inc.*,
No. C 08-2310 PJH, slip op. (N.D. Cal. May 28, 2013), ECF No. 112 ........ 14

*Schneider v. California Department of Corrections*,
151 F.3d 1194 (9th Cir. 1998) ........ 9

*Van Asdale v. International Game Tech.*,
577 F.3d 989 (9th Cir. 2009) ........ 9

*Whittlestone, Inc. v. Handi-Craft Co.*,
618 F.3d 970 (9th Cir. 2010)........................................ 14

*Zeyen v. Bonneville Joint District*,
114 F.4th 1129 (9th Cir. 2024)........................................ 3

*Zinn v. American Commercial Lines, Inc.*,
ALJ No. 2009-SOX-025 (ALJ Nov. 19, 2012)........................................ 8

**STATUTES**

18 U.S.C. § 1514A........................................ 1, 5, 10, 15

**RULES**

Fed. R. Civ. P. 12........................................ 3, 4, 9, 14

Fed. R. Civ. P. 13........................................ 2, 12, 13

# I. INTRODUCTION

Baig, an engineering manager at WhatsApp, disagreed with his colleagues about cybersecurity priorities. TAC[1] ¶¶ 58–60, 63–66. Across four complaints, he has searched for a theory that would turn that disagreement into a claim under the Sarbanes-Oxley Act ("SOX"), 18 U.S.C. § 1514A. But SOX is not a general anti-retaliation statute. It is specific and narrow. "Section 806 protects reports about the listed categories of conduct, not reports about every legal violation that might eventually bear on a company's public disclosures." Order, ECF No. 94, at 13. As a result, Baig's various attempts to construct an argument under SOX have failed, with the exception of one. This Court allowed Baig to try to state a single legally cognizable theory: that, beginning with a letter from his counsel dated April 18, 2023, he reported that Meta's SEC filings purportedly misrepresented its privacy program and cybersecurity risks. *Id.* at 2, 28. The Court also told Baig how. He was to plead each protected report by "date, recipient, and substance, including what [he] said about Meta's SEC filings or its investors," and each adverse action "by date and by the person who took it." *Id.* at 27. Baig has not followed that roadmap, because he cannot. The TAC rests on reports the Court held unprotected. It pleads no fact showing that any individual Defendant knew Baig had reported that he believed Meta's filings were false or misleading. And it reaches past the leave the Court granted. *Id.* at 14–15, 27–28.

Baig's Opposition, ECF No. 105 ("Opp."), leads with procedure because it cannot answer the Motion, ECF No. 103 ("Mot."), on the merits. None of his procedural objections has merit. The Motion does not seek reconsideration. The Court ordered Baig to replead and directed Defendants to "answer or otherwise respond." Order at 28. Defendants did. The Motion applies the Order to the new pleading; it does not challenge the Order. Nor is the knowledge argument forfeited. Before the Order, Baig alleged that his protected activity included reports he made directly to Gupta, Mukerji, and Tsimelzon. The Order held those reports unprotected and limited the claim to reports about Meta's SEC filings, which Baig allegedly made to others. *Id.* at 14–15, 27. Only then did the gap between the protected reports and the alleged decisionmakers appear. And Defendants ask no judge to overrule anything. They ask the Court to hold Baig to the Order.

---

[1] All abbreviated terms not defined here have the meanings given in the Motion.

On the merits, the Opposition confirms the Motion. The TAC's central defect is that it pleads no fact showing that Gupta, Mukerji, or Tsimelzon—the only alleged decisionmakers—knew Baig was reporting that he believed Meta's SEC filings were false. Mot. at 9, 17–21. The Opposition identifies none. It offers "constructive" knowledge, nineteen alleged "instances" of knowledge about other subjects, and a footnote of facts Baig says he "can allege." Opp. at 18–22, 32 n.4.

The Opposition also concedes much of the alternative relief. Baig concedes that paragraphs 22 through 26 "are not reports," that paragraphs 1 and 2 "assert no theory," and that the tolling sentence in paragraph 41 is "[n]ot a [n]ew [t]heory." *Id.* at 30–31. He concedes that the SAC allegation the Court credited for the January 2, 2024 letter—that it reported "violations of SEC rules"—described Rules 13b2-1 and 13b2-2, which the Court rejected. *Id.* at 29; Order at 5, 19–20. That concession removes the only link between that letter and any SEC rule. And he concedes that the filing-specific content he now invokes for his Forms TCR appears in an unpleaded December 31, 2024 supplement, not in the TAC. Opp. at 27.

This is Baig's fourth complaint. The Court should dismiss the TAC with prejudice. Alternatively, it should dismiss the claim to the extent it rests on the unprotected reports, strike the allegations that exceed the leave granted, and enter Baig's concessions as rulings.

## II. BAIG'S PROCEDURAL OBJECTIONS ARE MERITLESS.

### A. The Motion Does Not Seek Reconsideration.

Baig contends that the Motion is "unauthorized reconsideration" barred by Civil Local Rule 7-9 because the Order "held protected, by name," each alleged report Defendants challenge. Opp. at 14–15. That mischaracterizes both the Order and the Motion.

The Order did not hold any alleged report in the TAC protected. It ruled on "the *SAC's* allegations," taken as true. Order at 15 (emphasis added). It held that the SAC was a shotgun pleading, ordered Baig to replead "each protected report by date, recipient, and substance, including what the plaintiff said about Meta's SEC filings or its investors," and directed Defendants to "answer or otherwise respond" to the new pleading. *Id.* at 10, 27–28. The TAC superseded the SAC. *See Lacey v. Maricopa County*, 693 F.3d 896, 927 (9th Cir. 2012) (*en banc*).

Asking the Court to measure the superseding pleading against the standard the Order set is what the Order contemplated. It is not a request to reconsider anything.

Baig's real complaint is that, now required to plead what his reports said, he pleads less than the SAC claimed. The SAC alleged that the January 2, 2024 letter reported "violations of SEC rules and regulations, including rules relating to falsification of records and false statements to auditors," but the TAC drops that allegation. *Compare* SAC ¶ 99 *with* TAC ¶ 43; *see also* Order at 5, 15; Mot. at 24. The SAC alleged that the Forms TCR reported purportedly "misleading statements in Meta's public SEC filings regarding its FTC Privacy Order compliance program," but the TAC does not. *Compare* SAC ¶ 112 *with* TAC ¶ 47; *see also* Order at 5–6, 24; Mot. at 26. The Court's rulings on the SAC rested on those characterizations. A ruling premised on allegations that no longer appear in the operative pleading does not insulate the new pleading from review.

Nor does the Motion ask the Court to revisit its employer-knowledge holding. The Motion expressly acknowledged the Court's finding that the SAC pleaded Meta's knowledge that Baig's SEC and OSHA filings had been made. Mot. at 21 (citing Order at 24). The Motion argued something different: that the TAC does not plead that the individual decisionmakers knew of any protected activity. That question was never presented or decided. Because the decisionmakers are not alleged to have known, nothing supports an inference that protected activity contributed to any adverse action, including as to Meta. *See* § IV, *infra*.

Baig's successor-judge authorities, *Castner v. First National Bank of Anchorage*, 278 F.2d 376, 379–80 (9th Cir. 1960), and *Zeyen v. Bonneville Joint District*, 114 F.4th 1129, 1138 (9th Cir. 2024), are beside the point. Opp. at 15. Those decisions limit one judge's reconsideration of another's ruling. Defendants do not ask the Court to overrule anything. They ask the Court to apply the Order to the pleading the Order required.

**B. <u>The Knowledge Argument Is Not Forfeited.</u>**

Baig argues that Rule 12(g)(2) bars the knowledge argument because it was "available twice." Opp. at 16–17. It was not. Rule 12(g)(2) bars only a defense "that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). Until the Order, Baig's

pleaded protected activity included reports he made directly to Gupta, Mukerji, and Tsimelzon: his 2021–2023 reports to his supervisors and WhatsApp's senior leadership, and his 2024 reports to Tsimelzon and others. Order at 4–5, 14. A knowledge argument made no sense while Baig alleged that he raised his concerns with those defendants directly. The Order held those reports unprotected, dismissed the claim to the extent it rested on them, and required Baig to plead each protected report by recipient and each adverse action "by the person who took it." *Id.* at 14–15, 27. The TAC, in turn, pleads Baig's reports to his supervisors only as "background." TAC ¶¶ 8, 38. Only then did the gap between the remaining protected reports and the alleged decisionmakers become apparent.

The Order confirms the point. It noted that Defendants had not raised causation and declined to decide it, without suggesting that the issue had been waived. Order at 15 n.39. Rule 12(h)(2) expressly preserves the defense of failure to state a claim. And Baig's own authorities favor deciding it now. In *In re Apple iPhone Antitrust Litigation*, 846 F.3d 313, 318–20 (9th Cir. 2017), the Ninth Circuit declined to disturb a ruling on a successive Rule 12(b)(6) motion where deciding it promoted efficiency. Resolving now whether the TAC pleads a necessary element avoids a Rule 12(c) motion raising the identical question after Defendants answer. And in *Green v. ADT, LLC*, 2016 U.S. Dist. LEXIS 130826 (N.D. Cal. Sept. 23, 2016), the court reached the merits of the later-raised arguments. *See* Opp. at 17. The Court should do the same here.

## III. <u>THE TAC DOES NOT PLEAD THAT ANY INDIVIDUAL DEFENDANT KNEW OF PROTECTED ACTIVITY.</u>

### A. <u>The Standard.</u>

Baig argues that Defendants ignore "constructive" knowledge. Opp. at 8–9, 18. They do not. The Motion quoted the full standard: the employer must have known or suspected, "actually or constructively," that the employee engaged in protected activity. Mot. at 17–18 (quoting Order at 9). But "constructively" does not mean that whatever anyone at Meta allegedly knew is imputed to every manager. Individual liability "requires participation in the adverse action," Order at 25, and causation requires that the person who acted knew or suspected what the employee had reported. Baig cites no binding authority holding that knowledge held by the

recipients of his reports, none of whom took any adverse action, may be imputed to the managers who did. *See* § III.D, *infra*.

More fundamentally, the knowledge must be of protected activity: that Baig was reporting that he believed Meta's SEC filings misled investors. Knowing that Baig complained about WhatsApp's security, the FTC Privacy Order, internal audits, or retaliation is not enough. The Court has held that those reports are not protected. Order at 14–15. Baig concedes that the audit and pre-read subjects are protected only "insofar as he reported them as rendering Meta's filings . . . misleading." Opp. at 21 (quoting Order at 19). The question is therefore not whether Gupta, Mukerji, or Tsimelzon knew Baig was complaining about alleged violations of the FTC Privacy Order. It is whether the TAC pleads facts showing that any of them knew or suspected that Baig was reporting that Meta's filings were supposedly false. It does not.

**B. <u>The "Nineteen Instances" Fall Into Three Categories, None of Which Pleads Knowledge.</u>**

Baig asserts that the TAC pleads "nineteen" instances of the decisionmakers' knowledge. Opp. at 18 (citing TAC ¶¶ 53–56). Each falls into one of three categories. None pleads the knowledge Section 806 requires.

*First*, knowledge of unprotected subjects. Most of the instances show, at most, that a decisionmaker knew Baig was raising allegations about FTC reporting obligations, internal audits, pre-read documents, scraping, or data exfiltration. TAC ¶¶ 54–55, 61, 67–68, 77–78. The Court has held that reports on those subjects are not protected unless tied to Meta's filings, which these were not. Order at 14, 19–20; *see* Mot. at 9, 18, 20. Knowing that Baig raised them is not knowing that he reported an alleged securities violation.

*Second*, knowledge that an investigation existed, or that one had been named in a retaliation complaint. TAC ¶¶ 42, 44, 55. That is not knowledge of a report about Meta's SEC filings. The TAC never alleges that any investigator told any Defendant what Baig said about Meta's SEC filings. Mot. at 18–19.

*Third*, timing. Baig argues that "[t]iming [c]ompletes the [i]nference." Opp. at 22–23. But temporal proximity bears on causation only *after* knowledge is established. It cannot substitute

for it. *See* Mot. at 19. An adverse action that follows a report proves nothing when the decisionmaker never knew of the report.

### C. The Allegations as to Each Individual Defendant Fail.

#### 1. Gupta

Baig leads with paragraph 61. Opp. at 18. It alleges that Meta allocated 23 additional engineers "in response to Mr. Baig's January 2, 2024 letter" and that Gupta directed where they went. TAC ¶ 61. That Gupta directed where engineers went says nothing about whether he knew what the January 2 email allegedly said about Meta's SEC filings. Baig does not allege that he ever told Gupta that Meta's filings were purportedly false. *See* Mot. at 20. Nor does the email suggest it. According to the email, what Gupta purportedly "acknowledged" to Baig were "cybersecurity gaps." Baig Decl., ECF No. 105-9, Ex. 1 at 7. And what Baig planned to discuss with his "skip" manager was Mukerji's email criticizing his collaboration, not Meta's SEC filings. *Id.* at 10. In any event, the January 2 email is not protected. *See* § V.B, *infra*.

The remaining allegations concern Gupta's receipt of the JUNGLE red-team results, his alleged cessation of one-to-one messaging, and his receipt of colleagues' negative feedback. Opp. at 19; TAC ¶¶ 37, 59, 78. Each concerns a cybersecurity subject or a personnel matter. The alleged "false regulatory certification" that Baig says preceded the end of their messaging (Opp. at 19) was a certification to the Irish Data Protection Commission. TAC ¶ 78. The Court held reports on that subject unprotected. Order at 14–15. None of these allegations pleads that Gupta knew Baig was reporting that Meta's SEC filings purportedly misled investors.

#### 2. Tsimelzon

Baig makes much of Tsimelzon's alleged December 6, 2024 statement that, "if we are discussing with the regulator what we should do — I think we need the right people in the meeting." Opp. at 20; TAC ¶ 54. But Tsimelzon is alleged to have said that only after Baig told him he was meeting Meta's security auditor. TAC ¶ 54. In context, the statement concerned that security auditor meeting, not the SEC. *Id.*; Mot. at 20. The Court has already found no allegation that Tsimelzon "knew that the plaintiff was preparing to communicate with the SEC." Order at 22. Baig does not dispute that. Opp. at 20.

Baig's remaining allegations concern alleged reprimands for raising his belief about WhatsApp's "legal obligations" to report scraping incidents to the FTC, and the alleged deletion of an internal post about scraping. Opp. at 19–20; TAC ¶¶ 54, 67–68, 77. Those are things Baig characterized as FTC Privacy Order subjects, and reports about them are not protected. Order at 14; Mot. at 20. Baig answers that, ten days before one reprimand, he had told Meta's investigator that the supposed under-reporting was "among the ways Meta was misleading investors." Opp. at 19–20. But the TAC does not allege that Tsimelzon knew what Baig told the investigator. What Tsimelzon allegedly received was a communication about FTC reporting. TAC ¶ 67. Nor does it matter that Tsimelzon's alleged warning "prompted" an investigation or that he supervised Baig while it proceeded. Neither shows that he knew what Baig said about Meta's SEC filings in it. *See id.* ¶ 54; Mot. at 19.

### 3. <u>**Mukerji**</u>

Baig contends that Mukerji knew of protected activity because he was the subject of the investigation opened in response to counsel's April 18, 2023 letter, and because that letter and the January 2 email accused him of retaliation. Opp. at 20–21. Being accused of retaliation in a confidential settlement communication is not knowledge that the communication attacked Meta's Form 10-K. The letter was a "confidential" communication sent "for settlement purposes only" to Cathcart and in-house counsel. Baca Decl., ECF No. 103-1, Ex. B at 1; Mot. at 18. Baig argues that "a manager is not investigated over a letter without learning why." Opp. at 22. Learning that he was accused of retaliation is not learning that the letter also purportedly said Meta's filings were misleading. The TAC does not allege that anyone told Mukerji what the letter said about Meta's filings.

The remaining Mukerji allegations do not help Baig. The TAC disclaims the March 7, 2023 letter as protected activity. TAC ¶¶ 8, 41–49; Mot. at 20. Baig concedes that Mukerji's April 14, 2023 alleged instruction not to discuss the FTC Privacy Order predates any protected report. Opp. at 21. He says that is why he pleads it as knowledge, not as an adverse action. *Id.* That does not follow. Knowledge of a complaint about the FTC Privacy Order, which the Court held

unprotected, does not suggest knowledge of later reports about Meta's SEC filings. Order at 14–15.

Baig also says Defendants "conced[ed]" that Mukerji knew of the investigation by noting that Baig's peak rating came "while the resulting investigation was pending." Opp. at 21. Not so. The TAC alleges that Mukerji rated Baig "Significantly Above Expectations" in August 2023, while the investigation of the April 18, 2023 letter was pending. TAC ¶¶ 42, 62, 74. A favorable review after a report *undercuts* any inference that the report drove a later adverse action. It is not a concession that Mukerji knew anything about the letter's contents. *See* Mot. at 20.

**D. Baig's Authorities Do Not Change the Analysis.**

*Hernandez v. Spacelabs Medical, Inc.*, 343 F.3d 1107, 1113–14 (9th Cir. 2003), on which Baig principally relies, was a summary-judgment decision. Opp. at 18, 21. There, the supervisor knew that a protected complaint had been made; the question was whether he knew who made it. *Hernandez*, 343 F.3d at 1113. Here, the question comes first: whether any decisionmaker knew that Baig had made a protected report at all.

*Zinn v. American Commercial Lines, Inc.*, ALJ No. 2009-SOX-025 (ALJ Nov. 19, 2012), is a non-binding administrative decision. Opp. at 23. It found that a complaint made to an immediate supervisor who explicitly said he would raise the issue with upper management could be imputed to the executive who made the termination decision. No such facts are alleged here. Instead, Baig alleges he made protected complaints to Cathcart, Zuckerberg, Meta's General Counsel and Ethics and Compliance team, Meta's internal investigators, the SEC, and Meta's outside counsel. TAC ¶¶ 41–50. None of those recipients was his immediate supervisor, is alleged to have acted against him, or is alleged to have told the lower-level managers who made the relevant decisions what Baig reported. *Id.* ¶¶ 41–50. His other administrative decision, *Bobreski v. J. Givoo Consultants, Inc.*, ARB No. 09-057 (ARB June 24, 2011), arose under a different statute and states that "[t]he issue of knowledge is a necessary part of the single question of causation." Harris Decl., ECF No. 105-7, Ex. E, slip op. at 17. That statement favors Defendants' position, not Baig's.

Baig attempts to distinguish *Lenk v. Monolithic Power Systems, Inc.*, No. CV-23-02083-PHX-SHD, 2026 WL 2474467 (D. Ariz. Aug. 24, 2026), on the ground that it applied a Title VII awareness rule. Opp. at 22; *see* Mot. at 18. The principle is the same either way: a decisionmaker who does not know of protected activity cannot retaliate because of it. *See Raad v. Fairbanks North Star Borough Sch. Dist.*, 323 F.3d 1185, 1197–98 (9th Cir. 2003) (as amended May 8, 2003) (affirming summary judgment on retaliation claim where there was no evidence that the alleged decisionmakers knew plaintiff had engaged in protected activity); *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 797 (9th Cir. 1982) (decisionmaker's lack of awareness of plaintiff's complaint broke the "requisite causal link").

Finally, timing cannot supply knowledge. Causation may be inferred from timing only once the decisionmaker's knowledge is established. *Van Asdale v. International Game Tech.*, 577 F.3d 989, 1003 (9th Cir. 2009); Opp. at 23.

### E. <u>Baig Cannot Cure the TAC Through His Opposition.</u>

Baig's final footnote lists facts he says he "can allege." Opp. at 32 n.4. A party may not amend a complaint through an opposition brief. *Schneider v. California Department of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.").

In any event, the proffered facts would not cure the defect. Mukerji's alleged response to the April 18, 2023 letter, "we never said we will prevent a breach," is about cybersecurity, not Meta's SEC filings. *See* Opp. at 32 n.4. The alleged pre-read references to the SEC's cybersecurity-disclosure rules, and Baig's alleged one-on-one statement to Tsimelzon that those rules "require accurate disclosure," are at most statements about what the rules require. They are not reports that Meta's filings violated them. *Id.*

## IV. <u>THE CLAIM AGAINST META FAILS FOR THE SAME REASON.</u>

Baig contends that Defendants "offer no argument" for dismissing the claim against Meta because the recipients of his reports were all Meta personnel. Opp. at 15–16. That misses the point. Knowledge held by recipients who took no adverse action cannot supply causation. The

TAC does not allege that Cathcart, Zuckerberg, Newstead, the Ethics and Compliance team, the investigators, or outside counsel took any adverse action, or that any of them shared Baig's reports with anyone who did. Mot. at 16, 18–19.

Baig's cat's-paw theory does not fill the gap. *See* Opp. at 16. That theory depends on a biased subordinate whose bias influenced the decision. *Poland v. Chertoff*, 494 F.3d 1174, 1182 (9th Cir. 2007) (subordinate's bias is imputed to the employer only if "the allegedly independent adverse employment decision was not actually independent because the biased subordinate influenced or was involved in the decision or decisionmaking process"). Baig identifies Mukerji and Tsimelzon as the individuals who built his performance record. Opp. at 16. But an individual cannot be biased by protected activity he did not know about. The cat's-paw theory therefore rises or falls with Section III, and it falls.

Nor does the Order's employer-knowledge holding save the claim. That holding addressed whether Meta knew that Baig's SEC and OSHA filings had been made. Order at 24; *see* Mot. at 21. The Court expressly did not decide causation. Order at 15 n.39. Baig's assertion that Meta fired him "six days after" an interview outside counsel arranged (Opp. at 16) again pleads timing. It does not plead that anyone who participated in the termination knew what Baig had reported.

## V. <u>THE CHALLENGED REPORTS FALL OUTSIDE THE SURVIVING THEORY.</u>

### A. <u>"Read Together" Is the Rejected "FTC-to-SEC Pipeline" Theory Restated.</u>

Baig's principal response is that his reports must be "read together," beginning with the April 18, 2023 letter. Opp. at 23–26. He argues that the FTC program is "the one regime Meta affirmatively told investors it was 'maintaining,'" so a report of its purported gaps is a report that a statement in the filings was untrue. *Id.* at 24. That is the "FTC-to-SEC pipeline" theory restated: the premise that, "because Meta's filings represented compliance with the FTC Privacy Order, every report of noncompliance was also a report that the filings were false." Order at 14. The Court rejected that theory because it "would make every internal compliance complaint at a public company protected activity under SOX, which is not the law." *Id.*; *see also* Mot. at 23.

Baig's approach also conflicts with the Order's requirement that he plead "each protected report by date, recipient, and substance, including what the plaintiff said about Meta's SEC filings

or its investors." Order at 27. If later communications were protected merely because they followed a protected one, there would have been no reason to plead each report's substance. The Order's reference to a "course of reports," on which Baig relies (Opp. at 23–24), came in its exhaustion analysis, not in deciding which reports are protected. *See* Order at 11. And requiring a report to convey what it reports is not a demand for "a lawyer's precision," as Baig argues. *See* Opp. at 25. It is the standard the Court set: the "report must convey" a reasonable belief in a fraud on shareholders or a violation of an SEC rule. Order at 13–14.

Baig's "backdrop" does not change the analysis. It consists of the March 7, 2023 letter, the March 2023 recap document, and the tolling agreements. Opp. at 24. The March 7 letter and the March 2023 recap are pleaded as background, not protected activity. TAC ¶¶ 8, 38; Mot. at 12 n.2. The Court held that the March 2023 recap was "a warning of regulatory exposure arising from the deficiencies, not a report that Meta had violated an SEC rule or defrauded its shareholders." Order at 14. And the tolling agreements reported nothing. *See* § VI, *infra*.

**B. <u>The January 2, 2024 Email.</u>**

The full January 2 email confirms the Motion. *See* Mot. at 23–24.[2] Its subject line is "Retaliation re: Raising Cybersecurity Gaps with Leadership (Ethics and Compliance Issue)." Baig Decl. Ex. 1 at 2. Its conclusion characterizes the conduct as "retaliation against me for raising concerns about these cybersecurity gaps." *Id.* at 10. The email does not mention a Form 10-K, a certification, or any disclosure. Calling Zuckerberg the "certifying officer" (Opp. at 27–28) is counsel's gloss, not anything Baig wrote.

Baig's reliance on the email's hyperlinks fails. Opp. at 28. The links sit under the sentence, "Falsifying *cybersecurity reports* can result in criminal penalties." Baig Decl. Ex. 1 at 2

---

[2] Baig argues that the documents Defendants submitted may not be used to "dispute facts stated in a well-pleaded complaint." Opp. at 26. Defendants cite them for what they say, and Baig relies on them himself. *See* Baig Decl., ECF No. 105-9, Ex. 1; Opp. at 28. The incorporation-by-reference doctrine "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). Baig also objects to notice of the truth of OSHA's findings. Opp. at 18 n.2. Defendants did not ask the Court to accept those findings as true. The Motion said that they are not entitled to deference and are cited only to complete the record. Mot. at 8 n.1 (citing Order at 7 n.23).

(emphasis added). Where a link leads is not what Baig reported.[3] The Court has already held that "circulating an article about another company is not a report about Meta's filings." Order at 14 n.37.

Nor does the phrase "you think Meta doesn't have a comprehensive information security program" speak "in the vocabulary of the 10-K," as Baig argues. Opp. at 28. The email attributes that phrase to an X-Sec manager, not to Baig. Baig Decl. Ex. 1 at 6. And a "comprehensive information security program" is what Baig alleges Section V of the FTC Privacy Order requires. *See* TAC ¶ 39. The Form 10-K refers to a "comprehensive privacy program." *Id.* ¶ 22. A belief that Meta lacked the former is a statement about alleged compliance with the FTC Privacy Order, not about the contents of an SEC filing.

Baig's counsel now maps the email's purported facts onto the Form 10-K's risk factors. Opp. at 28–29. The email did not. "Protected activity requires a report; a theory constructed in litigation is not one." Order at 23.

Most significantly, Baig concedes that the SAC's allegation that the email reported "violations of SEC rules ('including rules relating to falsification of records and false statements to auditors')" described Rules 13b2-1 and 13b2-2, "which the Order barred from repleading." Opp. at 29; Order at 5, 19–20; Mot. at 24. That concession removes the only allegation that tied the email to any SEC rule. What remains is a warning that a breach "will expose Meta, our users, and our investors to serious harm." TAC ¶ 43. That is a statement about the potential consequences of a cybersecurity failure. A report is not protected "merely because the violation, if it became public, might matter to investors." Order at 13.

### C. <u>**The December 4, 2024 Email.**</u>

Baig notes that the December 4 email was "an update to his January letter." Opp. at 29. Calling it an update adds no content. If neither email reports an alleged securities violation, reading them together does not change the result. The Court credited the SAC's characterization of this email. Order at 15, 24. The email itself, now in the record, shows a statement of Baig's

[3] Defendants do not object to judicial notice of the existence of the SEC and Department of Justice press releases attached to Baig's Request for Judicial Notice. But those releases are not part of what Baig reported.

values under the heading "How I live the values of Meta, Metamates, Me." Baca Decl. Ex. D; Mot. at 25. And the email's statement that Baig had "filed a complaint with the SEC" conveys the fact of filing, not the content of any report. A submission is "protected for what it reports, not for the fact of filing." Order at 3.

**D. The Forms TCR.**

Baig argues that because "[a] company discloses to the SEC through its filings," his statement that Meta had "not disclosed these Cybersecurity gaps either to the SEC or the FTC" was a report that Meta's filings violated Item 106. Opp. at 27. The TAC does not plead that the Forms TCR mentioned Item 106, any filing, or any statement in one. TAC ¶ 47; Mot. at 26. The pairing of "the SEC or the FTC" describes alleged non-disclosure to regulators, which the Court held unprotected. Order at 14–15; Mot. at 27.

Baig also effectively concedes that the TAC does not plead the filing-specific content he now invokes. He represents that his December 31, 2024 supplement "attached a complaint identifying FY2022 Form 10-K statements as misleading," and that "he can plead it." Opp. at 27. That supplement is not in the TAC.[4] Nor does the TAC allege that Baig provided either Form TCR, or the supplement, to anyone at Meta. TAC ¶ 47; Mot. at 19, 21. Whatever the Forms TCR said, no individual Defendant is alleged to have known it. *See* § III, *supra*.

**E. The Investigator Interviews.**

Baig's alleged October 25, 2024 statement that WhatsApp's purported under-reporting of scraping incidents *to the FTC* was "among the ways Meta was misleading investors" (TAC ¶ 67) is the FTC-to-SEC pipeline theory again. Opp. at 29–30. It rests on the premise that alleged FTC noncompliance is, by virtue of Meta's filings, a securities violation. *See* Order at 14–15; Mot. at 23. Otherwise, Baig's assertion that he told the investigator he believed "that Meta was misleading investors" (TAC ¶ 46) is a label, not a report. It does not say what Meta said that was allegedly misleading, in which filing, or what Baig told the investigator about it. Mot. at 23.

---

[4] Defendants object to Exhibit 2 to the Baig Declaration under Civil Local Rule 7-3(c). It consists of screenshots Baig created in November 2026 by "recreating" the SEC's intake form, offered "[t]o the best of [his] recollection." Baig Decl. ¶ 3. It is not referenced in the TAC and cannot be considered on this Motion.

Baig's response that "the October 25 statement alone suffices" (Opp. at 29) concedes that the TAC does not identify when any other such statement was made.

**F. <u>Paragraphs 22 Through 26.</u>**

Baig concedes that paragraphs 22 through 26 "are not reports." Opp. at 30. Defendants request that the Court accept that concession and enter an order so stating: the statements pleaded in those paragraphs are not the subject of any protected report. *See* Mot. at 27–28.[5]

## VI. <u>THE REQUESTED ALTERNATIVE RELIEF IS PROPER.</u>

Baig argues that Rule 12(b)(6) "doesn't permit piecemeal dismissals of parts of claims," and that the Court's earlier partial ruling addressed "distinct legal theories," not reports. Opp. at 26. The Order refutes the distinction. It held that "[t]he plaintiff's reports of cybersecurity deficiencies and FTC Privacy Order noncompliance are . . . not protected activity, and the claim is dismissed to the extent it rests on them." Order at 15; *see* Mot. at 17. That is a dismissal by report. Defendants ask the Court to apply the same approach to the TAC.

Baig also argues that excising a report would not narrow the case because the report would remain evidence of belief, knowledge, and motive. Opp. at 26. Defendants do not concede that, but it does not matter here. Defendants do not seek to exclude evidence. They seek a ruling on which reports constitute protected activity. That ruling defines the claim that proceeds to discovery, summary judgment, and trial. *See* Mot. at 10, 21.

Baig's reliance on *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974–75 (9th Cir. 2010), is misplaced. *See* Opp. at 30–31. Defendants' request to strike does not rest on Rule 12(f)'s "immaterial" standard. It rests on the scope of the leave the Court granted. *See* Mot. at 28; *DeLeon v. Wells Fargo Bank, N.A.*, No. 10-CV-01390-LHK, 2010 WL 4285006, at *3 (N.D. Cal. Oct. 22, 2010); *Ruckus Wireless, Inc. v. Netgear, Inc.*, No. C 08-2310 PJH, slip op. at 2 (N.D. Cal. May 28, 2013), ECF No. 112. Baig answers that those cases involved new claims and the

[5] Baig cites paragraph 44 as reporting that the CEO's certifications in paragraph 23 were false. Opp. at 10, 30. Paragraph 44 refers to Meta's "compliance certifications" resulting from its alleged failure to report Covered Incidents *to the FTC*. TAC ¶ 44. Those are certifications to the FTC under the FTC Privacy Order (*see* TAC ¶ 20), not the CEO's certifications under SEC Rule 13a-14. Baig also cites paragraph 46 as reporting that the 2022 proxy statement was false. Opp. at 10. Paragraph 46 says nothing about the proxy statement. *See* TAC ¶ 46.

TAC adds none. Opp. at 31. But paragraph 41 pleads that each tolling request "was a further protected activity under SOX." TAC ¶ 41. That is a new basis for liability, and the Court denied leave to add one. Order at 27; Mot. at 29.

Baig now invokes Section 1514A(a)(2), arguing that the tolling requests kept a SOX proceeding "about to be filed" before Meta. Opp. at 31. The TAC pleads his reports under subsection (a)(1) only. TAC ¶ 90. And a request to extend a filing deadline is not filing, testifying in, or participating in a proceeding. In any event, the Court should enter Baig's concessions as rulings: (1) paragraphs 22 through 26 are not reports; (2) paragraphs 1 and 2 assert no theory of protected activity; and (3) the tolling sentence in paragraph 41 is not a separate theory of protected activity and is stricken or deemed withdrawn. Opp. at 30–31.

## VII. CONCLUSION

This is Baig's fourth complaint. The Court dismissed the first, Baig withdrew the second, and the Court found the third to be a shotgun pleading that stated one theory and ordered it repleaded in a prescribed form. ECF Nos. 70, 79, 94. The TAC does not plead a fact showing that any decisionmaker knew of a protected report, and the Opposition identifies none. It concedes much of what the Motion seeks in the alternative. Defendants respectfully request that the Court dismiss the TAC with prejudice. Alternatively, Defendants request that the Court dismiss the claim to the extent it rests on the unprotected reports identified in paragraphs 22 (in part), 23, 24 (in part), 25, 26, 41 (in part), 42 (in part), 43, 45, 46, 47, and 48; strike the allegations in paragraphs 1, 2, 22–26, and 41 (in part) that exceed the leave the Court granted; and enter Baig's scope concessions as rulings.

DATED: November 17, 2026

PAUL HASTINGS LLP

By: ______________________
Elena R. Baca

Attorneys for Defendants
META PLATFORMS, INC., PINAKI MUKERJI, MARK TSIMELZON, AND NITIN GUPTA